# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Greenbelt Division)

|  |  |
|---|---|
| In re: | Case No. 19-15265-LSS |
| TOUFIC SALIM MELKI, | Chapter 11 |
| Debtor. |  |

## CREDITORS CYNTHIA SAMAHA, SABA ARMANI, AND GOWEN SILVA AND WINOGRAD, PLLC'S MOTION TO APPOINT CHAPTER 11 TRUSTEE

Cynthia Samaha (formerly known as Cynthia Melki), Saba Armani, and Gowen Silva and Winograd, PLLC (collectively, the "Movants"), by and through their counsel, file the instant motion asking this Court to appoint a Chapter 11 trustee.

### INTRODUCTION

Movants argue that good cause exists to appoint a Chapter 11 trustee under Section 1107 of the Bankruptcy Code because Dr. Toufic Melki has continually demonstrated dishonesty to tribunals, disorganization and a fraudulent motive to avoid his financial responsibilities to his ex-wife. A simple review of Dr. Melki's own statements, made under oath, show blatant dishonesty and a fraudulent intent permeating most, if not all, of Dr. Melki's legal endeavors. Dr. Melki, with the assistance of unscrupulous professionals, has perpetrated fraud on the courts of this country in a massive effort to hide income and assets to reduce marital assets and avoid tax obligations. While the Internal Revenue Service, the FBI, and the Office of the United States Attorneys have not caught up with Dr. Melki yet, the Circuit Court Judges from Montgomery County, Maryland have.

1

Judges Cynthia Callahan and Thomas McCann have all presided over trials involving Dr. Melki and each of them has found that Dr. Melki lacks credibility:

Judge Callahan found that Dr. Melki "did lie to the Court." Ex. 1, Op. Mar. 26, 2019, at 20.

Judge McGann found Dr. Melki's "credibility to be very lacking." Ex. 2, Mem. Nov. 20, 2018, at 7:17-18.

Outside of the many examples of Dr. Melki's recent fraudulent and dishonest behaviors he has continued his dishonest ways with this Court by filing dishonest documents, providing dishonest testimony, and ignoring the directives of the Court and of the United States Trustee Office. For all of these reasons and more, the movants urge this Court to prevent Dr. Melki from continuing the game he plays by appointing a Chapter 11 trustee to take control over the significant assets Dr. Melki controls, protect interests of the Estate, and ensure that justice is served.

## LEGAL STANDARD

This Court may, upon the request of a party and good cause shown, appoint a trustee before the confirmation of the plan for cause. 11 U.S.C. § 1104 (2006). The Bankruptcy Code authorizes a trustee to be appointed in a Chapter 11 case, "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management," or "if such appointment is in the interests of creditors." *Prologo v. Flagstar Bank, FSB*, 471 B.R. 115, 124 (D. Md. 2012) (quoting 11 U.S.C. § 1104(a)(1)–(2)). Courts have also determined that "bad faith" is also a basis for dismissal, conversion or appointment of a trustee. *In re Sydnor*, 431 B.R. 584, 590–91 (Bankr. D. Md. 2010) (COLLIER ON BANKRUPTCY ¶ 1112.04[4]-[7] (Henry Somers & Alan Resnick, 16th ed.2009)).

It is solely within the discretion of this Court to determine whether Dr. Melki's conduct constitutes cause. *Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir.1987). Specifically, the court must determine whether the "conduct shown rises to a level sufficient to warrant the appointment of a trustee." *Id*. The court must construe § 1104(a)(1) in a way that is in harmony with the rest of the Bankruptcy Code, and "due consideration must be given to the various interests involved in the bankruptcy proceeding." *Id*. As well, in circumstances where fraud or mismanagement is present, the legislative history of § 1104(a)(1) suggests that the court should "balance the benefit to be gained from such an appointment against the detriment to the reorganization effort and the rights of the debtor that may result from such an appointment." *In re Hamilton*, 11-07491-8-JRL, 2012 WL 2204904, at *3 (Bankr. E.D.N.C. June 14, 2012) (quoting 7 COLLIER ON BANKRUPTCY ¶ 1104.02[3][b] (Henry Somers & Alan Resnick, 16th ed.2009). However, if the court in its discretion determines that cause exists, the statute mandates that a trustee be appointed. *See* 11 U.S.C. § 1104(a) (stating that where cause is found, "the court shall order the appointment of a trustee.") (emphasis added).

