**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-15265 LSS |
| TOUFIC SALIM MELKI, | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | |
| | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

## INTRODUCTION

Pursuant to Section 1121 of Title 11 of the United States Code, Toufic Salim Melki,

Debtor and Debtor-in-possession, by and through his counsel, Janet M. Nesse, Esq., and

McNamee Hosea, et al., [the "Debtor"], in the above-captioned bankruptcy case, by and through

his attorneys Janet M. Nesse, Justin P. Fasano, and McNamee, Hosea, Jernigan, Kim, Greenan &

Lynch, P.A., hereby respectfully submits the following Debtor's Plan of Reorganization pursuant

to the provisions of Chapter 11 of Title 11, United States Code.  The Debtor is the proponent of

the Plan within the meaning of Bankruptcy Code section 1129.  Reference is made to the

Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the

Debtor's history, businesses and operations, (ii) a summary and analysis of this Plan, and (iii)

certain related matters, including risk factors relating to the consummation of this Plan.  No

solicitation materials, other than the Disclosure Statement and related materials transmitted

therewith, have been approved for use in soliciting acceptances and rejections of the Plan.

Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan

unless and until the Disclosure Statement has been approved and distributed to all Holders of

Claims and Interests to the extent required by Bankruptcy Code section 1125.  Subject to certain

restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule

3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior

to its substantial consummation.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO), EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I
## DEFINITIONS AND TERMS OF CONSTRUCTION

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"8931 Property"** means the Debtor's real property located at 8931Edgewood Drive, Gaithersburg, Maryland 20877, and all improvements thereon and rights associated therewith.

**"8701 Property"** means the Debtor's real property located at 8701 Fields Court, Gaithersburg, Maryland 20877, and all improvements thereon and rights associated therewith.

**"1530 Property"** means the Debtor's real property located at 1530 Key Boulevard,#728, Arlington, Virginia 22209 and all improvements thereon and rights associated therewith.

**"1715 Property"** means the Debtor's real property located at 1715 George Mason Drive, #101, Arlington, Virginia 22205, and all improvements thereon and rights associated therewith.

**"1082/Ftaka Kesrwan Property"** means the Debtor's real property located at 1082/Ftaka Kesrwan, and all improvements thereon and rights associated therewith.

**"Administrative Expense Claim"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code section 503(b) or 28 U.S.C. § 1930.  These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date but prior to the Effective Date; (b) Professional Fee Claims; (c) Administrative Tax Claims; and (d) fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims) for services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

**"Administrative Expense Claims Objection Date"** means the last day for filing an objection to any request for the payment of an Administrative Expense Claim other than a Professional Fee Claim, which shall be the later of (a) sixty (60) days after the Effective Date or

2

(b) such other date specified in this Plan or ordered by the Bankruptcy Court.  The filing of a motion to extend the Administrative Expense Claims Objection Date shall automatically extend the Administrative Expense Claims Objection Date until a Final Order is entered on such motion.  In the event that such motion to extend the Administrative Expense Claims Objection Date is denied by the Bankruptcy Court, the Administrative Expense Claims Objection Date shall be the later of the current Administrative Expense Claims Objection Date (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Expense Claims Objection Date.

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the date of the Petition Date and ending on the Effective Date.

**"Allowed Administrative Expense Claim"** means an Administrative Expense Claim that is allowed as set forth in Article II.A.

**"Allowed Claim"** means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any Claim or portion of a Claim that was or is satisfied or released during the Case is not an Allowed Claim.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

**"Allowed Class '**'** Claim"** means an Allowed Claim in the particular class described.

**"Assets"** means all assets of the Debtor's Estate including, but not limited to, "property of the estate" as described in section 541 and 1115 of the Bankruptcy Code.

**"Avoidance Action"** means any Causes of Action arising under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

**"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Maryland.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

**"Case"** means the above-captioned case commenced by the Debtor in the Bankruptcy Court.

**"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to section 510 of the Bankruptcy Code, and (8) Section 506(c) Claims; and (9) any other claims which may be asserted against third parties.

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5).

**"Claims Bar Date"** means, with respect to Claims filed by Creditors, August 19, 2019, which was the last date for Creditors to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case, and with respect to Claims filed by the Debtor on behalf of Creditors, September 18, 2019 which was the last date for the Debtor to file Claims on behalf of Creditors against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004.

**"Claims Objection Deadline"** means the last day for filing objections to General

4

Unsecured Claims, which day shall be the later of (a) three hundred and sixty (360) days after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The Debtor may seek a one time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional three hundred and sixty (360) days after the current Claims Objection Deadline.  Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances.  In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline.  For the avoidance of doubt, after the Effective Date, no Person other than the Debtor shall be authorized to file objections to Claims other than Professional Fee Claims.

