## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| TOUFIC SALIM MELKI | ) | Case No: 19-15265 |
| | ) | (Chapter 11) |
| Debtor | ) | |
| | ) | |

## MOTION FOR COMPROMISE OF CONTROVERSY PURSUANT TO FED. R. BANKR. P. 9019(a) BETWEEN CYNTHIA SAMAHA NEE MELKI AND DEBTOR *NUNC PRO TUNC* TO JANUARY 21, 2020

TOUFIC SALIM MELKI (the "Debtor(s)") by and through John D. Burns, Esquire and The Burns Law Firm, LLC hereby files this Motion for Compromise of Controversy Pursuant to Fed. R. Bankr. P. 9019(a) Between Cynthia Samaha nee Melki and Debtor *Nunc Pro Tunc* To January 21, 2020 (The "Motion"), and states as follows:

### JURISDICTION:

1.      The Bankruptcy Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a), (b) and 157(b).  The Motion is a core proceeding as it relates to administration of the case, turnover of property of the estate, allowance and disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, and other proceedings affecting the liquidation of property of the estate. *See,* 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (O).

2.      The remaining matters concerning areas of near pure domestic relations law presented to the Bankruptcy Court herein (over which no original core federal jurisdiction arises) may be heard and approved as pendant matters by incorporating any final Order of the Circuit Court for Montgomery County that arises from prior submission of these matters to that tribunal for approval by the Domestic Case Motion under 28 U.S.C. § 1367.  All issues herein arise from

the same common operative nucleus of fact and should be issued in a single Bankruptcy Court Order for judicial economy and enforcement purposes. Indeed, the Bankruptcy Court has an obligation to recognize and give full effect to the Order of the Circuit Court resolving the Domestic Case Motion under the full faith and credit clause of 28 U.S.C. §1738 as a part of resolving the present Motion despite a lack of original subject matter jurisdiction over pure domestic relations matters[1].

### FACTUAL STATEMENT:

3.      On or about April 18, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Code") in the United States Bankruptcy Court for the District of Maryland. The Debtor is a debtor and debtor in possession under Sections 1106-1107 of the Code. The Debtor is in possession of all property of the estate. The Trustee and therefore here the Debtor has sole standing and capacity to present and file the present Motion arising under the plain language of Fed. R. Bankr. P. 9019(a) and therefore does so herewith.

4.      This Chapter 11 case contains and has involved much focus upon a domestic relations dispute, the essential facts of which follow in this Motion.

5.      The Debtor contends he remains married to Cynthia Samaha nee Melki (the "Creditor"). The Creditor contends she is divorced from the Debtor. (Collectively, the Creditor and Debtor shall be referenced as the "Parties" herein). The Parties remain on appeal on the conceptual

---

1 The United Stated Court of Appeals for the Fourth Circuit has instructed that "the full faith and credit statute requires a federal court to apply state *res judicat*a law in determining the preclusive effect of a state court judgment." *Meindl v. Genesys Pac. Tech., Inc. (In re Genesys Data Tech., Inc.)* , 204 F.3d 124, 129 (4th Cir. 2000) (citations omitted).

Constitutional issue concerning the legitimacy of the below described divorce Opinion and Order issued from the Circuit Court. However, the crux of this Motion and the below described Agreement that has been arrived at is purposed at resolving the tangible financial disputes and issues that previously existed between the Parties arising from the domestic relations disputes.

6.    On or about June 21, 2009, the Parties were married in Lebanon in any Orthodox Christian ceremony. The Parties have three (3) children from the marriage (the "Children") which remain under the age of majority. The Creditor filed a civil complaint for divorce and the Debtor opposed the divorce. There was much acrimonious litigation between the parties that consumed years and many thousands of dollars.

7.    On March 26, 2019, the Circuit Court for Montgomery County, MD (the "Circuit Court") entered an Opinion and Order in Civil Case 13142FL (Hereinafter the "Domestic Case") which addressed the Creditor's motion for absolute divorce and Defendant's responses thereto. (the "Opinion and Order") A complete and accurate copy of the "Opinion and Order" is annexed hereto and incorporated herein by reference as ***Exhibit 1.***

8.    A Custody Agreement was entered into on October 30, 2017 between the Parties which arrived at joint legal and shared physical custody and such other terms as are contained therein. (the "Custody Agreement"). The Parties have recognized in open court on January 21, 2020 that this Bankruptcy Court has no original jurisdiction over the Custody Agreement and various other domestic relations issues between the Parties as the Bankruptcy Court is not a tribunal with powers over divorce matters[2]. Accordingly, although there are references in this Motion and in the underlying

