IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| CYNTHIA MELKI | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: 138142 FL |
| | * | |
| TOUFIC MELKI | * | |
| | * | |
| Defendant | * | |

**OPINION**

### I.  Introduction

This matter came before the Court on October 29, 30, 31 and November 1, 2018 on Plaintiff/Counter-Defendant's Second Amended Motion for Absolute Divorce and for Other Relief[1] (D.E. #390), and the Responses thereto.

The parties were married on June 21, 2009. They have three children, N.M. (born 8/2010), S.M. (born 7/2012), and A.M. (born 5/2015). Plaintiff (hereafter sometimes referred to as Wife) and Defendant (hereafter sometimes referred to as Husband) were each represented by counsel.

Wife requested that the Court:

- grant her an absolute divorce,

- award her reasonable alimony,

- award her support for the minor children, payable through Child Support Enforcement,

- order that Husband maintain health and hospitalization insurance for Wife and the children,

- enter a Qualified Medical Child Support Order,[2]

- allocate the State and Federal tax dependency exemptions of the minor children,

---

[1] Wife's Initial Complaint for Limited Divorce, Request for Pendente Lite Relief and Other Relief was filed on August 4, 2016 (D.E. #1). Wife has since amended the complaint twice, at Docket Entry Numbers 268 and 390. Wife's Second Amended Complaint included the ground of Adultery, which she withdrew during the trial.
[2] QMCSO, pursuant to 29 U.S.C. §1169 and 42 U.S.C. §1169.

ENTERED  MAR 2 6 2019  Clerk of the Circuit Court  Montgomery County, Md.

- determine ...e existence and value of family use and ...arital property,

- transfer ownership of the family home to her, or allow her to purchase Husband's interest,

- order sale or division of real and personal property not subject to transfer of ownership or a use and possession order,

- award her an interest in Husband's pension, retirement, or deferred compensation benefits,

- enter a judgment adjusting rights of the parties, and

- award attorneys' fees and costs related to the litigation.

Husband filed a Counterclaim for Legal and Physical Custody, Limited Divorce, and Other Relief (D.E. #16). That pleading was dismissed via Line on March 16, 2018 (D.E. #302), and Husband did not re-file. His answer to Wife's Second Amended Counter- Complaint requested that the Court dismiss that Complaint and award him attorneys' fees.[3]

The parties entered into a *Pendente Lite* Custody/Support Order on December 26, 2017 (D.E. #75).[4] Husband was ordered to pay Wife $6,000[5] in undifferentiated support per month, provide health insurance for Wife and the children, continue to pay the cost for private school tuition for the older two children (N.M and S.M.), and pay Wife $15,000 in counsel fees.

On October 23, 2017, the parties entered into a Consent Order of Court on Custody and Access (D.E. #266). The parties agreed to joint legal custody, with primary physical custody to Wife. The Order includes a detailed bi-weekly parenting schedule specifying time with Husband and holiday access.

Additional facts will be added as necessary.

---

[3] Husband stated that he is "allergic to divorce" and did not make specific requests seeking a divorce.
[4] Husband filed a Motion to Modify the *Pendente Lite* Custody/Support Order (D.E. #104, amended at D.E. #131) which was denied. (D.E. #139).
[5] The parties reached a short-lived arrangement where Husband was to pay the monthly support in two tranches, on the first and fifteenth of each month. (D.E. #136). Due to non-compliance, at D.E. #392 the Court ordered Husband to pay the support as one lump sum by the first of each month. Husband appealed this Order, among several others. The appellate details are discussed below.

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

## II. Facts

### A. Relevant History

1. The parties were married in a traditional Orthodox Christian ceremony in Tripoli, Lebanon.

2. At the time of the parties' marriage, Wife was 26 years old and Husband was 48 years old.

3. Husband has resided in the United States for over 30 years, but frequently travels to Lebanon.

4. Prior to the parties' marriage, Wife resided in Lebanon.

5. After their marriage, the parties moved to the United States, specifically Montgomery County, Maryland.

6. On August 4, 2016, Wife left the marital home with the children while Husband was at work and moved into an apartment.

7. The parties have lived separate and apart since August 4, 2016.

8. Husband strenuously objects to the divorce. During the hearing he repeatedly articulated concerns about his religious beliefs, which he said did not allow divorce, and the impact of parental separation on the minor children.

### B. Wife's Employment Status and Finances

1. Wife is a trained Opera singer and was regularly performing in productions prior to her marriage.

2. After the parties were married, Husband took over the management of Wife's singing engagements. Husband demanded a number of "performance conditions" for himself. This resulted in declining performance opportunities for Wife, which she says harmed her career.[6] Husband disputes this.

---

[6] Pl. Ex. 47.

ENTERED
MAR 2 6 2019
Clerk of the Circuit Court
Montgomery County, Md.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

3. Wife had an agreement with a record producer in Lebanon to create an album of original songs. Due to demands made by Husband regarding logistics and money, the producer refused to work with Wife and the album was never produced.

4. Wife worked for Husband at his ophthalmological practice, doing administrative work from sometime in 2011 until March, 2016, earning approximately $3,000 per month.[7]

5. Wife assisted with management of the parties' rental properties.[8]

6. Wife briefly attended courses at Montgomery College. She testified that Husband was not supportive of her attending school, and did nothing to assist with household chores and child responsibilities.

7. Wife does not have retirement funds, savings, nor an independent reliable source of income. Wife reported that she makes approximately $210 per month from singing lessons and tutoring.

8. During the course of the marriage, Wife received loans from several family members. In August, 2016, shortly before leaving the marital home, Wife borrowed $50,000 from her father, Tantis Sami Samaha.[9]

9. Wife reports that the monthly expenses for herself and the children total $7,592. This includes rent for her apartment ($2,671) and food ($1,485).[10]

10. Wife has some assets that the parties agree are marital property, but titled in Wife's name, including clothes, jewelry and an Audi automobile.[11]

    a. Her Audi 2011 Q7 is valued at $15,000.

    b. Both parties value Wife's clothes at $500 and the furniture in her current residence at $20,000.

---

[7] D. Ex. 4.
[8] Pl. Ex. 54, 55, 56.
[9] Pl. Ex. 52
[10] Pl. Ex. 74.
[11] Values are rounded to the nearest dollar

   c.  Husband values Wife's jewelry at $25,000. Wife did not provide an estimate.

11. Wife testified that Husband bought a grand piano after the birth of their second child. Husband deducted the cost of the piano from Wife's salary at his medical practice.