### ARGUMENT

### I.   Cause exists to appoint a Chapter 11 Trustee.

Over the past 5 years Dr. Melki has engaged in array of fraudulent and criminal acts while displaying gross mismanagement of his affairs. Dr. Melki's actions appear to include, but are not limited to, money laundering, embezzlement, tax and bank fraud, perjury, theft, and tax evasion. Dr. Melki through testimony has essentially admitted to several of these acts and for the acts he does not admit to, the only potentially truthful defense available to him is that he grossly mismanages his affairs and assets to such a degree that he does not realize he commits such

3

improper acts regularly.    Therefore, under any view of the facts the appointment of a trustee is required.

### A. *Actions of Dr. Melki before the bankruptcy matter commenced*.

Dr. Melki has been practicing medicine as a retina surgeon since the middle of the 1990s and since that time he has made a substantial amount of money and acquired several valuable assets. His income and assets are managed through a scheme that involves several different entities all of which are alter egos of Dr. Melki. His medical practice uses the entity of Toufic S. Melki M.S, M.D, P.A doing business as "The Retina Centers of Washington." Dr. Melki has claimed that the two entities are the exact same however he has produced vastly different financial statements using the different names including a financial statement under Toufic Melki MD for his divorce. For instance, for period from January thru October 18, 2017, profit and losses report regarding medical practice shows <u>negative</u> income in amount of 383,158.04[1]. However, the P&L report filed with Old Dominion National Bank for the same period of 2017 shows net income in amount of $314,148.45[2]. He has also been developing a surgery center under the name of Eagle Eye Surgery. Ex. 1, Op. Mar. 26, 2019, at 8. He failed to disclose this entity to both the divorce Court and this Court.

Dr. Melki's real estate holdings in this country are held under different entities - Cynasa Holdings, LLC (owner of the future surgery center located at 15001 Dufief Mill Road, Gaithersburg, MD 20878) and Retina One LLC (owner of the office unit located at 25055 Riding Plaza, Suite 260, South Riding, VA 20152). In addition, Dr. Melki personally owes a business

---

[1] Ex. 3, at 3

[2] Ex. 4, Toufic Melki, MD - Profit & Loss 20171231[2445]

office[3] and a condo[4] in Arlington, VA. Dr. Melki and his accountants regularly transfer money between the entities in an effort to avoid taxes and reduce marital assets. Ex. 5.

Movants assert that the totality of the following actions of Dr. Melki's shall persuade the Court that Dr. Melki is not capable of acting in fiduciary capacity but in his own interests:

1. On June 1, 2018, Dr. Melki applied for a bank loan with Old Dominion National Bank by providing a sworn financial statement as a part of the loan application. Per Dr. Melki's own statement made under oath, his assets total liabilities were $1,633,000 and current assets $6,725,000. Which is not consistent with the bankruptcy filings made by Dr. Melki. In addition, Dr. Melki submitted his business financial reports that radically contradicted the reports obtained in divorce matter. As discussed supra, for period from January thru October 18, 2017, profit and losses report regarding medical practice shows <u>negative</u> income in amount of 383,158.04[5]. However, the P&L report filed with Old Dominion National Bank for the same period of 2017 shows net income in amount of $314,148.45[6]. It is a textbook example of being untruthful to the tribunal, as Dr. Melki tried to take advantage of those reports to minimize his domestic support obligations. In addition, Dr. Melki affirmed under oath that his business, medical practice under the name The Retina Centers of Washington, is worth $3 million. Ex. 6, Fin - Financial Statement 20180601, at 3. In the bankruptcy matter, he values his business much less, just $177,000.00. (ECF 019, at 8). Such inconsistency may not be explained.

---

[3] 1715 George Mason Dr., Suite 101, Arlington, VA

[4] 1530 Key Blvd, #728, Arlington, VA 22209

[5] Ex. 3, Quick books expenses, at 3

[6] Ex. 4, Toufic Melki, MD - Profit & Loss, Dec 31, 2017

2. According to tax documents Dr. Melki "donated" more than $700,000 to a charity called Combat Blindness International[7] who in return sent the bulk of that money to "Dr. Melki's hospital in Lebanon" to provide eye surgeries for the poor. The money is totally unaccounted for and Dr. Melki did not even disclose he has a medical practice in Lebanon, let alone a hospital that has received several hundred thousand dollars. On his tax return, starting from 2011, Dr. Melki reported income that did not exceed about $0.35 million. However, the state court established that Dr. Melki paid more than $1.9 million to different recipients in Lebanon[8] during the marriage. Dr. Melki he did not disclose his significant investment (over $0.23 million) in a surgery center business, Eagle Eye Surgical Center[9]. Notably, he has not disclosed that business neither in divorce matter, nor in bankruptcy, also this entity does exist and has fixed assets that may be liquidated.