**"Citibank"** means Citibank Home Equity.

**"Class"** means a group of Claims as classified in Article III.

**"Confirmation"** means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129.

**"Debtor"** means Toufic Salim Melki.

**"Disclosure Statement"** means the Disclosure Statement with Respect to Debtor's Plan of Reorganization.

**"Disclosure Statement Order"** means the order entered by the Bankruptcy Court approving the Disclosure Statement.

**"Disputed Claim"** means a Claim:

     (a) As to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

     (b) As to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Disputed Claim Amount"** means (a) if the liquidated amount is set forth in the proof of claim relating to a Disputed Claim, (i) the liquidated amount set forth in the proof of claim relating to the Disputed Claim as may have been modified by Final Order of the Bankruptcy Court; (ii) the disputed amount as agreed to by the Debtor and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount estimated as disputed by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the disputed amount agreed to by the Debtor and the Holder of such Disputed Claim or (ii) zero; or (c) if the Claim was listed on the Bankruptcy Schedules as unliquidated, contingent or disputed and no proof of claim was filed, or deemed to have been filed, by the applicable Claims Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

**"Effective Date"** has the meaning set forth in Article IX.B hereof.

**"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**"Estate"** means the bankruptcy estate of the Debtor.

"**Estate Parties**" means the Persons referenced in Article VIII.B hereof.

"**Exempt Assets**" means all Assets of the Debtor properly exempted by the Debtor.

"**Executory Contracts**" means those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejections pursuant to §365 of the Bankruptcy Code.

**"Fee Application"** means the requests or applications for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) That has not been reversed, rescinded, stayed, modified, or amended;
(b) That is in full force and effect; and
(c) With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, Tenant Claim, or a Secured Claim.

"**Governmental Agency(y)(ies)**" means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

"**Holder**" means the holder of a Claim.

"**Insider**" means an insider as that term is defined in Bankruptcy Code section 101(31).

"**Leases**" means any agreement between the Debtor and any of his tenants for the lease of real property, which is in effect as of the Effective Date, including but not limited to the Leases listed on **Exhibit A.**

"**Local Rules**" means the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maryland, as now in effect or hereafter amended and applicable to the Case.

"**Non-Tax Priority Claim**" means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a)(3), (4), (5), or (7), other than a Tenant Claim.

"**Person**" means any natural person or Entity.

"**Petition Date**" means April 18, 2019.

"**Plan**" means this Debtor's Plan of Reorganization, as it may be amended or supplemented.

"**Plan Document**" means this Plan, and any Exhibits thereto.

"**Plan Participants**" means the persons entitled to exculpation as provided in Article VII of the Plan.

"**Post-Effective Date Expenses**" means any expenses incurred by the Debtor after the Effective Date including, but not limited to, professional fees and expenses incurred by the Debtor, fees payable to the United States Trustee, and premiums related to any bond or insurance policy, and reasonable expenses incurred by the Debtor in the ordinary course of business.

"**Post-Petition**" means the time after the Petition Date.

"**Priority Tax Claim**" means a Claim entitled to priority against the Debtor under Bankruptcy Code section 507(a)(8), or which is secured by the Assets of the Debtor.

"**Pro Rata**" means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same

7

as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estate; or

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to sections 327 and/or 328 of the Bankruptcy Code.

**"Properties"** means the following real properties located at (i) 1715 George Mason Drive, #101, Arlington, Virginia 22205; (ii) 9701 Fields Court, Gaithersburg, Maryland 20877; (iii) 8931Edgewood Drive, Gaithersburg, Maryland 20877; and (iv) 1530 Key Boulevard, #728, Arlington, Virginia 22209.

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtor rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

**"Section 506(c) Claim"** means any surcharge claim asserted by the Debtor after the Effective Date pursuant to Section 506(c) of the Bankruptcy Code.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

**"Tenant"** means a party to a Lease with the Debtor under which the Debtor is a landlord.

**"Tenant Claim"** means a Claim against the Debtor pursuant to a Lease, including but not limited to a claim for the return of a security deposit.

**"Unclaimed Property"** means any Cash or other property which is unclaimed for sixty (60) days after its distribution.

**"United Bank"** means United Bank Home Mortgage.

**"U.S. Trustee"** means the Office of the United States Trustee.

### RULES OF INTERPRETATION

The rules of construction in Bankruptcy Code section 102 apply to this Plan.