---

2 *Accord, Barber v. Barber*, 62 U.S. 582, 584 (1858). However, to the extent the Circuit Court approves the Domestic Case Motion, and issues an Order accordingly, this Court may exercise pendant claim jurisdiction pursuant to 28 U.S.C. § 1367. *See also, United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). While naturally this

hereinafter defined Agreement to concepts of domestic relations outside of the strict monetary claims and compromises made herein, those are for context only and any such domestic relations compromises have been submitted to the Circuit Court by Creditor on January 26, 2020 through an "Uncontested Motion to Modify March 26, 2019 Divorce Order and For Other Relief" (the "Domestic Case Motion"). A copy of the Domestic Case Motion and the underlying Settlement Agreement and Release with Exhibit (the "Agreement") thereto are collectively attached hereto and incorporated herein as ***Exhibit 2***.

9.     Among[3] the germane findings of fact and conclusions of law issued by the Circuit Court in the Opinion and Order was the following: (i) the parties were granted an absolute divorce; (ii) commencing from November 1, 2018 (and the first of the month thereafter), Debtor was obligated to pay to Creditor the monthly sum of $9,000.00 as indefinite alimony with credit to Plaintiff for any *pendent lite* undifferentiated support through March 26, 2019; (iii) commencing from November 1, 2018 (and the first of the month thereafter) Debtor was to pay child support in the monthly sum of $4,556.00; (iv) arrears due on the alimony and child support were to be retired by June 1, 2019, and be subject to enrollment as a judgment at the request of Creditor; (v) Debtor was to pay to the Creditor the sum of $400,000.00 as a monetary award no later than June 1, 2019, and be subject to enrollment as a judgment at the request of the Plaintiff; (vi) Debtor was obligated to continue to maintain health and dental insurance for the Children and pay their unreimbursed medical and dental expenses; (vii) Debtor was to pay to Creditor $107,000.00 for Creditor's unreimbursed legal fees and

Bankruptcy Court could exercise related to jurisdiction under 28 U.S.C. § 157(c)(2) as both Parties consent to the entry of an Order approving the Agreement by this Bankruptcy Court, this may require the involvement of the District Court which has no direct jurisdiction over domestic relations litigation.

3 The Order and Opinion contain substantial content not incorporated to the present Motion because it is not essential to the later described terms of what is to be referenced as the Agreement; however, as the Opinion and Order are

costs in the Domestic Case and no later than April 1, 2019, and be subject to enrollment as a judgment at the request of the Creditor; (viii)  The sum of $15,000.00 owed by Debtor to Creditor's Expert Mr. DeJong, Esquire, was reduced to judgment against Debtor; (ix) Creditor was awarded possession and use of the marital home at 8931 Edgewood Drive, Gaithersburg, MD  20877 ("Edgewood") for up to three (3) years from March 26, 2019 and thereafter may purchase Debtor's interest in Edgewood or Creditor may sell Edgewood; (x) the property situate at 9701 Fields Road Apt. 1803 Gaithersburg MD ("Fields Road") shall be sold and the Parties shall divide the net proceeds 50%/50%; (xi) Debtor shall pay to Creditor $103,069 as Creditor's 20% interest in Retina One, LLC; and (xii) Debtor shall pay to Creditor $65,887.00 as Creditor's 25% interest in Cynasa Holdings, LLC.

       10.    Heretofore, the Parties had extensive and very costly further litigation in the Circuit Court over the terms of the foregoing Opinion and Order, and Debtor filed a timely appeal on a number of these issues to the Court of Special Appeals of Maryland (the "Appeal"), which as docketed covered both the conceptual Constitutional issues concerning a Circuit Court in Maryland civilly dissolving a religious marriage from Lebanon as well as the financial disputes between the Parties among other topics arrived at in the Circuit Court.

       11.    The Parties have also had extensive and very costly further litigation in this Bankruptcy Court concerning the scope and impact of the automatic stay on various areas of the Domestic Case and alimony/support matters and a Motion for Appointment of a Trustee, with opposition, and a partial alleged settlement previously arrived at and opposition thereto.  A merits trial on the Motion for Appointment of a Trustee; the Motion to Enforce Settlement; and an ad

---

incorporated hereto by reference, their full terms and language control over any summaries set forth in these recitals.

hoc Application to Employ Bart Colombo as Special Counsel under 11 U.S.C. § 327(e)[4] was set for January 21, 2020 and January 24, 2020.  The adjudication of these matters would have consumed much time and likely not concluded in the time allotted given the scope of issues addressed in the pleadings.