12. Wife has several credit cards with balances, including a Bank of America credit card with a balance of $2,039.97 as of October 7, 2018[12] and an American Express card with a balance of $11,644.09 as of September 28, 2018[13]. Wife also has a Bank of America Checking Account with a balance of $5,609.76 as of October 11, 2018.[14]

13. Wife has not been able to advance her singing (or any other) career in the United States.

## C. *Husband's Employment Status and Finances*

1. Husband is a licensed ophthalmologic surgeon, specializing in retinal surgery. His practice is Toufic S. Melki, M.S., M.D., P.A. d/b/a Retina Centers of Washington (hereinafter "RCW").

2. He testified that he works a range of hours each week. The numbers Dr. Melki gave are between 23 and over 40 hours per week.

3. **RCW** is Dr. Melki's primary business and solely-owned medical practice, which he began 17 years before the parties' marriage.

4. The practice has locations in Maryland, Washington, DC and Virginia.

   a.  The main office is located at 15020 Shady Grove Road, Suite 302, Rockville, Maryland 20850. RCW rents this office.

   a.  RCW owns and operates a second location in Arlington, Virginia at 1715 George Mason Drive, Suite 101, Arlington, Virginia, 22205. This office is owned by Dr. Melki and is addressed below in Section II.D.6.

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

---

[12] Pl. Ex. 51.
[13] Pl. Ex. 50
[14] Pl. Ex. 71.

b. In addition, RCW provides staffing for the Georgetown University Hospital Pasquerilla Healthcare Center.

c. Husband claims that RCW is not very profitable, as over 60% of patients are recipients of public assistance, and the type of medicine practiced does not develop into long term patient relationships, but mostly a single intake appointment and the procedure.

d. Both parties had Husband's interest in RCW evaluated.

  i. Dr. Melki obstructed the pretrial process, filing appeals when he was sanctioned for that behavior, and refusing to provide the experts long-requested information until shortly before trial.

  ii. Husband's expert, Walter C. Pennington, using the Adjusted Net Asset Method, estimated the value of the interest at $427,000.[15] His analysis was based on the value of the older surgical center owned by Dr. Melki.

  iii. Mr. Pennington estimated annual executive compensation for RCW as $275,000 annually from 2013 to 2017.

  iv. Wife's expert, David De Jong, used the Adjusted Net Asset and Price-to-Sales Market methods, and determined that the RCW value is between $1,210,000 (per the Adjusted Net Asset Method) and $1,602,000 (per the Price-to-Sales Market Multiple Method), a difference of $780,000 and $1,175,000 between Husband's and Wife's evaluations.[16]

  v. Mr. De Jong also opined that Husband's annual income is no less than $650,000 per annum, and likely much higher.[17]

---

[15] Def. Ex. 3.
[16] The value depends on the valuation method used.
[17] Pl. Ex. 65.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

ENTERED

MAR 26 2019

Clerk of the Circuit Court
Montgomery County, Md.

vi.  Mr. De Jong was not privy to all the information provided by Husband to Mr. Pennington.

vii.  Neither expert opined on the pre-marital value of RCW.  No testimony was elicited from any witness.

viii.  Husband regularly uses business accounts for personal transactions. Between 2015 and 2017, Husband transferred over $1,225,000 from the RCW main operating account (Citi x9297) to his personal bank accounts.[18]

For example, his business credit card statements for 2017 included:

1.  expenses related to this litigation;

2.  engineering expenses for the new clinic;

3.  payment to a Lebanese Travel Agency;

4.  payment to the Great Wolf Lodge; and

5.  a purchase at Jared's Galleria of Jewelry,

totaling over $20,000.

ix.  Both experts noted the absence of significant documentation that would ordinarily be provided by the business owner for an evaluation.

5.  **Retina One, LLC ("Retina"):**

a.  Owned wholly by the parties. Under the operating agreement, Husband has 80% of the shares and Wife has 20% of the shares.

b.  The 2017 tax returns claim that Retina operated at a loss.  It had rental income of $31,673 per month, and total expenses of $56,063 per month.[19]

c.  Retina also has a bank account.  The balance as of the date of filing of the 9-207 Statement was $1,398.

---

[18] Pl. Ex. 65. This included personal expenses and donations to Combat Blindness.
[19] Pl. Ex. 53.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md

   d.  The primary purposes of Retina seems to be owning real estate and lending
       money to other corporations owned by Dr. Melki.  Retina does not appear to
       offer any medical services.

6. **Eagle Eye Surgical Center, Related Property and Financial Interest ("Eagle"):**

   a.  Husband testified that he planned to open a surgical center in North Potomac,
       Maryland called "Eagle Eye Surgical Center." He said little action had been
       taken to make Eagle operational, other than forming an LLC.

   b.  Wife's Ex. 46 is the May, 2015 Operating Agreement forming Eagle Eye
       Surgical Center, LLC (Eagle, LLC).[20]

   c.  The agreement names Dr. Melki as the Manager and Medical Director of Eagle,
       at an annual salary of $358,000.

   d.  Wife testified that she was not aware of Eagle, LLC until she (finally) received
       some documents in discovery for this litigation.

   e.  Wife's Ex. 53 is copies of more than $100,000 in checks from 2015-2016 related
       to expenses for Eagle, including architecture and design firm invoices.[21]

   f.  Wife's Ex. 72 is a copy of an email from April, 2018 and a picture of a
       handwritten note sent by Husband listing medical equipment purchased for Eagle
       totaling $231,095. This includes a specialized surgical instrument worth $89,995
       leased to and paid for by RCW.[22]

   g.  The agreement also provides that Dr. Melki must make an initial capital
       contribution of $72,000 for 60% membership interest.

---

[20] Pl. Ex. 46. A fully executed agreement was not provided.
[21] Pl. Ex. 57.
[22] Pl. Ex. 73. Husband testified that this piece of equipment was currently being used by RCW.  Husband also
testified that neither of the valuation experts were made aware of these recent expenses.

7. **Dufief Mill Road property ("Dufief"):**

    a. The alleged future site of Eagle is 1500 Dufief Mill Road, North Potomac, Maryland, 20878 (Dufief). It is owned by Cynasa Holdings, LLC (see below). The property is currently vacant.

    b. The parties stipulated that the fair market value of Dufief is $875,000, and that United Bank held a lien of $611,452.[23]

8. **Cynasa Holdings, LLC ("Cynasa")**

    a. Cynasa Holdings is wholly owned by the parties. It owns Dufief. The operating agreement for Cynasa states that Husband holds 75% and Wife holds 25% of Cynasa's shares.

    b. Cynasa also had a United Bank account which according to Husband had a balance of $4,598.70 on the day trial began.