3. Dr. Melki now claims to own property in Lebanon which he claimed he did not during the divorce. (ECF 19, at 5); *see also* Ex. 8, Tr. 46:6-16; but Ex. 7, Property schedule (Fatka Kesrwan property was not listed).

4. During divorce trial Dr. Melki made a confession that he lied to the bank about his wealth to obtain a loan to purchase one of the properties. Ex. 1, Op. Mar. 26, 2019, at 20. This may constitute a federal crime that carries a maximum sentence of 30 years of imprisonment. *See* 18 U.S.C. § 1014. Movants believe that this is a significant factor in favor appointment of the Chapter 11 trustee.

5. In addition, the Court found that "Dr. Melki obstructed the pretrial process, filing appeals when he was sanctioned for that behavior, and refusing to provide the experts long

---

[7] Ex. 1, Op. Mar. 26, 2019, at 9.

[8] Ex. 1, Op. Mar. 26, 2019, at 14.

[9] Ex. 1, Op. Mar. 26, 2019, at 8.

requested information until shortly before trial." Ex. 1, Op. Mar. 26, 2019, at 6. The Court also found that Dr. Melki "has generally been uncooperative with the court process" and the one who "has refused to comply with Orders granting sanctions against him." *Id*. at 14-15. And the Court further concluded that "Dr. Melki was untruthful in court about his economic resources." *Id*. at 17. The Court repeated its conclusion when discussed the health of the parties, *id*. at 18 ("Both are in general good health. Dr. Melki is untruthful.") and when the Court weighted all the factors to make an equitable distribution. *Id*. at 19 ("… Dr. Melki is not credible."). He simply "did lie… to the Court." *Id*. at 20. And this type of conduct explicitly necessitates the appointment of a Chapter 11 trustee. *See, e.g., In re Grasso*, 490 B.R. 500, 506 (Bankr. E.D. Pa. 2013) (lying to the court was one of the reasons to appoint a Chapter 11 trustee).

6.  Dr. Melki brought a civil action against his former friend and driver Saba Armani for alleged conversion of property[10]. The Court found Dr. Melki's "credibility to be very lacking." Ex. 2, Mem Nov. 20, 2018, at 7:17-18. The Court did not believe Dr. Melki's testimony, *Id*., and the complaint was denied. The violations of the judicial process by Dr. Melki, not by his counsel, were so significant that the Court found the conduct of Dr. Melki was in bad faith or without substantial justification. *Id*. at 10:12-19. Therefore, the Court awarded Mr. Armani reasonable attorney's fees and costs as an exception to American rule.

Based on that, Movants believe that Dr. Melki is fully capable of repaying all his existing and made up debts. Dr. Melki's estate just requires some help from this Court who can appoint Chapter 11 trustee to clean up Dr. Melki's structure of assets, liquidate the assets that belong to the Estate directly and indirectly, and distribute the proceeds among creditors as the Bankruptcy Code instructs.

---

[10] *Melki v. Armani*, civil case No. 433713V, Montgomery County Circuit Court.

### B. *Actions of Dr. Melki after the bankruptcy commenced*

Even after Dr. Melki filed a petition for Chapter 11 bankruptcy his behavior has not changed a bit as he has not paid the domestic support obligations, he lied to the Court and U.S. Trustee so as to the creditors.