1.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

2.      A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

3.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

4.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

5.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

6.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

7.      Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

8.      Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

9.      Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

10.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Maryland shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

11.     All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

## <u>ARTICLE II</u>
## PROVISION FOR PAYMENT OF ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS AND PRIORITY TAX CLAIMS

A.      Allowed Administrative Expense Claims: Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the holders of Allowed Administrative Expense Claims will receive Cash equal to the unpaid portion of such Allowed

Administrative Expense Claim on the later of the (a) the Effective Date, (b) the date on which said entity becomes a holder of such Allowed Administrative Expense Claim, or (c) such date as such entity may agree to with the Debtor, provided however, that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as a debtor in possession, or liabilities arising under other obligations incurred by the Debtor, as a debtor in possession, whether or not incurred in the ordinary course of business, shall be paid by the Liquidating Debtor in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.

**B.      Administrative Claims Bar Date: Notwithstanding section 503(a) of the Bankruptcy Code, any person seeking payment of an asserted Administrative Expense Claim under section 503 of the Bankruptcy Code, other than a governmental unit seeking payment of an expense under § 503(b)(1)(B) or (C), that was incurred on or before the Effective Date but which has not been paid by the Debtor, shall be required to file an application for the allowance of final payment of said claim on or before thirty (30) calendar days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged.  Notwithstanding the foregoing, Professional Persons with Administrative Expense Claims shall comply with the provisions of Article IV of this Plan.**

C.      Allowed Priority Claims: The holders of Allowed Priority Claims will receive Cash equal to the unpaid portion of such Allowed Priority Claim, including post-petition interest at the federal judgment rate in effect on the Confirmation Date, on the later of (a) the Effective Date, (b) the date on which said entity becomes a holder of such Allowed Priority Claim, or (c) such date as such entity may agree to with the Debtor.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Plan divides Creditors into Classes based on their legal rights and interests and provides for the satisfaction of Claims from Assets of the Estate, including post-petition income, and certain Exempt Assets.  This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and Distribution under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.  The following table summarizes the Classes of Claims and Interests under this Plan.

| **CLASS** | **DESCRIPTION** | **IMPAIRED/ UNIMPAIRED** | **VOTING STATUS** |
|---|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |

| Class 2 | Secured Claim of Citibank Home Equity | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 3 | Secured Claim of United Bank Home Mortgage | Impaired | Entitled to Vote |
| Class 4 | Secured Claim of United Bank Home Mortgage | Impaired | Entitled to Vote |
| Class 5 | Tenant Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Interests | Impaired | Deemed to Accept; Not Entitled to Vote on the Plan |

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERSTS UNDER THE PLAN

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim may have in or against the Debtor, the Estate or his property.  This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate or property of the Debtor or the Estate.  All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

**A.     Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be forever barred from asserting those Administrative Expense Claims.

a.     **Allowed Administrative Expense Claims Other than Professional Fee Claims**

An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if: on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy

11

Court a motion or application requesting that the Debtor pay the Claim and served the motion or application on the Debtor and the U.S. Trustee. Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline.  Provided, however, that the Debtor may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtor' business to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

b.      **Allowed Professional Fee Claims**

Final Fee Applications must be filed no later than twenty-one (21) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtor, and the Office of the U.S. Trustee.  Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

c.      **Allowed Priority Tax Claims**

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim.  In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

d.      **Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

12

i.  **Administrative Expense Claims**

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by the Debtor.  Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan.

ii.  **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, at the sole option of the Debtor, each holder of an Allowed Priority Tax Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) equal quarterly Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the federal judgment rate in effect on the Petition Date, over a period not to end later than five (5) years after the Petition Date, which shall begin on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  Holders of Priority Tax Claims will be paid in full on account of such Claims and are not entitled to vote on this Plan.

e.  **Classified Claims**

i.  **Classification and Treatment of Non Tax Priority Claims (Class 1)**

**Classification:**        Class 1 consists of all Non-Tax Priority Claims.

**Treatment:**        Provided that a Non-Tax Priority Claim has not been paid prior to the Effective Date, and except to the extent that a holder of a Non-Tax Priority Claim agrees to a different treatment, each holder of an Allowed Non-Tax Priority Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Non-Tax Priority Claim, on the Effective Date, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim. Class 1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan.

     **ii.**        **Classification and Treatment of Secured Claim of Citibank Home Equity (Class 2)**

**Classification:**        Class 2 consists of the Secured Claim of Citibank Home Equity

**Treatment:**        Citibank Home Equity, in full and complete settlement, satisfaction and discharge of its Allowed Secured Claim, shall have an allowed secured claim of the amount of $237,489.00 secured by a lien against the 8931 Property. Debtor will pay the full amount of the Allowed Class 2 Secured Claim in full, including interest accrued at the subject contractual rate through the date of payment, from the proceeds of the sale of the 8931 Property. The payment of the Allowed Class 2 Secured Claim will be provided upon the closing of the sale of the 8931 Property, to be completed within twenty-four months of the Effective Date. The holder of the Class 2 Claim will retain its lien until the 8931 Property is sold, and the payment described herein is provided. Upon payment the Class 2 creditor will cause its lien against the 8931 Property to be released.