12.    On January 21, 2020, after literally weeks of work by the undersigned on settlement matters, intensive meetings with the Debtor and accountant, with the productive cooperation by Creditor and her domestic counsel, Mr. Gowen[5], Esquire the Parties appeared in this Bankruptcy Court and after some initial but brief unfortunate opening statement contests, the undersigned advised the Bankruptcy Court that the parties were on the cusp of a settlement.  By the close of January 21, 2020 after 5:00pm, the Parties had concluded their settlement and placed it on the record with client testimony.  The hearing on January 24, 2020 was retained just to ensure the settlement could be documented.  The Parties had further issues, and by mid-afternoon they had reached a full complete and binding settlement which was embodied in the Agreement annexed to this Motion.  Dr. Melki again testified on January 24, 2020 that his prior testimony fully endorsing the Agreement from January 21, 2020 was incorporated; that he had no change of position on his assent to the Agreement as it was presented and signed, and that most importantly he could afford the Agreement, given his equivocation on that point which had transpired between January 21, 2020 and January 24, 2020.

13.    Of great personal significance to the Debtor is the fact that the Appeal is

---

4 This discrete matter was heard on testimonial evidence and the Application denied.

5 Without Mr. Gowen's active assistance in reaching this debt relief Agreement, the efforts would have been futile. The estate must recognize Mr. Gowen's efforts which might have been difficult to obtain when the Parties are deep into multi-year unproductive litigation.  There were no such difficulties here, and the estate is appreciative given the cost savings of litigation obtained.

being retained and prosecuted by Debtor solely limited to those core conceptual Constitutional issues that are stated in *Exhibit B* annexed to the Agreement[6], such exhibit having been "reauthored" to replace the various paragraphs within the Agreement that the rewrite relates to on the subject of the scope of the surviving Appeal issues.

        14.     Accordingly, as of January 21, 2020, the effective date of the Agreement, the Parties have agreed as follows on material issues[1]:

        Firstly, ***the lifetime alimony of $9,000.00 per month is reduced to $5,500.00 for 60 months***. The commencement date on the reduction is March 1, 2020. The commencement date on the 60 month period is the date on which the Debtor completes his satisfaction of the Reduced Sum which is discussed below. If the Debtor fails to be in full compliance with the Agreement within a year from January 21, 2020, the alimony reverts back to $9,000.00 per month without a term of limitation. The benefits to the estate and the Debtor of this provision are overwhelmingly positive. *<u>If the Creditor were to have lived 40 years, the alimony quotient payable to her under the Opinion and Order would have been $4,320,000.00 over her lifetime.</u>* The adjustment made by the Agreement if the Debtor were to satisfy the Reduced Sum presently *<u>reduces the term to a present sum of $330,000.00, a savings of over 90%</u>*, and if the Debtor were to satisfy the Reduced Sum over 6 months as is allowed in the Agreement, the reduction would be $363,000.00, still an astounding debt reduction. This was a pivotal term for the interests of the estate and the Debtor in entering into this Agreement.

---

6 Although counsel for the Debtor on the Appeal John "Jack" Quinn, Esquire had given oral authority on January 21, 2020 to summarize the retained portions of the Appeal to the Constitutional questions relating to the Circuit Court's jurisdiction to dissolve the marriage based on separation as set forth in the prior draft of the Agreement, he had a change of view and on the morning of January 24, 2020 after 10:30am for an 11:00am Bankruptcy Court hearing he elected to issue a lengthy set of paragraphs rewritten from the early authorized language. Thus, for convenience those

Secondly, ***the monetary award of $400,000.00 against Debtor and in favor of Creditor shall be reduced to $200,000.00.*** This monetary award as reduced shall be satisfied by payment by Debtor to Creditor in 180 days from January 21, 2020. This plainly on its face represents a further significant debt relief reduction to the estate and the Debtor from the Creditor.