9. **Combat Blindness International ("CBI")**

    a. Dr. Melki has a unique arrangement with an entity called Combat Blindness International ("CBI"), which he describes as a charity that provides eye surgery for people in developing countries.[24]

    b. Dr. Melki regularly "donates" money to CBI.

    c. Part of the funds "donated" by Dr. Melki go toward purchasing equipment at the Melki Eye Center in Lebanon.[25]

    d. The arrangement required that CBI would work in conjunction with Dr. Melki's father's existing surgical practice, under the guise of CBI.

    e. Between 2013 and 2016, Husband "donated" $708,000 to CBI.[26]

10. The full picture of Dr. Melki's financial circumstances is very hazy. When things

---

[23] Parties stipulated to this amount but did not provide any documentation.
[24] Parties stipulated to this amount but did not provide any documentation
[25] Pl. Ex. 45.
[26] Pl. 62, 63, 64.

9

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

did not a... up, he blamed the accountant. The acc...ntant said he gets the

numbers from Mr. Melki and does not audit them.

11. Husband has a number of assets outside of his business interests, including two Fidelity

IRAs, an E*Trade Account, a 2007 Mercedes GL450 and a 2011 Mercedes S550.

12. The parties disagree about the marital and non-marital portions of the Fidelity

accounts. The accounts were opened by Husband prior to the parties' marriage,

and they continued to accrue value.

    a. Account 670-716103: The account was valued at $199,019.82 as of May 31,

       2009.[27] As of June, 2018, the account was valued at $406,199.53.[28]

    b. Account 670-710369: The account was valued at $67,635.31 as of June 1,

       2009.[29] As of June, 2018, the account was valued at $93,295.71.[30]

13. Husband valued his solely-owned, prior-to-marriage, 2007 Mercedes GL450 at $14,000.

14. The parties disagreed on the value of the 2011 Mercedes S550. Wife opined the

value was $23,000. Husband valued it at $20,000. Husband is the sole owner of

the vehicle.

15. Husband valued the E*Trade Account at $1,370.

16. Husband's annual reported income on his tax returns averaged $196,260 each

year between 2015 and 2017.[31]

**D. Real Property**

In addition to the properties discussed above, the parties own several pieces of real property

which are in dispute. The parties disagree over which properties are marital, the value of the

properties, and the amount of liens and encumbrances, if any.

---

[27] Def. Ex. 10. This is the statement closest to the date of the parties' June, 2009 marriage.
[28] Pl. Ex. 41. This is the most recent statement provided by the parties.
[29] Def. Ex. 10.
[30] Pl. Ex. 40. This is the most recent statement provided by the parties.
[31] Pl. Ex. 65.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md

1. <u>8931 Edgewood Drive, Gaithersburg Maryland ("Edgewood")</u>

   a. During the parties' marriage, Edgewood was their primary residence. Husband continues to reside at Edgewood.

   b. Husband purchased Edgewood prior to marriage.

   c. He retitled it in both parties' names as tenants by the entireties in 2013.

   d. There is no mortgage on Edgewood. It was paid in full in August, 2011.[32]

   e. The parties disagree significantly on the valuation of Edgewood. Husband says the value is $653,745; Wife says $550,000.

   f. The parties took a Home Equity Loan with Citibank ("HEL") in part to finance the remodeling of Edgewood. The balance of the HEL was $238,529 as of July, 2018.[33]

   g. Wife was active in directing the remodeling project, including ordering supplies and selecting contractors.[34]

   h. The parties agree that the furnishings in Edgewood are jointly titled marital property valued at $10,000.

2. <u>25055 Riding Plaza, South Riding, Virginia, 20152 (Chantilly)</u>[35]

   a. Owned by Retina One, LLC. As discussed above, Retina One claims to be leasing the Riding Plaza Property at a loss.

   b. Husband valued the property at $800,000. Wife stipulated to this at trial.

   c. There is currently a lien of $284,652 on the property. [36]

---

[32] Pl. Ex. 19. Parties also took out a second mortgage on the Edgewood Property, which was paid in full in August, 2014. Pl. Ex. 19.
[33] Pl. Ex 16. Wife does not view the balance of the HELOC as directly attributable to the property because Husband spent money from the loan on non-related expenses.
[34] Pl. Ex. 26 is the receipts for remodeling totaling $152,944.65.
[35] The property is technically in Chantilly, Virginia. However, some of the exhibits and pleadings refer to the location as South Riding, Virginia.
[36] Wife also stipulated to this amount at trial. Parties did not provide documentation regarding the terms or source of this lien.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md

3. **9701 Fields Road, Apt. 1803, Gaithersburg, Maryland, 20878 (Fields Road)**

   a. The parties acquired this property as tenants by the entireties on June 28, 2013 for $165,000.[37]

   b. Husband says the value of the property is $178,466; Wife says $175,000.

   c. The parties have leased this unit. The current tenants signed a one-year lease commencing September, 2017. The monthly rent is $1,350.[38]

   d. The mortgage balance as of July, 2018 was $56,130.[39] The parties make monthly payments of $1,000 to $1,300.[40]

4. **1500 Dufief Mill Road, North Potomac, Maryland, 20878**

   The future site of Eagle. See above for discussion.

5. **1530 Key Boulevard, Apt 728, Arlington, Virginia, 22209[41]**

   a. Husband purchased the property in his sole name in October, 2004 for $670,000.[42]

   b. Refinanced multiple times, with a $378,723 lien balance at trial.

   c. For a period of time, Husband's former chauffeur, Saba Armani,[43] resided at the Key Boulevard property without paying rent.

   d. Husband values the property at $850,000.

6. **1715 George Mason Drive, Suite 101, Arlington, Virginia, 22205**

   a. Retina Centers of Washington Office, owned by Husband.

   b. It was purchased in January, 2005 for $285,000.[44]

---

[37] Pl. Ex. 30.
[38] Pl. Ex. 29.
[39] Pl Ex 28
[40] Pl Ex. 28.
[41] Husband also owned another unit in the same complex, which he sold to his sister in September, 2016.
[42] Pl. Ex. 36
[43] The relationship between Mr. Melki and Mr. Armani is the subject of litigation. A trial was held, which concluded after the divorce trial. Mr. Armani prevailed; Dr. Melki was assessed attorney's fees and costs. Dr. Melki appealed the judgment. (Case No. 433713V, Montgomery County Circuit Court.).
[44] Pl Ex 32.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

c.   The mortgage was retired in March, 2015.

d.   The current value is $354,600.[46]

e.   There is a $600 per month condominium fee.

7.   **181 Ocean Avenue, Palm Beach Shores, Florida, 33404 ("Timeshare")**

The timeshare was acquired in 2001. Neither of the parties has ever visited it.
Neither party provided any evidence regarding the value of this property.

8.   Much of the parties' real property was obtained, directly or indirectly, through
loans made by RCW (the most profitable business) to the other companies
owned by the Melkis.[47] A letter from Husband's accountant, dated August 12,
2016, shows a total debt of $799,082 owed to RCW as the result of the loans.
The breakdown of this debt is as follows:

a.   Retina borrowed $419,482 from RCW for closing costs, mortgage
and condominium fee for the Riding Plaza property.

b.   Retina borrowed $104,800, from RCW which it then lent to the
Melkis' personal accounts for closing, mortgage and condominium fees
for the apartment at Fields Road.

c.   Cynasa borrowed $274,800 from RCW for closing costs and fees on the
Dufief Mill property, plus mortgage payments through August, 2016.