1. Dr. Melki has not paid all domestic support obligations ordered by Montgomery County Circuit Court on March 26, 2019. Since April 18, 2019, rather than paying child support in the amount of $4,556 per month and alimony in the amount of $9,000 per month, he pays only $6,000 monthly, constantly increasing arrears, despite the clear expectation of this Court that these obligations would be honored. In addition to that, Dr. Melki asserts that there no domestic support obligations. (ECF 019, at 2, 10)

2. Dr. Melki took a luxurious trip to Lebanon in June 2019. His June 2019 report does not reflect a single dollar spent on this trip, although his expenses exceeded $6,000.[11]

3. At his Section 341 meeting, Dr. Melki testified that his former counsel in the domestic matter, Mr. Bart Colombo, is representing him pro bono. It is the same Mr. Colombo who filed lengthy motions with the Montgomery County Circuit Court regarding custody, appeared on June 18, 2019 and argued these motions, and when the relief was denied filed a request for *in banc* review, drafted and filed a brief that resembles the appellate one, and paid another lawyer Mr. Bizhan Beiramee, of Beiramee Law Group, P.C., to appear for Dr. Melki. Leaving alone the fact that a lawyer acting pro bono is arguably not allowed to pay another lawyer because it constitutes a financial assistance, MD Rules Attorneys, Rule 19-301.8(d) (with certain exceptions, "[a]n attorney shall not provide financial assistance to a client in connection with pending or contemplated litigation."). In addition, Dr. Melki testified under oath that Mr. Colombo

---

[11] Ex. 9, Tr. 26:18, 27:6-12

and O'Reilly & Mark P.C. split about 8 months ago. Thus, also O'Reilly & Mark P.C. is listed by Dr. Melki as one of his creditors that allegedly owed $83,198 (ECF 19, at 23), there is no conflict. When the office of Mr. Gowen sent a courtesy copy of certain filings made in response to Dr. Melki's frivolous filings in custody matter, the auto response was received that Mr. Colombo, as an attorney working at O'Reilly & Mark P.C., is not available until July 29, 2019. Ex. 10. Another example of Dr. Melki's inability to be truthful and honest to the tribunal.

### C. Appointment of Chapter 11 Trustee is in the best interests of creditors and the estate.

If this Court concludes that the cause exists to appoint a Chapter 11 trustee, it must also weigh whether such an appointment is in the best interests of creditors and the estate as oppose to, for instance, conversion this matter to Chapter 7 or dismissal. "Section 1112 and Section 1104 read together require the court to make a finding as to what remedy is in the best interest of the creditors and the estate." *In re Sydnor*, 431 B.R. 584, 600 (Bankr. D. Md. 2010). Thus, when considering appointing a trustee or converting the case to one under chapter 7,

> [t]he distinguishing factor ... is the expanded possibility in Chapter 11 for a trustee using independent judgment and good management to direct the affairs of the estate[ ] including on-going operations (if any) in order to optimize recovery for the creditors and the estate.

*Id.*

In this case, the Dr. Melki's actions demonstrate that he is not truthful to this tribunal and state court tribunals, and he is a repeated liar. Dr. Melki cannot be trusted as a fiduciary. Dr. Melki decides what assets he wants to disclose and what not, when he tells the truth under oath and when he does not. Movants contend that in order to maximize the value of the assets and subsequent their ultimate distribution to creditors will likely require adequate management that will not "doctor" the financial reports and hide the assets. Moreover, a trustee is more likely to be able to liquidate the assets that belong to entities that Dr. Melki owes ensuring proper payments to secured

9

and unsecured creditors. Based on that, it is proper to appoint a chapter 11 trustee as the cause exists and that it is in the best interests of creditors and the estate.

WHEREFORE, the Movants respectfully ask this Court to enter an Order appointing a Chapter 11 Trustee and for such other and further relief as is just and proper.

Date: August 26, 2019   Respectfully submitted,

  /s/ *Jeff Sherman*
Jeffrey M. Sherman, MD Bar No. 08505
LAW OFFICES OF JEFFREY M. SHERMAN
1600 N. Oak Street, Suite 1826
Arlington, VA 22209
(703) 855-7394
jeffreymsherman@gmail.com
*Attorney for Cynthia Samaha, Saba Armani, Christopher Gowen, of Gowen Silva and Winograd, PLLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 26, 2019, I served a copy of the foregoing, by either first class mail, postage prepaid, or, where permissible under the applicable Rules of this Court, by electronic means, upon the following:

Janet M. Nesse
McNamee, Hosea, et al.
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
Email: jnesse@mhlawyers.com

Lynn A. Kohen
U.S. Trustee Office
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770
Email: lynn.a.kohen@usdoj.gov

Jeffrey M. Orenstein
WOLFF & ORENSTEIN, LLC
Shady Grove Plaza
15245 Shady Grove Road, Suite 465
Rockville, Maryland 20850
Email: jorenstein@wolawgroup.com

                                                */s/ Jeff Sherman*
                                                Jeffrey M. Sherman