If the loan is not escrowed, the Debtor shall timely pay all real estate taxes with respect to the 8931 Property. The Debtor shall maintain insurance listing Citibank Home Equity as an insured party on the 8931 Property sufficient to satisfy the Allowed Secured Claim of Citibank Home Equity in this case.

Holders of Class 2 Claims are impaired and are entitled to vote to accept or reject this Plan.

     **iii.**        **Classification and Treatment of Secured Claim of United Bank Home Mortgage (Class 3)**

14

**Classification:**    Class 3 consists of the Secured Claim of United Bank Home Mortgage

**Treatment:**    United Bank Home Mortgage, in full and complete settlement, satisfaction and discharge of its Allowed Secured Claim, shall have an allowed secured claim of the amount of $50,041.00 secured by a lien against the 9701 Property. Debtor will pay the full amount of the Allowed Class 3 Secured Claim in full, including interest accrued at the subject contractual rate through the date of payment, from the proceeds of the sale of the 9701 Property. The payment of the Allowed Class 3 Secured Claim will be provided upon the closing of the sale of the 9701 Property, to be completed within twenty-four months of the Effective Date. The holder of the Class 3 Claim will retain its lien until the 9701 Property is sold, and the payment described herein is provided. Upon payment the Class 3 creditor will cause its lien against the 9701 Property to be released.

If the loan is not escrowed, the Debtor shall timely pay all real estate taxes with respect to the 9701 Property. The Debtor shall maintain insurance listing United Bank Home Mortgage as an insured party on the 9701 Property sufficient to satisfy the Allowed Secured Claim of United Bank Home Mortgage in this case.

Holders of Class 3 Claims are impaired and are entitled to vote to accept or reject this Plan.

iv.    **Classification and Treatment of Secured Claim of United Bank Home Mortgage (Class 4)**

**Classification:**    Class 4 consists of the Secured Claim of United Bank Home Mortgage

**Treatment:**    United Bank Home Mortgage, in full and complete settlement, satisfaction and discharge of its Allowed Secured Claim, shall have an allowed secured claim of the amount of $377,512.00 secured by a lien against the 1530 Property. Debtor will pay the full amount of the Allowed Class 4 Secured Claim in full, including interest accrued at the subject contractual rate through the date of payment, from the proceeds of the sale of the 1530 Property. The payment of the Allowed Class 4 Secured Claim will be provided upon the closing of the sale of the 1530 Property, to be completed within twenty-four months of the Effective Date. The holder of the Class 4 Claim will retain its lien until the 8931 Property is sold, and the

15

payment described herein is provided. Upon payment the Class 4 creditor will cause its lien against the 8931 Property to be released.

If the loan is not escrowed, the Debtor shall timely pay all real estate taxes with respect to the 1530 Property.  The Debtor shall maintain insurance listing Citibank Home Equity as an insured party on the 1530 Property sufficient to satisfy the Allowed Secured Claim of United Bank Home Mortgage in this case.

### v.       Classification and Treatment of Tenant Claims (Class 5)

**Classification:**    Class 5 consists of the claims of the Tenants under a Lease.

**Treatment:**    The Tenants, in full and complete settlement, satisfaction and discharge of their claims, shall have an allowed secured claim for any security deposit held by the Debtor for their benefit under a Lease.  All other Claims of any Tenant which are known as of the Effective Date shall be discharged pursuant to the procedures set forth below.

Holders of Class 5 Claims are impaired and are entitled to vote to accept or reject this Plan.

### vi.       Classification of General Unsecured Claims (Class 6)

**Classification:**    Class 6 consists of holders of General Unsecured Claims

**Treatment:**    The total Allowed Claims to which the Debtor does not plan to object included in Class 6 is anticipated to be $1,390,151.45. Debtor will provide payments of $6,000.00 per quarter commencing on or before the first day of the first calendar quarter after the Effective Date through the twentieth quarter after the Effective Date, and such additional quarters as the Court determines is necessary for the Debtor to satisfy the best interest of creditors test of 11 U.S.C. § 1129(a)(7).  The payments will be made in consecutive quarterly intervals and will be distributed among all Class 6 creditors on a pro rata basis.