Thirdly, ***Creditor's attorneys fees recoverable against Debtor fixed in the Opinion and Order at $107,000.00 are increased to $150,000.00.*** Timely payment must be made by $25,000.00 arriving by February 28, 2020 to the Creditor's attorney and $125,000.00 arriving by six months from January 21, 2020 to the Creditor's attorney or such fees and costs escalate by $100,000.00 further to $250,000.00. This is a significant benefit to the estate given that attorneys fees which arose in the context of a domestic support order (ie; actual alimony, maintenance and support) may be assessed against a debtor in appropriate circumstances in a bankruptcy setting despite the potential absence of such a basis to impose further such fees and costs under state domestic relations law[7]. Creditor's counsel has averred in the context of this case that the potential assessable fees substantially exceed $150,000.00 particularly given the questionable stay relief matters that were litigated over DSO payments by the Debtor through erstwhile counsel, and exacerbated litigation that was spawned in the Circuit Court on custody/support matters following the Opinion and Order. Although the Debtor does not agree with the averments of the Creditor on such litigation, the risk of escalated attorneys fees being assessed against Debtor has now been

---

paragraph rewrites are attached to and incorporated to the Agreement as "Exhibit B" to ensure Mr. Quinn's edits and input was not overlooked.

[7] *See generally, In re Blaemire*, 229 B.R. 665 (Bankr. D. Md. 1999); *In re Levin,* 306 B.R. 158, 162-163 (Bankr. D. Md. 2004) (attorneys fees are in nature of support whether or not they would have been under State law); *In re Evans*, 278 B.R. 408 (Bankr. D. Md. 2002) (even attorneys fees to enforce private school costs represent one inclusive maintenance obligation). This is not to say that the Bankruptcy Court would have recognized or awarded further attorneys fees or that the Circuit Court would have awarded further fees; however, that serious risk to the estate is ameliorated by this Agreement.

quantified.

Fourth, ***Debtor remains obligated to pay $15,000.00 to DeJong, Creditors' expert
as set forth in the Opinion and Order by 120 days from January 21, 2020***.  The foregoing
monetary award payment, the attorneys' fee payment and the expert payment are categorized as
the "Reduced Sum" in the Agreement and constitute in total $365,000.00.

Fifth, ***the Debtor shall convey Edgewood to Creditor by quitclaim deed within 45
days from the Order approving this Motion***.  This conveys the former marital home to Creditor
and forfeits an interest of the Debtor in such asset of approximately up to $300,000.00 based upon
the estimates of the Parties.  This is a benefit to the estate in that it eliminates further litigation
over this asset or disputes on the cost of carry of the Edgewood property while the Creditor
utilized her prior use and possession period of 3 years and contingencies of sale and the like.  It
also provides inducement for the Creditor to have provided a $200,000.00 debt relief on the
monetary award not to mention many millions of dollars in alimony debt relief to the estate and
the Debtor.  Debtor is responsible for any taxes or recording fees on Edgewood in connection with
such quitclaim transfer.

Sixth, ***the Debtor shall convey Fields Road to Creditor by quitclaim deed within
45 days from the Order approving this Motion***.  This conveys a condo owned jointly by the
Parties to Creditor and forfeits an interest of the Debtor in such asset of approximately up to
$45,000.00 based upon the estimates of the Parties after satisfaction of a mortgage.  This is a
benefit to the estate in that it eliminates further litigation over this asset or disputes on the cost of
carry of the Fields Road property while the parties further litigated matters.  It also provides

inducement for the Creditor to have provided a release of her interest under the Opinion and Order in Cynasa and Retina One to the Debtor not to mention also $200,000.00 debt relief on the monetary award not to mention many millions of dollars in alimony debt relief to the estate and the Debtor.  Debtor shall use the rents prior to the quitclaim delivery to pay down the mortgage and thereafter Creditor shall assume the lease and manage the Fields Road property as is appropriate to her interests by retention or sale following the quitclaim.  Creditor is responsible for any taxes or recording fees on Edgewood in connection with such quitclaim transfer.

Seventh, *the Creditor shall surrender her interests awarded by the Circuit Court in Cynasa and Retina One to Debtor.*  The Debtor may sell the South Riding property that is owned by Retina One by sale free and clear within this Court and must satisfy the Reduced Sum from such South Riding Property before the estate receives any financial proceeds from the sale. The residual shall be held as is necessary pending further Court Order on the administrative expenses and other claims from the estate prior to any proceeds passing to the Debtor.  The estate retains Cynasa and its real property free and clear of the interests of Creditor; provided, however that any disposition or use of Cynasa and its real property are subject to further Bankruptcy Court order.  The Debtor must timely comply with the provisions[8] concerning payment of the Reduced Sum, and transfer the Edgewood and Field Roads properties to Creditor before receiving the benefit to the estate of receipt of Cynasa and Retina One free and clear of Creditors' interest therein.