### E.  *Other Disputed Property*

During the marriage the parties acquired five (5) one-ounce bars of gold.
Husband claims that Wife took at least five ounces of gold when she left the home. He
did not provide any evidence as to the value of the gold.

---

[45] Pl. Ex. 33.
[46] Pl. Ex. 35. this is assessed value as of January, 2018.
[47] Pl. Ex. 14.

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

Wife claims that Husband still has possession of the gold and provided the invoice for purchase of the gold in 2010 for $7,234.[48] Aside from the parties' statements, there was no evidence about the whereabouts of the gold.

### F. Ongoing Litigation and Financial Interests in Lebanon

1. Husband has an ophthalmological office in Lebanon. He claims it is empty.

2. While the parties lived together during the marriage, Husband wired significant amounts of money to individuals in Lebanon, including Wife's parents, his relatives, and counsel associated with his property interest and litigation, and to several bank accounts. The amount sent was estimated to be *at least* **$1,932,200**. There was no explanation for the transfers.[49]

3. Husband owns four townhomes in Lebanon, which are the subject of ongoing litigation. He asserts they are his non-marital property.

4. Husband sued his mother (in Lebanon) for $1.6 million dollars, related to property disputes.

5. At the trial, Husband 's Lebanese attorney, John Gergis Alcoury, testified via video. The testimony related to the litigation in Lebanon and the time estimate for completion of it. Essentially, Mr. Alcoury testified that the Lebanese legal system works very slowly, is structured differently from the U.S. system, and that it is not possible to discern a timeline for the conclusion of the litigation.

### G. Sanctions and Appellate Action

1. Since this litigation began in August, 2016, Wife has changed counsel once; Husband has changed counsel six times. Each has incurred significant legal fees.

2. Husband has generally been uncooperative with the court process.

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

---

[48] Pl. Ex. 70.
[49] Pl. Ex. 58, 59, 60.

3. Husband has refused to comply with Orders granting sanctions against him, and has not consistently paid legal fees awarded to Wife.

   a. *Pendente Lite* **Custody/Support Order entered December 29, 2016** (D.E. #75): Husband was ordered to pay Wife $15,000 in attorney's fees. Husband did pay these fees to Wife's counsel.

   b. **Sanctions Order entered February 6, 2018** (D.E. #291): Husband was ordered to pay Wife $8,000 for counsel fees related to ongoing discovery violations. Husband filed an appeal to the Court of Special Appeals on April 10, 2018. This court ordered Husband to file $8,000 as a bond. (D.E. #355).

   c. **Motions Hearing Order entered October 2, 2018** (D.E. #392): The Court held a hearing on September 19, 2018, regarding open motions. After Husband failed to pay Wife's attorney's fees as ordered, and failed to obtain the bond, the court ordered that he obtain a bond in the amount of $8,000 by close of business on September 24, 2018.[50] Husband was also ordered to pay Wife's valuation expert, David De Jong, $15,000 by close of business on October 1, 2018. He was also ordered to pay $20,000 for Wife's counsel's attorney's fees by October 15, 2018. Husband failed to pay as ordered. Wife filed a Motion for Sanctions and Other Relief (D.E. #404) requesting that the Court reduce the $20,000 in counsel fees and $15,000 in expert fees to a judgment against Husband. The Court granted this request on the record on October 29, 2018.

   d. **Motion for Summary Judgment:** Husband filed a Motion for Summary Judgment (D.E. # 363) arguing that Absolute Divorce on a no-fault ground (12-month separation) is a violation of his Constitutional Rights. The basis alleged was that the parties had been married in Lebanon, thus this Court did not have

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

---

[50] Husband did not timely file, and the bond was forfeited. (D.E. #436).

jurisdiction over the divorce. The Court denied the Motion for Summary Judgment.

4. Husband sought appellate relief.

    a. His appeal of the Order at Docket Entry 291 (awarding Wife $8,000 in counsel fees) was dismissed by the Court of Special Appeals on January 22, 2019.

    b. His appeal of the Orders at Docket Entry Numbers 392 (Motions Hearing Order), 417 (Denial of Motion for Summary Judgment), and 428 (Order Forfeiting Bond) were consolidated by the Court of Special Appeals and are still pending.[51]

5. At the trial, Husband declared that he would appeal "all the way to the Supreme Court."

## III.  Property/Monetary Award

In determining the equitable distribution of marital property between spouses, the Court is required to engage in a three-step process.

- Step one is the determination of what is, and what is not, marital property.
- Step two requires valuation of marital property.
- Step three is the Court's consideration of whether a monetary award is appropriate, after analyzing the factors set forth in the statute.

That analysis follows.

    *(1)  The contributions, monetary and nonmonetary, of each party to the well-being of the family*

During the parties' marriage, Husband was the primary wage earner.

Wife was not significantly employed outside the home. This appears to have been the arrangement the parties made as a couple. She received limited payment from work at Husband's office (some of which Dr. Melki re-routed to pay for the grand piano "gift" he gave Wife on the occasion of the birth of their second

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md

---

[51] Case Number 2651-2018.

child). S... also assisted with the management and remodeling of the parties' home and rental properties. Wife took on most, if not all, of the responsibility for caring for the children and managing the household.

(2)   *The value of all property interests of each party.*

See the attached Marital and Non-Marital Property Chart (M-NMP Chart) regarding the distribution of the assets and the values assigned by the Court. The exact financial and property interests of the parties, both international and domestic, is disputed. Husband has significant assets involved in litigation in Lebanon, where Husband is currently suing family members over loans and property. Husband was very upset about the Lebanese litigation, but there was very little coherent, reliable testimony about it, including how the funds were acquired and how they have been disbursed.

(3)   *The economic circumstances of each party at the time the award is to be made.*

Some of Husband's assets were clearly his pre-marital property. Some have been commingled. Much has been "creatively" distributed.

As Mr. De Jong noted in his testimony, Dr. Melki's books and records were both incomplete and ill-kept, and he was obstructionist vis-à-vis requests for documents and other information. Mr. Pennington's analysis was hampered by his client's failure to cooperate.

Husband's obfuscation makes his wealth hard to pinpoint. It leads to a finding that Dr. Melki was untruthful in court about his economic resources. It does not preclude the Court's analysis.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

Dr. Melk., with a conservative estimate of wealth ... *the U.S.* at just under four million dollars[52] of *traceable* assets (not including the Lebanon properties), is possessed of resources far greater than Wife's.