Additionally, the Debtor will pay (1) the net proceeds from the sale of the Properties, after payments to co-owners and taxes associated with the sale, and (2) the proceeds of any Causes of Action, net of applicable costs of litigation, pro rata, to holders of Allowed Class 6 Claims.

Payment of the foregoing sum to Class 6 creditors shall constitute full and final satisfaction of the claims of Class 6 creditors.

Holders of Class 6 Claims are impaired and are entitled to vote to accept or reject this Plan.

### i.  Classification of Interests (Class 7):

The Debtor shall be entitled to keep all Exempt Assets under the plan free and clear of any liens or Claims, except as stated in this Plan.

The Debtor shall be entitled to keep all Assets, other than the Properties, under the Plan.  In exchange for such entitlement, the Debtor shall make a new value contribution of quarterly payments totaling $120,000.00, to the Plan, as described above, for five years from the Effective Date, plus such additional quarters as the Court determines is necessary for the Debtor to satisfy the best interest of creditors test of 11 U.S.C. § 1129(a)(7).

The Debtor is not entitled to vote on the Plan.


## ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

### A.     Impaired Classes to Vote

Each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

### B.     Acceptance by Class of Creditors

An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Voting Deadline.

### C.     Elimination of Classes

Any Class that does not contain any Allowed Clams or Interests, or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of

17

(a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

**D.    Cramdown**

In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan in accordance with section 1129(a) of the Bankruptcy Code.

**ARTICLE VI**
**MEANS FOR IMPLEMENTAION AND EXECUTION OF THE PLAN**

**A.    Revesting of Property**

All property of the Estate shall revest in the Debtor on the Effective Date, free and clear of all other liens, claims, interests and encumbrances, except for the liens specifically granted by this Plan.

**B.    Plan Objectives**

The Debtor, through the Plan, proposes to (i) sell the Properties and pay the respective Allowed Secured Claims on each of the Properties, in full pursuant to each sale; (ii) pay out the interests of co-owners; (iii)  provide quarterly payments under the Plan to pay creditors as set forth in the Plan; and (iv) provide payment of the net proceeds of the sale of the respective Properties and Causes of Action, if any, to pay creditors as set forth in the Plan.

**D.    Retention of Professionals**

On the Effective Date, the Debtor shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, realtors, consultants, and financial advisors, as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements.  Professionals engaged by the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein.  If the Debtor has any objection to an application for compensation submitted to him by a Professional, the Debtor and the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter.

**E.    Sale of Properties:**

Within 24 months of the Effective Date, the Debtor shall sell the following properties, by private sale: (i)  9701 Fields Court, Gaithersburg, Maryland 20877; (ii) 8931Edgewood Drive, Gaithersburg, Maryland 20877; and (iii) 1530 Key Boulevard, #728, Arlington, Virginia 22209.

The proceeds of the sale of each of the Properties, net of any applicable commissions and costs of sale, and payments of the interest of co-owners, shall, within 28 days of the sale, be distributed first to any outstanding Post-Effective Date Expenses, and second to holders of Allowed General Unsecured Claims in Class 6 of the Plan pro rata, with a reserve for anticipated U.S. Trustee fees and income taxes.

Within fourteen days of the sale of each Property, the Debtor shall file a report of sale and the proposed distribution.

The Debtor will request that the Confirmation Order authorize him to sell each of the Properties, by private sale, as set forth herein.

**F.  Litigation Proceeds:**

The proceeds of any recovery on the Causes of Action, net of any costs of litigation, shall, within 28 days of completion of the litigation, shall be distributed first to any outstanding Post- Effective Date Expenses, and second to holders of General Unsecured Claims in Class 6 of the Plan pro rata, with a reserve for anticipated U.S. Trustee fees and income taxes. Within fourteen days of the completion, the Debtor shall file a report of the result of litigation and proposed distribution of proceeds.

**G.    Distributions**

**a.  Distribution of Property Under the Plan**

**i.  Source of Distributions**

The sources of all Distributions and payments under this Plan are the Debtor's quarterly Plan payments, the net proceeds of the sale of Debtor's Properties, and the net proceeds of the Causes of Action, if any.

**ii.  Manner of Cash Payments**

Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Debtor or, at the Debtor's option, by wire transfer from a domestic bank.  Cash payments to foreign entities holding Allowed Claims may be paid, at the Debtor's option, either in the same

19

manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

### iii.  Setoff and Recoupment

Notwithstanding anything to the contrary in this Plan, the Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Debtor or the Estate may have against the claimant or the Person holding the Allowed Claim. The Debtor does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.  In addition, the settlement or adjudication of any Avoidance Action shall not bar the Debtor from filing a subsequent objection to Claim.  The Debtor may assert all of the same rights and defenses, including all setoff rights and rights under Section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as he could against the original Holder of the Claim.