Eighth, *Debtor is able to retain his Appeal as it relates to the Constitutional issues or those pertaining to Exhibit B of the Agreement.*  The Debtor has bargained for and obtained a

---

8 As was recognized on the record on January 24, 2020, there is a typographical error on the Agreement which should

10

right from Creditor to continue his appeal through the Court of Special Appeals to a final Order

on the conceptual legitimacy of the divorce itself that was set forth in the Opinion and Order.  The

Debtor must deposit by February 15, 2020 into the escrow IOLTA account of Creditor's attorney

the sum of $50,000.00 as a "bond" to be applied against the attorneys fees of the Creditor's

attorney if the Debtor fails to prevail on his Appeal. If the Debtor prevails on his Appeal, this sum

must be returned to the estate within 10 days.  If the Creditor prevails on the Appeal the sum is

forfeit to the Creditor's attorney as attorneys fees.  This is a provision of the Agreement which

truly pertains to a domestic relations issue upon which the only direct link to the Bankruptcy

Court's jurisdiction is the posting of $50,000.00 by the Debtor for and indemnity of attorneys fees.

 Naturally, the source of these monies is pivotal to the Agreement, because if the Debtor posts

property of the estate for a litigation that will produce no financial gain to the estate (it is a pure

issue of law on whether a divorce decree entered in Maryland comports with the nature of the

marriage under an Orthodox Christian ceremony in Lebanon), then the Debtor may need to take

action to replenish the funds to the estate from family or other gift sources given concerns

espoused at the hearing sessions recently conducted whether this is a proper use of property of the

estate.  Irrespective of this potentially important issue between the Bankruptcy Court and the

Debtor, the Agreement calls for the posting of $50,000.00 to Creditor's attorney on or before

February 15, 2020, and the Debtor must comply if he wishes to proceed with the Appeal as

limited hereby.  The Circuit Court retains jurisdiction over the set off or application of these funds

to the Creditor's counsel for enforcement purposes.

       Ninth, ***the Agreement contains provisions on the release of the Debtor's passport,***

---

read (G), (H), and (I) not (H), (I) and (J) in this respect at paragraph Miscellaneous (J).

*his children's passports and abstaining from visitation, pre-school fees, transportation to school; custody/support issues here.* The Parties have memorialized matters in the Agreement concerning various domestic relations issues or matters over which this Bankruptcy Court has no direct jurisdiction such as passport releases or travel matters or custody/support matters, and suffice it to say these are noted herein so that it is clear that the Agreement contains terms on such matters. The Agreement as previously noted has been first submitted to the Circuit Court for approval. These matters have no benefit or detriment to the estate or the Debtor as a debtor in possession.

Tenth, *the Agreement contains a mutual waiver and release other than for enforcement of the Agreement.* A fee shifting provision exists such that any party not prevailing must pay reasonable attorneys fees and costs. There is an integration clause, and no fault against drafter for ambiguity clause. Parties have a three default rule, two are curable after notice, and the third is not curable absent consent from the adverse person/entity. Further provisions apply which can be read from the annexed Agreement hereto.

Eleventh, *the Agreement is contingent upon the prior approval by the Circuit Court* of the domestic relations matters as has been set forth in the Domestic Case Motion by Mr. Gowen, so that the Bankruptcy Court is not issuing an advisory opinion on such matters. Once an Order is entered by the Circuit Court, then the Bankruptcy Court may enter an Order approving the Agreement in toto both by approving the financial terms which are core proceedings, and as earlier noted approving the domestic relations Order that is issued on the Domestic Case Motion on the jurisdictional grounds previously outlined, or otherwise as the Bankruptcy Court sees fit.

12

There is no extension of time for the Parties performance of their duties under the Agreement whil

the Domestic Case Motion or this Motion are pending with the respective tribunals.

### LEGAL BASIS FOR RELIEF:

15.     Rule 9019(a) of the Federal Rule of Bankruptcy Procedure authorizes a

bankruptcy court to approve compromises or settlements.  Rule 9019(a) affords the Court broad

authority to consider and approve compromises and settlements to avoid the time and expense of

litigating controversial claims.  *In re Frye*, 216 B.R. 166, 170 (Bankr. E.D. Va. 1997).