Wife is not employed, outside of occasional singing lessons and tutoring. She is educated and has a background in classical music, as a singer. But as noted elsewhere, it was difficult for her to work in that field given Dr. Melki's insistence on "managing" her career. The demands of the litigation have complicated matters. She has accrued significant debt in these proceedings. She has minimal resources. Dr. Melki is well able to assist her.

(4)  *The circumstances that contributed to the estrangement of the parties.*

It is evident from testimony and evidence provided that Husband engaged in a pattern of controlling behavior. Examples include his decision to baptize the parties' youngest child in Lebanon against Wife's wishes, his control of all of the financial resources, and his actions alienating Wife from her contacts in the classical music industry.[53] On the witness stand, Husband also articulated his views on being contradicted, informing the Court that "I do not take no for an answer."

(5)  *The duration of the marriage.*

The parties had been married a little over seven years at the time of their separation.

(6)  *The age of each party.*

Husband is 58. Wife is 35.

(7)  *The physical and mental condition of each party.*

Both are in general good health. Dr. Melki is untruthful.

(8)  *How and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital property or the interest in property*

---

[52] $3,939,345.
[53] *See, e.g.* the email exchange regarding Wife's Vienna performance. Pl. Ex. 47

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

*described ...in subsection (a)(2) of this section, or be ...*

The marital property was acquired as described elsewhere in this Opinion. Both parties contributed to the acquisition of the property, as they delineated their roles in the marriage.

(9)    *The contribution by either party of property described in § 8-201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entireties.* Each of the parties contributed to the acquisition and enhancement of the family home.   Husband owned the home before the marriage.  Wife made significant changes to the home, with Husband's economic support.  Wife selected materials and oversaw the day to day work on the home, while also managing the children and their needs.  The home was retitled as a tenants by the entireties property, giving Wife equal ownership of it.

The parties also own a townhouse titled as tenants by the entireties at 9701 Fields Road, in Gaithersburg, Maryland.  The parties acquired this property in June, 2013.

(10)    *Any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home.*

Wife's request for alimony is discussed below.

(11)    *Any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.*

As noted above, Dr. Melki is not credible.  He has made sport of the processes of the court, and has said he plans to do what he chooses because "he doesn't take no for an answer."   He sued his mother in Lebanon for $1,600,000, which confirms both the resources available and the course he has taken in these proceedings.  He has significant assets, both in the U.S. and Lebanon, and has demonstrated that he will continue use them in his crusade so long as he has the resources.

Husband has also used his multiple real estate holdings in a shell game; he bought

19

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md

medical equipment for Eagle totaling $231,091, using RCW money, and arranged for himself to earn a salary of $358,000, coming from an entity that (allegedly) does not exist. Dr. Melki said he lied about his wealth when obtaining a loan to purchase the Dufief Mill property. Wife's Ex. 5 demonstrates that the bank made a thorough investigation and determined that Husband actually had the resources he claimed when he applied for the loan. Those resources included $2,200,000 in revenue from RCW, personal wealth with Wife of $1,600,000, and over $200,000 on deposit at Cardinal Bank.[54]

Dr. Melki did lie. Not to the bank, but to the Court. Wife and the three children are entitled to a safe and stable home and life. The children are entitled to the resources of both parents, without condition. Wife does not have access to the resources Dr. Melki possesses. He can afford to provide, and he must.

## IV.  Alimony

Wife seeks alimony. The required considerations for the Court in this regard are set forth in Md. Code Ann., FLA § 11-106. The Court will not reiterate that which has already been discussed above, in the Property/Marital Award section.

*(1) The ability of the party seeking alimony to be wholly or partly self-supporting.*

Wife is a trained opera singer and attended the Lebanese National Higher Conservatory of Music. However, since moving to the U.S., Wife has been unable to arrange performances in the area, due in part to Dr. Melki's meddling (discussed elsewhere) and this litigation. She is able to work, of course, and did so briefly for Husband, who paid her about $3,000 per month to do clerical work.[55] In short, the Court has no information

---

[54] Cardinal Bank has since been acquired by United Bank.
[55] Husband used the funds Wife "earned" to pay for the piano he "gave" her after the birth of their second child.

that leads to the conclusion that Wife can be self-supporting at this time, and the timeline for when that might occur is unclear.

*(2) The time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment.*

In order to increase her employability and earning capacity, Wife will have to earn, at minimum, an associate degree.[56] Lianne Friedman, a vocational rehabilitation expert, opined that without additional education, Wife may be able to make between $25,000 and $35,000 annually as an administrative assistant, receptionist or sales associate.

Ms. Friedman also estimated the process and cost for Wife to earn an Associate's or Bachelor's degree. At the time of trial, Wife had earned six credits at Montgomery College. To obtain her Associate's Degree, Wife would have to earn an additional 54 credits, totaling 60 credit hours.

Ms. Friedman testified that if Wife went to school full time, it would take approximately two years, and a cost of $10,314 in tuition and approximately $2,000 for books and other expenses to complete her Associate's Degree. The quest for a Bachelor's degree would be an additional two years, costing $22,000 in tuition and approximately $2,400 for books and other expenses.

With an Associate's Degree, Wife would be able to earn approximately $32,000 per year, which rises to between $45,000 and $65,000 if she obtains a Bachelor's degree.

*(3) The standard of living that the parties established during their marriage.*

The parties' established a high standard of living during their marriage. As both parties described, their homes were well furnished. Husband had a private driver, and the parties took frequent trips abroad. The parties' children are enrolled in private

---

[56] Def. Ex. 5, Report from Lianne Friedman, M.A., CRC, LLC.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

school.   Mr. De Jong (Wife's evaluation expert) testified that Husband earns *at least* $650,000 per year, and likely much more.  Dr. Melki's financial statement shows an income of at least $360,000[57] and he reported an income of $233,638 on his 2017 tax return.[58] In short, the Court finds that Dr. Melki's standard of living remains that which it was when the parties resided together, and he can well afford to contribute to Wife's needs.

*(4)- (8) discussed above.*

*(9) The ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony.*

As noted elsewhere, Husband has sufficient income to support himself and the children.

*(10) Any agreement between the parties.*

There is no agreement between the parties regarding alimony.

*(11) The financial needs and financial resources of each party, including: (i) all income and assets, including property that does not produce income; (ii) any award made under §§ 8-205 and 8-208 of this article; (iii)the nature and amount of the financial obligations of each party; and (iv)the right of each party to receive retirement benefits.*

All of these factors have been considered elsewhere in this Opinion.  Briefly, the M-NMP Chart details what each party has by way of assets, including real property; the Court has considered potential awards to be made pursuant to § 8-205; and the parties' incomes and obligations are detailed on their financial statements, as edited.

*(12) Whether the award would cause a spouse who is a resident of a related institution as defined in § 19-301 of the Health - General Article and from whom alimony is sought to*

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

---

[57] D. Ex. 14.
[58] Pl. Ex. 65.