### iv.  Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### v.  Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.  The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements.  All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers.  Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive

20

responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Debtor may require any Creditor to provide a completed form W-8 or W-9 IRS tax form or otherwise furnish to the Debtor its tax identification number as assigned by the IRS and the Debtor may condition any distribution to any Creditor upon receipt of such tax identification number.

### vi.  No *De Minimis* Distributions

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $10.00 will be made by the Debtor to any Person holding an Allowed Claim. No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Article.

### vii.  Fractional Dollars

Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### viii.  No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Debtor does not dispute, which Distribution shall be made by the Debtor at the same time and in the same manner that such Debtor makes Distributions to Holders of similar Allowed Claims pursuant to the provisions of the Plan.  The Debtor may, in his discretion, withhold Distributions otherwise due and payable by the Debtor hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that

becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

### ix.  Undeliverable or Unclaimed Distributions

Subject to subparagraphs i-viii above, Distributions to Persons holding Allowed Claims will initially be made by mail as follows:

**1.**  Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Debtor; or

**2.**  If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable.  If a Distribution is returned to the Debtor as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Debtor will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Debtor is timely notified in writing of that Person's current address.  Subject to the following paragraph, until they become deliverable, the Debtor may, in his discretion, create a Plan Reserve for undeliverable Distributions for the benefit of the Persons entitled to the Distributions.  These Persons will not be entitled to any interest on account of the undeliverable Distributions.

Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within the later of six months after the Effective Date, or sixty (60) days after a Distribution is returned to the Debtor as undeliverable, or is deemed to be an undeliverable Distribution, provide the Debtor with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to or interest in that undeliverable Distribution and will be forever barred from receiving that undeliverable Distribution or asserting any Claim related thereto against the Debtor and the Estate.  Nothing in the Plan requires the Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

### H.    Operation of Businesses

Upon confirmation of this Plan, as may be modified from time to time, the Debtor shall be free to, in a manner not inconsistent with this Plan or any Order issued by the United States Bankruptcy Court, (1) pay Post-Effective Date Expenses without restriction, (2) operate his businesses without restriction and (3) to use,

sell or otherwise dispose of his Assets, or (4) obtain financing secured by his Assets.

## ARTICLE VII
## CAUSES OF ACTION/LITIGATION

### A. Preservation of Causes of Action and Defenses

Except as otherwise expressly provided in this Plan, on the Effective Date, all property of the Estate, including, but not limited to, all claims, rights, defenses, Causes of Action of the Debtor, shall vest in the Debtor, free and clear of all liens, Claims, charges or other encumbrances.

Unless expressly waived, released or settled in the Plan or any Final Order, the Debtor shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes of Action (including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Debtor may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor, at this time, or facts or circumstances which may change or be different from those which the Debtor believes to exist), whether arising before or after the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy Court, and specifically including but not limited to claims against the Maryland-National Capital Park and Planning Commission, and causes of action relating to violations of various consumer protection laws by scheduled creditors, including LVNV Funding, LLC and Cavalry SPV I, LLC. The Debtor, is authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Debtor shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions.

### B. Preclusion Doctrines

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been specifically released in the Plan or other Final Order. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Debtor from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.

No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Debtor will not pursue any and all available claims, rights, defenses, or Causes of Action against them.  The Confirmation Order shall not bar the Debtor by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Cause(s) of Action.

**THE DEBTOR WILL MAKE THE DECISION TO PURSUE, NOT PURSUE OR SETTLE VARIOUS CAUSES OF ACTION IN HIS DISCRETION WITH THE ADVICE OF COUNSEL.  THIS DECISION MAY BE BASED ON MANY FACTORS, INCLUDING BUT NOTLIMITED TO THE MERITS OF THE VARIOUS CAUSES OF ACTION AND THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION.  AS SET FORTH IN ARTICLE VII OF THE PLAN, THE DEBTOR AND HIS PROFESSIONALS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE DEBTOR'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OR SETTLEMENT OF ANY CAUSE OF ACTION.**

<u>**ARTICLE VIII**</u>
**EXCULPATION**

**A.     Limitation of Liability in Connection with the Case, the Plan, Disclosure Statement and Related Documents**

Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and his professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); *provided*, *however*, that no Person shall be relieved of liability for fraud, gross negligence, intentional misconduct or the willful violation of federal or state securities laws or the Internal Revenue Code.