16.     The standard for evaluating a proposed settlement is whether the compromise

is in the best interests of the estate and is not attended by fraud or other inequitable circumstances

which would shock the court's conscience.  *See Protective Comm. for Indep. Stockholders of T.M.T.*

*Trailer Ferry, Inc., v. Anderson*, 390 U.S. 414 (1968).  A court must make an informed, independent

judgment of the advisability of a proposed settlement considered in light of all relevant circumstances.

 *See Id*. at 424.

17.     In reviewing the proposed settlement, "the court is to consider the probability

of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and

expense of the litigation, and the interests of creditors with proper deference to their reasonable

views." *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995).  However, the court should ***not***

substitute its judgment for that of the trustee or debtor in possession in deciding to enter into a

proposed compromise.  *See Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984),

*aff'd* 50 B.R. 764 (S.D.N.Y. 1985).

18.     To approve a settlement, the Court need not determine that the debtor or trustee

ultimately would prevail in the litigation. *Austin*, 186 B.R. at 400. The Court may approve a settlement, even in the face of objections, so long as the settlement is in the best interest of the estate as a whole and does not fall "below the lowest point in the range of reasonableness." *Austin*, 186 B.R. at 400, citing *Cosoff v. Rodman (In re W.T. Grant Co.*), 699 F.2d 599, 608 (2nd Cir.), *cert. denied,* 464 U.S. 822 (1983).

19.    Settlements are to be encouraged by the courts, and it should not be the intention of courts to discourage them. *See U.S. ex rel. Rahman v. Oncology Associates, P.C.,* 269 B.R. 139, 149 (D. Md. 2001), *aff'd* 61 Fed. Appx. 860 (4th Cir. 2003).

20.    Here, the Debtor submits that there is ample justification to approve this Consent Order even though it is contingent upon the approval of the Agreement by the Circuit Court as to domestic relations matters within the Agreement. Cause exists to afford further relief. The Debtor(s) relies/rely upon the Motion pursuant to Local Rule 9013-2 and declines to submit a Memorandum at this time.

ANY OBJECTION TO THIS NOTICE MUST BE FILED WITH THE OFFICE OF THE CLERK, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, 6500 Cherrywood Lane, Suite 300, Greenbelt, MD 20707 NO LATER THAN TWENTY-ONE (21) DAYS FROM THE SERVICE OF THIS NOTICE AND A COPY MUST BE SERVED UPON AND RECEIVED BY UNDERSIGNED COUNSEL. IF NO OBJECTIONS ARE TIMELY FILED, THE PROPOSED ACTION MAY BE APPROVED WITHOUT FURTHER ORDER OR NOTICE. THE COURT, IN ITS DISCRETION, MAY CONDUCT A HEARING OR DETERMINE THE MATTER WITHOUT A HEARING REGARDLESS OF WHETHER AN OBJECTION IS FILED. AN OBJECTION MUST STATE THE FACTS AND LEGAL GROUNDS ON WHICH THE OBJECTION IS BASED AND THE BELOW REFERENCED COUNSEL IS TO BE CONTACTED IF PARTIES IN INTEREST HAVE QUESTIONS.

WHEREFORE, the Debtor respectfully requests that the Bankruptcy Court enter an Order:

(i)     Granting the Motion; and

(ii)    Entering an Order approving the Agreement *Nunc Pro Tunc* that is annexed hereto; and

(iii)   Granting such other and further relief as equity and justice may require.

Respectfully Submitted,

-------/S/ John D. Burns---------

_____

John D. Burns, Esquire (#22777)
The Burns LawFirm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770
(301) 441-8780
info@burnsbankruptcyfirm.com
Counsel for the Debtor

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of February, 2020, a copy of the foregoing Motion, Exhibits and Order  was served via first-class mail, postage prepaid, or by ECF, upon:

**<u>VIA ECF:</u>**
Lynn A. Kohen lynn.a.kohen@usdoj.gov

Jeffrey M. Orenstein jorenstein@wolawgroup.com

Jeffrey M. Sherman jeffreymsherman@gmail.com, elmoyer99@gmail.com

US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV

cgowen@gowensilva.com

rstolker@stolker.com

**<u>VIA MAIL:</u>**
Dr. Toufic Melki
1014 Willow Leaf Way
Potomac, MD  20854

(Matrix of creditors as redacted)

-----/S/ John D. Burns---------
_____
John D. Burns

---

[1] Naturally, the terms of the Agreement which is annexed to the Motion control over any summary of them contained herein.