*become elig..le for medical assistance earlier than ..uld otherwise occur*. Not applicable.

## V. Child Support

At the *pendente lite* phase of the proceedings, the parties agreed that Husband would pay Wife $6,000 (Six Thousand Dollars) per month as undifferentiated spousal and child support. In addition to that payment, Husband (at his insistence and with Wife's acquiescence) enrolled the children in private school, which costs $3,542 per month.       He also employs a nanny for the children during his parenting time, at the rate of $1,800 per month.

Wife was not employed at the time of trial and has not been regularly employed during the marriage. The Court is persuaded that Wife can earn some income at this time, given her experience with reference to Ms. Friedman's testimony, and therefore credited her with the ability to earn $2,500 per month. That amount is reflected on the Child Support Guidelines.

Dr. Melki's resources far exceed the amount of income requiring mandatory application of the Maryland Child Support Guidelines. On his financial statement dated July 27, 2018, he admits to *at least* $360,000 in annual income. As noted above, Mr. De Jong (Wife's evaluation expert) testified that Husband earns *at least* $650,000 per year, and likely much more.

Additionally, Wife requested the possession and use of the Edgewood home for a period of three years. Consistent with Section 8-208 of the Family Law Article,[59]  the Court finds that it is in the children's best interest to reside in the home with Wife, their primary residential parent; that Wife's interest and that of the children is best served by allowing them to reside in the family home, and there is no hardship visited upon Dr. Melki, who owns a residence on Key Boulevard which is available to him. Wife's request will be granted.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

---

[59] Md. Code Ann., Fam Law Art. §8-208(b)(2).

The Court reviewed the parties' financial resources as set fo.... in their respective financial statements. The Court finds the Edgewood home expenses to be $9,320 per month (excluding the nanny, the undifferentiated support, the Key Boulevard apartment, the private school costs, the health insurance for Husband and the children, and the other mortgage payments on Husband's financial statement not associated with the Edgewood home).[60] The Court will award child support consistent with these findings, the alimony awarded to Wife, and other economic circumstances discussed elsewhere in this opinion.

## VI.    Attorney's Fees and Costs

Both parties have requested attorney's fees and costs to be paid by the other in this matter. Md. Code Ann., Fam. Law Art. §§ 11-110 and 12-103 require that the Court make certain findings when considering an award of fees and costs.

1.    The financial status of each party: The Court adopts its findings regarding the parties' incomes and other resources, above. Wife has far less ability to pay fees, and much of the cost of the proceedings are attributable to Dr. Melki's dilatory tactics.

2.    Each party's needs: The Court adopts its findings as to each party's needs and ability to pay made earlier in this Opinion. There is no question that Dr. Melki is far better situated economically and is able to contribute to Wife's fees and costs while also paying significant alimony, child support, and other payments ordered.

3.    Whether there was substantial justification for bringing, maintaining, or defending the proceedings: Wife was substantially justified in filing for divorce. Dr. Melki, on the other hand, demonstrated throughout the proceedings why Wife's fees are so high. While not all of Husband's positions were without substantial justification, many were. He set his cap to make the process difficult and expensive, to be obstructionist in court and in pleadings, and generally to scoff at the legal process. Dr. Melki used his resources to disrupt and delay the divorce trial,

---

[60] Husband's Ex. 14.

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

filing multiple appeals on dubious grounds, failing to cooperate with discovery, hiring and then firing counsel (five in all, one of whom was fired, and then several lawyers later, re-hired), and he made no effort to hide his purpose: to win at all costs.

There is a price for that, and Dr. Melki will be assessed that cost.

The evidence shows that Wife's fees include $44,446 owed to Reinstein, Glacken and Herriott (prior counsel to Wife), and $63,312 as of the first day of the trial (October 30, 2018) owed to Mr. Gowen, for a total of $107,758. Husband will be Ordered to pay $107,000 to Wife as and for litigation fees and costs.

Having considered all of the testimony, the exhibits, and the factors regarding alimony, child support and marital property, the Court makes the following Orders:

- The parties are granted an Absolute Divorce on the ground of a twelve-month separation;

- Wife is awarded Use and Possession of the Family Home and Family Use Personal Property, located at 8931 Edgewood Dr., Gaithersburg, MD 20877, for a period of up to three years from the date of this Order;

- Accounting from November 1, 2018, Husband shall pay Wife indefinite alimony in the amount of $9,000 per month, with credit for amounts paid as *pendente lite* undifferentiated support from that date to the present;

- Accounting from November 1, 2018, Husband shall pay Child Support in the amount of $4,556 per month;

- The arrears resulting from the above alimony and child support orders shall be retired in a lump sum not later than June 1, 2019; thereafter, on written request of Wife, the Court shall reduce that amount to judgment;

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

- Wife is awarded a monetary award in the amount of $_,_00,000, which shall be paid in full not later than June 1, 2019; thereafter, on written request of Wife, the Court shall reduce that amount to judgment;

- The grand piano is awarded to Wife, as her sole and separate property;

- The 2011 Audi Q7 is awarded to Wife, as her sole and separate property, subject to the consent of any lien holder;

- Husband shall pay $107,000 to Wife as and for litigation fees and costs, said amount to be paid not later than April 15, 2019; thereafter, on written request of Wife, the Court shall reduce that amount to judgment.

A separate written Order is provided.

 

_____

**CYNTHIA CALLAHAN, Judge**
**Circuit Court for Montgomery County, Maryland**

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

## In the Circuit Court For Montgomery County, Maryland

**Cynthia Melki**
vs.  Plaintiff

**Toufic Melki**
Defendant

Civil no. **138142FL**

| Children | Date of Birth/Age | Children | Date of Birth/Age |
|---|---|---|---|
| N.M. | 8 | | |
| S.M. | 6 | | |
| A.M. | 3 | | |

| | Mother | Father | Combined |
|---|---|---|---|
| **1. Monthly Actual Income-Before Taxes**<br>a. Minus pre-existing child support payment actually paid<br>b. Minus alimony actually paid<br>c. Plus/minus alimony awarded in this case | 2500[1]<br><br><br>9000 | 30000[2]<br><br><br>-9000 | 32500 |
| **2. Monthly Adjusted Actual Income** | 11500 | 21000 | 32500 |
| **3. Percentage of Shared Income**<br>Apply line 2 combined to Child Support Schedule | 35.4% | 64.6% | |
| **4. Basic Child Support Obligation**<br>a. Work-Related Child care expenses Code FL,12-204(g)<br>b. Health Insurance Expenses Code FL,12-204(h)(1)<br>c. Extraordinary Medical Expenses Code FL,12-204(h)(2)<br>d. Cash Medical Support,Code, FL, 12-102(c)(3)(ii)<br>e. Additional Expenses | <br><br><br><br>0 | <br><br>490<br><br>0 | 7321<br>0<br>490<br>0<br>0<br>0 |
| **5. Total Child Support Obligation** | | | 7811 |
| **6. Each Parents Child Support Obligation**<br>(line 3 times line 5) | 2765 | 5046 | |
| **7. Recommended Child Support Obligation**<br>a. Income apportioned credit/debit from line 4. | 0<br>0 | 5046<br>-490 | |
| **8. Recommended Child Support Order** | | 4556 | |

Comments or special adjustments, including any adjustment for certain third party benefits paid to or for the child of an obligor who is disabled, retired, or receiving benefits as a result of a compensable claim (see Code, Family Law Article, §12-204 (j).