The Plan provides that all Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.   Any Plan Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

**B.      Injunction Against Suing the Debtor, the Estate, and Estate Parties**

**Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

**As of the Effective Date, all Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Expense Claim against the Debtor, and his professionals, representatives, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims); and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims) until entry of the Discharge (as described below) or entry of a Relief Order pursuant to Article IX.**

**Upon the completion of all plan payments to Class 6 and 7 Creditors pursuant to this Plan, by Court Order, all of the remaining claims asserted against the Debtor by creditors in each class included the Plan, shall be, to the fullest extent permitted by §1141 of the Bankruptcy Code, satisfied, settled, released and discharged as against the Debtor, for any debt that arose before the Confirmation Date and any debt of a kind specified in §§502 and 503 of the Bankruptcy Code and all claims of any nature, whether or not (i) a proof of claim based on such debt or obligation is filed or deemed filed under §501 of the Bankruptcy Code, (ii) such Claim is allowed under §502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.  Accordingly, upon the entry of the Discharge, all persons or entities which could have been claimants, and all actual claimants listed herein, shall be precluded from asserting any Claim against Debtor, based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, and the Confirmation Order shall permanently enjoin all such person or entities, and their successors and assigns, from enforcing or seeking to enforce any such Claim against the Debtor.**

For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release or enjoin the prosecution of any claims or Causes of Action by the Debtor or the Estate.

## ARTICLE IX
## OTHER PLAN PROVISIONS

### A.  Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in writing in accordance with Article IX.C:

      **a.**  An order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court; and

      **b.**  A Confirmation Order in form and substance, reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court.

### B.  The Effective Date

This Plan will not be consummated or become binding unless and until the Effective Date Occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied:

      **a.**  Thirty (30) days have passed since the Confirmation Date;
      **b.**  The Confirmation Order is not stayed;
      **c.**  The Debtor has filed a notice with the Bankruptcy Court that the Effective Date has occurred.

### C.  Waiver of Conditions

Each of the conditions set forth in Articles IX.A and IX.B of this Plan, except for entry of the Confirmation Order, as set forth in Article IX.A of this Plan, may be waived in whole or in part by the Debtor.  For the avoidance of doubt, absent a stay pending appeal, the pendency of any appeal of the Confirmation Order shall not cause the delay of the Effective Date.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### D.  Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not timely occur, the Debtor reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void.

### E.  Executory Contracts and Unexpired Leases

26

### a.  Assumption of Leases

Except as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, on the Effective Date, the Debtor will be deemed to have assumed any and all of the Leases listed on **Exhibit A** to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365.  On the Effective Date, the Confirmation Order will constitute a Court order approving this assumption as well as the Cure Amount listed on **Exhibit A**.

To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, those executory contracts and unexpired leases identified in such documents as being assumed.  To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assigning, as of the Effective Date, those executory contracts and unexpired leases identified in such documents as being assigned.

### b.  Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, on the Effective Date, the Debtor will be deemed to have rejected any and all other agreements that the Debtor executed before the Effective Date -- other than Leases that were assumed above, and agreements that were previously assumed or rejected either by a Final Order or under Bankruptcy Code section 365 -- to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365.  On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection.

### c.  Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an executory contract or an unexpired lease must be filed with the Court and served on the Debtor and his counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims.  The Debtor reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

### F.  Indemnification Obligations

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification

obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

### G. Entry of a Final Decree

Promptly following the completion of all Distributions contemplated by this Plan, the Debtor will file a motion with the Bankruptcy Court to obtain the entry of a final decree.

Debtor reserves the right to request an Order of Full Administration, at any time subsequent to the commencement of quarterly payments or "distributions" to creditors under the Plan. Specifically, Debtor may file a Motion to Recognize Substantial Consummation of the Plan and seek entry of an Order of Full Administration, following such "substantial consummation" of the Plan as defined under 11 U.S.C. § 1101(2), combined with a Request for Final Decree.

The Final Decree will not be entered in this case until all distributions to to all holders of Class 6 claims have occurred and until all Administrative Expense Claims, including United States Trustee fees, have been paid. Should the above referenced Motion to Recognize Substantial Consummation of the Plan be granted, Debtor's Chapter 11 case will be closed administratively. Debtor will continue to perform under the Plan as though the Chapter 11 Case were open. Any party in interest may seek relief provided for in this Plan by reopening the Chapter 11 Case through the term of the Plan until all distributions have been completed. This is not intended to diminish or lessen the Court's jurisdiction preserved over this Chapter 11 Case. The purpose of the action would be to avoid the payment of quarterly fees to the United States Trustee following substantial consummation of the Plan, by dismissal as contemplated by 28 U.S.C. § 1930(a)(6).