* 2 The parties agreed that Father would have the children five out of 14 days, but that they would not apply the shared guidleines.
* 1 In llight of the testimony of the vocational expert, Ms. Friedman, the court chose $30,000 per year as reasonable.

Prepared by: **JCC**

Date: **03/14/2019**

Version 12.0 © SASI-CALC http://www.sasi-calc.com or email support@sasi-calc.com
Use of this form outside the SASI-CALC ™ program is expressly forbidden

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

CYNTHIA MELKI
Plaintiff

V.

TOUFIC MELKI
Defendant

: : : : FL138142
: : : :
: :

## MARITAL AND NONMARITAL PROPERTY SCHEDULE

### MARITAL PROPERTY

| | DESCRIPTION | TITLE | FMV | DEBT | HUSBAND | WIFE |
|---|---|---|---|---|---|---|
| 1. | Citibank xx8180 Account | Jt. | $0.00 | $0.00 | $0.00 | $0.00 |
| 2. | Retina One, LLC | Jt. 80/20[1] | | | | |
| | 2(a). 25055 Riding Plaza, South Riding, Virginia, 20152 | Jt. | $800,000[2] | $284,652 | $412,278 | $103,069 |
| | 2(b). United Bank Account xx7622 | Jt. 80/20 [3] | $1,398 | $0 | $1,119 | $280 |
| 3. | 9701 Fields Road Apt. 1803, Gaithersburg, Maryland | Jt. | $175,000 | $56,130 | $59,435 | $59,435 |
| 4. | Cynasa Holdings, LLC[4] | Jt. 75/25 | | | | |
| | 4(a) 1500 Dufief Mill Road, | Jt. | $875,000 | $611,452 | $197,661 | $65,887 |
| | 4(b) United Bank Account xx8940 | Jt. | $4,598 | $0 | $3,449 | $1,149 |
| 5. | E*Trade Account xx5158[5] | H | $1,370 | $0 | $1,370 | $0 |
| | **SUBTOTAL** | | | | **$675,312** | **$229,820** |

[1] Parties own Retina One 80%, H, 20% W.
[2] Parties stipulated to value. Titled under Retina One, which is owned by the parties.
[3] Under operating agreement Wife has 20% ownership. Husband has 80%.
[4] Cynasa owns Dufief Mill and the United Bank Account.
[5] By Agreement.

FILED
MAR 26 2019
Clerk of the Circuit Court
Montgomery County, Md.

| DESCRIPTION | TITLE | FMV | DEBT | HUSBAND | WIFE |
|---|---|---|---|---|---|
| 6. Eagle Eye Surgical Center, LLC | H | Unknown[6] | | | |
| 7. 2011 Mercedes s550 | H | $20,000 | $0 | $20,000 | |
| 8. Audi 2011 Q7 | W | $15,000 | $0 | | $15,000 |
| 9. Furniture (Marital Home) | Jt. | $10,000 | $0 | $5,000 | $5,000 |
| 10. Furniture in Wife's Residence | W | $20,000 | $0 | | $20,000 |
| 11. Wife's Jewelry | W | $25,000 | $0 | | $25,000 |
| 12. Husband's Clothes | H | $500 | $0 | $500 | |
| 13. Wife's Clothes | W | $500 | $0 | | $500 |
| 14. Gold | Jt. | $7,235[7] | $0 | $3,617 | $3,618 |
| 15. 2007 Mercedes GL450 | H | $14,000 | $0 | $14,000 | $0 |
| 16. 8931 Edgewood Drive, Gaithersburg Maryland | Jt.[8] | $603,100 | $238,529 | | |
| 17. Piano | Jt. | | $0 | $0 | $62,000[9] |
| **TOTAL MARITAL** | | | | **$718,429** | **$360,938** |

[6] The exact fair market value of Eagle Eye Surgical Center, LLC is unclear. Plaintiff's exhibit 46 is an unexecuted operating agreement from May. 2015 providing Husband with a 60% ownership interest. Wife provided a document written by Father purporting to show purchases by RCW of $231,095 worth of medical equipment for the Eagle Eye Surgical Center. (Pl. Ex. 72).

[7] The location of the gold is unclear.

[8] Wife has use and possession for up to three years.

## NONMARITAL PROPERTY

| DESCRIPTION | TITLE | FMV | DEBT | HUSBAND[9] | WIFE |
|---|---|---|---|---|---|
| 18. Maryland 529- N.M. | H/C | $13,0349 | $0 | $0 | $0 |
| 19. Maryland 529- S.M. | H/C | [10] | $0 | $0 | $0 |
| 20. 1530 Key Boulevard Apartment | H | $850,000 | $378,723 | $471,277 | $0 |
| 21. 1715 George Mason Drive, Suite 101. Arlington, Virginia, 22205 | H | | | | |
| 22. Retina Centers of Washington | H | $354,600 | $0 | $354,600 | $0 |
| 23. 181 Ocean Avenue, Palm Beach Shores, Florida, 33404 | H[11] | Unknown | | $1,210,000 | $0 |
| 24. Fidelity Account 670-710369 | H | $93,295 | $0 | $80,465[12] | $12,830 |
| 25. Fidelity Account 670-716103 | H | $406,199 | $0 | $302,609[13] | $103,589 |
| 26. Townhouse in Adma, Lebanon (1) | | | | | |
| 27. Townhouse in Adma, Lebanon (2) | | | | | |
| 28. Townhouse in Adma, Lebanon (3) | | | | | |
| 29. Townhouse in Adma, Lebanon (4)[14] | | | | | |
| 30. Lawsuit in Lebanon[15] | | | | | |
| 31. Lawsuit in Maryland[16] | | | | | |
| **TOTAL NON-MARITAL** | | | | $2,418,951 | $116,419 |
| **TOTAL (MARITAL AND NON-MARITAL)** | | | | $3,137,380 | $477,357 |

[9] Husband value.

[10] No value was provided for the S.M. 529 account.

[11] No evidence of value.

[12] Husband's premarital share (value as of June 1, 2009) is $67,6351 (D Ex. 9). Marital share is $25,660, 50% is $12,830.