**By entry of the Confirmation Order the provisions of Local Bankruptcy Court Rule 3022-1(a)(1) and (2) shall be waived in respect of this Plan; however, the entry of the Confirmation Order shall give authority for only Local Rule 3022-1(a)(3) to apply to this Chapter 11 Case.** As a result, Debtor may need to seek to reopen the Chapter 11 case in order to obtain a discharge based upon the requirement that all distributions under the Plan be completed before a final decree may issue. No retroactive quarterly fees to the Office of the United States Trustee will be recaptured or realized against the Debtor as a consequence of reopening the Chapter 11 Case for a discharge.

### H. United States Trustee Fees and Reports

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the Office of the United States Trustee under 28 U.S.C. §1930(a)(6) shall be paid on the Effective Date. After the Effective Date, the Debtor shall file post-confirmation

28

quarterly disbursement reports and pay all quarterly fees to the Office of the United States Trustee which are required by applicable law until the case is closed.

### I.  Post-Effective Date Effect of Evidences of Claims

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

### J.  No Recourse

No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Debtor and his professionals, representatives, successors, and assigns, or their respective property and assets, other than the right to receive Distributions in accordance with the terms of the Plan.

### K.  No Admissions

`Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan or the Disclosure Statement, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Estate, or any creditors or equity security holders in any further proceedings.

### L.  Severability of Plan Provisions

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

### M. Transfer Tax Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale or refinancing of the rel properties located at  (i) 1715 George Mason Drive, #101, Arlington, Virginia 22205; (ii) 9701

Fields Court, Gaithersburg, Maryland 20877; (iii) 8931Edgewood Drive, Gaithersburg, Maryland 20877; and (iv) 1530 Key Boulevard,#728, Arlington, Virginia 22209, or any other real property owned by the Debtor shall not be subject to any stamp tax or other similar tax.

### N.  Governing Law

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, Maryland law without giving effect to Maryland law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

### O.  Retention of Jurisdiction

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

    **a.**  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

    **b.**  Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor may be made in the ordinary course of business without the approval of the Bankruptcy Court;

    **c.**  Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor are parties or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

    **d.**  Effectuate performance of and payments under the provisions of this Plan;

    **e.**  Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

**f.** Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

**g.** Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

**h.** Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**i.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

**j.** Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

**k.** Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

**l.** Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

**m.** Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

**n.** Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

**o.** Hear and determine motions for Bankruptcy Rule 2004 examinations;

**p.** Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

**q.** Hear and determine any Causes of Action;

**r.**  Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

**s.**  Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

**t.**  Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

**u.**  Enforce all orders previously entered by the Bankruptcy Court;

**v.**  Dismiss the Case; and

**w.**  Enter a final decree closing the Case.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

**P.  Successors and Assigns**

The rights, benefits, and obligations of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

**Q.  Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**R.  Plan Modification**

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Debtor reserve the right to alter, amend, or modify the Plan before it is substantially consummated.

**S.  Withdrawal of the Plan**

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

**ARTICLE X**
**DEFAULT AND REMEDIES**

32

Should the Debtor default under the Plan while the automatic stay or any injunction under this Plan remains in effect, any affected creditor shall file a Notice of Default and shall mail a copy of the Notice of Default to Debtor and serve Debtor's attorney.  The Debtor shall have 15 days to cure the default.  In the event that the default is not cured, the affected Creditor will file an Affidavit of Default and shall be entitled to assert all rights available to it under state law against the Debtor or property of the Debtor's estate.  In the event the Debtor files an opposition on or before 15 days of the Notice disputing the default, the automatic stay and any applicable injunction under this Plan shall remain in effect until the dispute is adjudicated.  In the event that the Debtor does not timely cure any default, does not timely respond to an Affidavit of Default, or the Court rules against the Debtor with regard to any dispute it raises with regard to a Notice of Default or Affidavit of Default, the Creditor shall be entitled to an order granting relief from the injunction in this case (a "Relief Order").

## ARTICLE XI
## RECOMMENDATIONS AND CONCLUSION

The Debtor, as the proponent of the Plan, strongly recommends that all creditors receiving a Ballot vote in favor of the Plan.  The Debtor believes that the Plan maximizes recoveries to all Creditors entitled to receive distributions on their Allowed Claims and, thus, is in their best interests.  The Plan as structured, among other things, allows creditors to participate in distributions in excess of those that would be available if the Debtor's estate was liquidated under chapter 7 of the Bankruptcy Code, and minimizes delays in recoveries to all Creditors entitled to receive distributions on their Allowed Claims.

Dated: October 3, 2019          Respectfully Submitted,

/s/ Janet M. Nesse
McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.
Janet M. Nesse (MDB # 07804)
Justin P. Fasano, Esquire (MDB # 28659)
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
Phone: 301-441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com

Counsel for the Debtor and Debtor in Possession