[13] Husband's premarital share (value as of May 31, 2009) is $199,019 (D Ex. 10). Marital share is $207,179, 50% is $103,589.

[14] Husband provided no value; neither party provided any evidence.

[15] Husband has filed a law suit against his Mother in Lebanon, seeking $1.6 million.

[16] The outcome of the trial was that the Court found against Husband, in favor of Mr. Armani, the defendant in the Maryland lawsuit. The court assessed attorney's costs and fees against Husband. Husband filed an appeal.

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

CYNTHIA MELKI
Plaintiff

vs.                                        Case No. 138142-FL

TOUFIC MELKI
Defendant

## NOTICE OF JUDGMENT
(817)

**I HEREBY CERTIFY** that the following Judgment was entered in the above

entitled case on March 26th, 2019:

JUDGMENT ENTERED ON THE JUDGMENT INDEX IN FAVOR OF PLAINTIFF CYNTHIA
MELKI AND AGAINST DEFENDANT TOUFIC MELKI IN THE AMOUNT OF FIFTEEN
THOUSAND DOLLARS ($15,000.00).

**IN TESTIMONY WHEREOF,** I hereunto set my hand and affix the seal of

this Court.

Clerk of the Circuit Court for
Montgomery County, Maryland



444

03/27/2019 09:27:05   Addressee Check Sheet - 138142-FL

Page 01

CYNTHIA MELKI
120 GIBBS STREET #347
ROCKVILLE MD 20850

TOUFIC MELKI
8931 EDGEWOOD DRIVE
GAITHERSBURG MD 20877

CHRISTOPHER J GOWEN, ESQ
GOWEN SILVA & WINOGRAD PLLC
513 CAPITOL CT NE STE 100
WASHINGTON DC 20002

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**CYNTHIA MELKI**

     Plaintiff                :

vs.                            :      Case No.: **138142 FL**

                                :

**TOUFIC MELKI**               :

     Defendant           :

## ORDER

This matter came before the Court on October 29, 30, 31 and November 1, 2018 on Plaintiff/Counter-Defendant's Second Amended Motion for Absolute Divorce and for Other Relief (D.E. #390), the Responses thereto. The Court made findings and issues its written opinion simultaneously with this Order.

**It is, therefore, this** 19th **day of March, 2019,** by the Circuit Court for Montgomery County, Maryland, hereby:

**ORDERED**, that the parties be, and are hereby, granted an absolute divorce on the grounds of a twelve months separation; and it is further

**ORDERED**, that commencing and accounting from November 1, 2018, Husband shall pay Wife indefinite alimony in the amount of Nine Thousand Dollars ($9,000) per month, due and payable on the first day of each month, with credit for amounts paid as *pendente lite* undifferentiated support, from that date to the present; and it is further

**ORDERED**, that commencing and accounting from November 1, 2018, Husband shall pay Child Support in the amount of Four Thousand Five Hundred and Fifty-Six Dollars ($4,556) per month, due and payable on the first day of each month; and it is further

**ORDERED**, that the arrears resulting from the above alimony and child support orders shall be retired in a lump sum not later than June 1, 2019; thereafter, on written request of Wife, the Court shall reduce that amount to judgment; and it is further

**ORDERED**, that Husband shall pay Wife, as a monetary award, the sum of Four Hundred Thousand Dollars ($400,000), which shall be paid in full no later than June 1, 2019; thereafter, on written request of Wife, the Court shall reduce the amount to judgment; and it is further

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

**ORDERED**, that Husband is required to notify the Court within ten (10) days of any change of address or employment so long as his obligation to pay support remains in effect; and it is further

**ORDERED**, that if Husband accumulates support payment arrears amount to more than 30 days of support, he shall be subject to service of an Earnings Withholding Order; and it is further

**ORDERED**, that Husband shall continue to maintain health and dental insurance for the children, and pay their unreimbursed medical and dental expenses; and it is further

**ORDERED**, that the Court shall reserve jurisdiction for the entry and/or revision of appropriate Qualified Medical Child Support Orders (QMCSO), upon presentation; and it is further

**ORDERED**, that Husband shall pay to Wife One Hundred and Seven Thousand Dollars ($107,000) as and for litigation fees and costs, said amount to be paid not later than April 1, 2019; thereafter, on written request of Wife, the Court shall reduce that amount to judgment; and it is further

**ORDERED**, that the Fifteen Thousand Dollars ($15,000) awarded on October 2, 2018 (D.E. #392), for the Plaintiff's identified valuation expert, David De Jong, Esq., shall be, and is hereby, reduced to Judgment in favor of the Plaintiff, Cynthia Melki; and it is further

**ORDERED**, that Wife is awarded Use and Possession of the Family Home and Family Use Personal Property, located at 8931 Edgewood Dr., Gaithersburg, MD 20877, for a period of up to three years from the date of this Order, and thereafter, at her discretion, is authorized to purchase Husband's interest in Edgewood, or to sell the property; and it is further

**ORDERED**, that the parties' property at 9701 Fields Road, Apartment 1803, Gaithersburg, Maryland (Fields Road) shall be sold, and the proceeds, if any, divided equally between Husband and Wife; and it is further

**ORDERED**, that the Court will appoint a trustee for sale of Fields Road on the request of either party, if they are unable to agree to list it within sixty (60) days of this Order; and it is further

**ORDERED**, that Husband shall pay Wife $103,069 as and for her 20% ownership interest in Retina, One, LLC, which shall be paid in full not later than June 1, 2019;

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

2

thereafter, on written request of Wife, the Court shall reduce that amount to judgment; and it is further

**ORDERED**, that Husband shall pay Wife $65,887 as and for, her 25% ownership interest in Cynasa Holdings, LLC. which shall be paid in full not later than June 1, 2019; thereafter, on written request of Wife, the Court shall reduce that amount to judgment; and it is further

**ORDERED**, that the grand piano is awarded to Wife, as her sole and separate property; and it is further

**ORDERED**, that each party shall retain possession of their personal care items, including clothing and jewelry; and it is further

**ORDERED**, that following items shall be the sole property of Husband:

- E*Trade Account xx5158
- 2011 Mercedes S550
- 2007 Mercedes GL450

and it is further;

**ORDERED**, that the following items shall be the sole property of Wife:

- Audi 2011 Q7
- Wife's Jewelry

and it is further

**ORDERED**, that all other property solely in the name of either party shall be the sole property of the named owner; and it is further

**ORDERED**, that Wife shall have restored to her the use of her former name, **Cynthia Samaha**.

**CYNTHIA CALLAHAN, Judge**
**Circuit Court for Montgomery County, Maryland**

ENTERED

MAR 2 6 2019

Clerk of the Circuit Court
Montgomery County, Md.

3