IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| **CYNTHIA MELKI,** *Plaintiff,* v. **TOUFIC MELKI,** *Defendant.* | Case No. 138142-FL |

## UNCONTESTED MOTION TO MODIFY MARCH 26, 2019 DIVORCE ORDER AND FOR OTHER RELIEF

Plaintiff Cynthia Samaha (known earlier as Cynthia Samaha Melki), by and through her counsel, hereby files this motion and states as follows:

1. This matter came before the Court regarding the Ms. Samaha's Complaint for Divorce (D.E. 001) in August 2016. Since then there were multiple hearings, including trial, temporal custody modification, and contempt.

2. On March 26, 2019, this Honorable Court issued an Order and Opinion granting Ms. Samaha's complaint for absolute divorce (D.E. 441 - 443) ("Final Judgment") and, among other things, ordered Dr. Melki to pay child support, alimony, and convey use and possession of the family home located at 8931 Edgewood Dr., Gaithersburg, MD 20877 to Ms. Samaha.

3. On April 18, 2019, Dr. Melki filed a petition for Chapter 11 bankruptcy with the United States Bankruptcy Court for the District of Maryland, case No. 19−15265 – LSS.

4. After Dr. Melki's motion to alter or amend was denied, he appealed from the Final Judgment.

5. The parties, each with the advice of counsel, have agreed to modify March 26, 2019 Divorce Order (D.E. 442-443) and June 10, 2019 Order (D.E. 490). Ms. Samaha also notes that the United States Bankruptcy Court for the District of Maryland, case No. 19−15265 – LSS, has final jurisdiction over the Settlement Agreement and Release[1], and Ms. Samaha and Dr. Melki will file a Rule 9019(a) motion in the U. S. Bankruptcy Court to approve this settlement.

6. Ms. Samaha believes it is in her best interest to voluntarily agree to accept a lower alimony payment and reduce her lump sum award in exchange for reviewing real estate distribution and a reduction of the scope of Dr Melki's appeal. Dr. Melki agrees. Therefore, on January 24, 2020, at the hearing in the Chapter 11 bankruptcy matter, Ms. Samaha and Dr. Melki reached a settlement and executed a Settlement Agreement and Release attached hereto as exhibit A.

7. The reduction in alimony alone based on a normal life expectancy results in a reduction of Dr. Melki and his estate's obligation of over 1 million dollars.

8. Dr. Melki has further agreed to waive all issues listed on his notice of appeal except for the constitutional, jurisdictional and legal grounds for divorce as stated in the Settlement Agreement. Dr. Melki explicitly waives his appellate rights related to all of the financial determinations including support that were made by Judge Callahan throughout the course of this case.

9. Each party has received the advice of counsel. Judge Simpson of the United States Bankruptcy Court conducted full and complete colloquies of both parties regarding their knowing, voluntary agreement to the terms of the modification. Both parties are satisfied with the advice of

---

[1] With the exception of agreements related to Custody and the best interest of the children.

counsel and wish that this Court accept this agreement and issue an order modifying the Final Judgment and custody orders as stated in Exhibit A.

WHEREFORE, Ms. Samaha respectfully requests that this Honorable Court modify its March 26, 2019 Divorce Order (D.E. 442-443) and June 10, 2019 Order (D.E. 490) based on the Settlement Agreement and Release attached to this motion.

Date: <u>January 29, 2020</u>

Respectfully submitted,

_____
Christopher J. Gowen, Esq. (CPF # 1207120004)
Gowen Silva & Winograd PLLC
513 Capitol Court, NE, Suite 100
Washington, DC 20002
Telephone: (202) 380-9355
Facsimile: (202) 499-1370
cgowen@gowensilva.com
*Counsel for Cynthia Samaha*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, a copy of the foregoing document was served via First-Class U.S. Mail, postage prepaid, as follows:

John M. Quinn
Aindrea M. Conroy
33 Wood Lane
Rockville, MD 20850,

Bart Colombo
312 E. Market Street, Suite F
Leesburg, VA 20176
*Counsel for Defendant Toufic Melki*

Date: <u>January 29, 2020</u>

_____
Christopher J. Gowen, Esq.

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| **CYNTHIA MELKI,** *Plaintiff,* v. **TOUFIC MELKI,** *Defendant.* | Case No. 138142-FL |

# ORDER

This matter came on to be heard, upon the Plaintiff's Uncontested Motion to Modify Orders filed on January __, 2020 (D.E. _____),  and it is appearing this _____ day of _____, 2020, that this motion should be GRANTED.

UPON CONSIDERATION WHEREOF, it is ORDERED that the Settlement Agreement and Release attached hereto is merged and incorporated into this Court's March 26, 2019 Divorce Order (D.E. 442-443) and June 10, 2019 Order (D.E. 490).

SO ORDERED.

_____
_____, **Judge**
**Circuit Court for Montgomery County, Maryland**

# EXHIBIT A

*NOT A DRAFT*
*Final*
*TM/CS*

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into on the last date set forth on the signature pages below ("Effective Date"), by and between Cynthia Samaha fka Cynthia Samaha Melki as plaintiff ("Plaintiff") and Toufic Salim Melki as defendant ("Defendant") (Collectively, the "Parties") in respect of any and all disputes by and between the Parties of any nature that existed as of the date of mutual execution of the Agreement.

## R E C I T A L S:

A. On or about April 18, 2019 (the "Petition Date"), the Defendant filed a Chapter 11 Petition for Relief under the Bankruptcy Code of 2005, as amended (the "Code"). The Defendant is a debtor and debtor in possession under Sections 1106-1107 of the Code. The Defendant is in possession of all property of the estate.

B. On or about June 21, 2009, the Parties were married in Lebanon. The Parties have three (3) children from the marriage (the "Children") which remain under the age of majority.

C. On March 26, 2019, the Circuit Court for Montgomery County, MD (the "Circuit Court") entered an Opinion and Order in Civil Case 13842FL ("the "Domestic Case") which addressed the Plaintiff's motion for absolute divorce and Defendant's responses thereto (the "Opinion"). A copy of the "Opinion and Order" is annexed hereto and incorporated herein by reference as **Exhibit A**. On or about October 30, 2017, the Parties entered into Custody Consent Order ("Custody Order") where the Parties agreed to joint legal custody and a shared physical custody schedule for the Children and other terms.

D. Among[1] the findings of fact and conclusions of law issued by the Circuit Court in the Opinion and enrolled to an accompanying Order also dated March 26, 2019 (the "Domestic Order") was the following: (i) the parties were granted an absolute divorce; (ii) commencing from November 1, 2018 (and the first of the month thereafter), Defendant was obligated to pay to Plaintiff the monthly sum of $9,000.00 as indefinite alimony with credit to Plaintiff for any *pendent lite* undifferentiated support through March 26, 2019; (iii) commencing from November 1, 2018 (and the first of the month thereafter) Defendant shall pay child support in the monthly sum of $4,556.00; (iv) arrears due on the alimony and child support shall be retired by June 1, 2019, and be subject to enrollment as a judgment at the request of Plaintiff; (v) Defendant shall pay to the Plaintiff the sum of $400,000.00 as a monetary award no later than June 1, 2019, and be subject to enrollment as a judgment at the request of the Plaintiff; (vi) Defendant shall continue to maintain health and dental insurance for the Children and pay their unreimbursed medical and dental expenses; (vii) Defendant shall pay to Plaintiff $107,000.00 for Plaintiff's unreimbursed legal fees and costs in the Domestic Case and no later than April 1, 2019, and be subject to enrollment as a

---

[1] The Order and Opinion as well as the Consent Custody Order contain substantial content not incorporated to the Agreement because it is not germane to the settlement and terms of the Agreement; however, as the Opinion and Order are incorporated hereto by reference, their full terms and language control over any summaries set forth in these recitals.

1

*CS/TM*

NOT A DRAFT
Final

judgment at the request of the Plaintiff; (viii) The sum of $15,000.00 owed by Defendant to Plaintiff's Expert Mr. DeJong, Esquire, was reduced to judgment against Defendant; (ix) Plaintiff was awarded possession and use of the marital home at 8931 Edgewood Drive, Gaithersburg, MD 20877 ("Edgewood") for up to three (3) years from March 26, 2019 and thereafter may purchase Defendant's interest in Edgewood or Plaintiff may sell Edgewood; (x) the property situate at 9701 Fields Road Apt. 1803 Gaithersburg MD ("Fields Road") shall be sold and the Parties shall divide the net proceeds 50%/50%; (xi) Defendant shall pay to Plaintiff $103,069 as Plaintiff's 20% interest in Retina One, LLC; and (xii) Defendant shall pay to Plaintiff $65,887.00 as Plaintiff's 25% interest in Cynasa Holdings, LLC.

E. The Parties have experienced further litigation in the Circuit Court since the Order and Opinion were issued, and have many financial and conceptual disputes between them over the areas that have been in litigation including but not limited to alimony, support, custody, visitation, travel restrictions, and ongoing domestic matters (the "Disputes").

F. Among these Disputes is whether the Circuit Court had the authority on a Constitutional basis to enter a divorce judgment between the parties on the basis of a separation where Defendant contends that he cannot be divorced from a Christian Orthodox marriage conducted in Lebanon in a civil proceeding such as the Domestic Case here in Maryland.

G. The Defendant has commenced a timely appeal of the Order and Opinion to the Court of Special Appeals wherein the Defendant is seeking to overturn the Order and Opinion on the foregoing described Constitutional basis, as well as on matters of financial awards, custody, and the like (the "Appeal").

H. Given the foregoing facts and circumstances, the Parties have determined that a settlement and resolution of all disputes by and between them should be reached, with the sole exception of the Appeal as it pertains to the Constitutionality of the divorce of the Parties by the Circuit Court and the incumbent religious questions that issue entails. Plaintiff contends she is divorced. Defendant contends he is not divorced.

I. The following Agreement was placed on the record of the Bankruptcy Court on January 21, 2020 by oral recitation of the Parties' counsel (Mr. John D. Burns, for Defendant, and Mr. Chris Gowen and Richard Stolker, for Plaintiff) and adopted and ratified by the Parties respective testimony placed on the record in open court that each was in full agreement with the terms and conditions of the settlement; that each was not promised or anticipating anything outside of the confines of the following agreement; and that each understood English and had no further questions or disagreements with the settlement that constitutes the Agreement, and each was fully satisfied with the representation of respective counsel in arriving at the Agreement.

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**1. Voluntary Agreement/Attorney Representation.** The Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said



*NOT A DRAFT*

*Final JM/CS*

attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection and the decision not to be represented by counsel is a decision that the Parties have freely made. The Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, made any desired changes on January 21, 2020 prior to their testimony, and have voluntarily and without coercion, duress, or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

**2. Effective Date**. The Effective Date of this Agreement is January 21, 2020, consistent with the Parties' testimony and the Agreement placed on the record in open court before the Bankruptcy Court. Performance of the Agreement shall ensue on the schedule set forth by the below terms between the Parties.

**3. Jurisdiction/Venue**. As the Parties recognize, the Disputes concerning property and financial matters of the Defendant which reside in the exclusive jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334(e)(1), and the Disputes concerning domestic relations matters[2] which reside in the Montgomery County Circuit Court, case 13842FL. As a result of this overlap, the Agreement shall be first subject to endorsement and a decree from the Circuit Court by motion concerning its domestic relations components (with a reservation for final approval for the Bankruptcy Court), and then subject to a Bankruptcy Court approval by Motion under Rule 9019(a). Notwithstanding the need for submission to the above tribunals, the Effective Date and the binding nature of the Agreement on the Parties prior to approval by any tribunal and performance as required of the Agreement on a timetable below is not impacted by this provision.

**4. Terms**. As full and final settlement of the disputes with the exception of the Appeal the Parties agree as follows:

*Appeal:*

A) Defendant agrees that his Appeal shall not proceed further in the Court of Special Appeals with the sole exception of the briefing and necessary actions to the one legal issue of whether the Circuit Court Opinion/Order or any subsequent Orders violated the United States Constitution because the Circuit Court had no jurisdiction to adjudicate a civil divorce in the context of a Christian Orthodox marriage which was not subject to dissolution on the grounds and jurisdictional bases that underpin the Opinion and Order issued in the Circuit Court. The Defendant shall direct his counsel in the Appeal to abandon any and all components of the Appeal other than the single Constitutional question that shall remain pending. In consideration of the Plaintiff's consent to permit the Appeal to continue to a final Order in this Agreement, the Defendant shall place within the escrow IOLTA account of Gowen Silva and Winograd PLLC as counsel to the Plaintiff the sum of $50,000.00 on or before February 15, 2020. To the extent the Defendant prevails on his Appeal following a final Order; namely, there is a reversal of the Circuit Court Order/Opinion on the Constitutional question presented, Gowen Silva and Winograd PLLC shall return the $50,000.00 to Defendant within ten (10) days of the final Order deciding this question.

---

2 The parties do not stipulate that the domestic relations jurisdiction includes the Constitutional matters addressed within the Appeal over the religious questions presented concerning the purported divorce.

3



*Final* JM
NOT A DRAFT  CS

If the Defendant does not prevail on his Appeal following a final Order, then Gowen Silva and Winograd PLLC on behalf of Plaintiff shall be entitled to retain the $50,000.00 without reduction towards his legal fees in connection with the representation of Plaintiff in the Appeal, and if his unreimbursed legal fees do not exceed the $50,000.00, any remaining balance thereof shall be remitted by Gowen Silva and Winograd PLLC to Plaintiff. The Circuit of Montgomery county shall retain jurisdiction over any dispute regarding this paragraph[3].

*Alimony:* Effective March 1, 2020, the amount of monthly alimony payable to Plaintiff shall be $5,500 for sixty (60) months or longer subject to the foregoing clarification. The sixty (60) month period shall commence when Defendant has fully complied with his payments of the Reduced Sum and all other terms in this Agreement identified in this Agreement. Thus, if Defendant has complied with his payments of the Reduced Sum within one hundred eighty (180) days from February 1, 2020, the sixty (60) months delimitation on future alimony would commence at the expiration of that one hundred eighty (180) day period. If Defendant has complied with his payments of the Reduced Sum within sixty (60) days from February 1, 2020, the sixty (60) months delimitation on future alimony would commence at the expiration of that sixty (60) day period. Alimony payments will be reduced from $9,000.00 monthly to $5,500.00 per month on March 1, 2020 irrespective of the commencement date for the sixty month delimitation. Should the Defendant comply with all terms of this Agreement, at the conclusion of the sixty (60) month term for future alimony, when ever such sixty (60) month term commences per the examples above, Defendant will be released and discharged of any further alimony obligations. However, if the Defendant is not in substantial compliance with the terms of this Agreement after the one hundred eighty (180) days period commencing on February 1, 2020, the amount of alimony monthly payable or owed shall be reinstated to $9,000 and the Plaintiff shall be entitled to full arrears from the effective date of the Opinion. If the Defendant is not in full compliance with the terms of this Agreement within one (1) year of this Agreement, the alimony payable monthly shall be reinstated to $9,000.00 indefinitely.

*Child Support:*

B) The Parties shall not alter the amount of child support entered by the Circuit Court by this Agreement; rather, the Parties each reserve the right to seek a change in child support or custody by modification submitted to the Circuit Court as provided by Maryland law.

*Monetary Award:*

C) The monetary award of $400,000.00 for Plaintiff shall be reduced to $200,000.00 payable within One Hundred Eighty (180) Days of February 1, 2020.

*Plaintiff's Attorney's Fees:*

D) In modification of the $107,000.00 in attorney's fees set forth in the Order and Opinion, Defendant shall pay Gowen Silva Winograd PLLC (GSW) $150,000.00 in attorney's fees and/or costs. $25,000.00 of the foregoing sum shall be due and received by GSW on or before February 28, 2020. The remainder shall be due within One Hundred Eighty (180) days of February

---

[3] It is understood that this paragraph as well as paragraphs F, G and H are consistent with the emailed language sent by Jack Quinn on January 24, 2020 at 11:09am. If they are not the language in the email shall be the effective language. *Attached is the email as Exhibit B.*

CS/JM

*[Handwritten: Final / NOT A DRAFT / TM/CS]*

1, 2020. If the Defendant does not make the final payment of $125,000.00 to GSW within 180 days of February 1, 2020, the amount of attorney's fees owed shall increase by $100,000.00 (for a total of $250,000.00).

*Expert Fees:*

  E) Consistent with Order and Opinion, Defendant shall pay $15,000 for expert services to GSW within 30 days of this Agreement.

*Timing:*

*[Handwritten: (C) (D) (E) ok]*

  F) The amounts set forth in (D), (E) and (F) shall be referenced as the "Reduced Sum" herein consisting of a total of $365,000.00 to be paid by Defendant to Plaintiff or her counsel GSW as provided for.

  G) If Defendant fails to pay the Reduced Sum within the One Hundred Eighty Days of February 1, 2020 (noting that $25,000.00 of such Reduced Sum must be pre-paid by February 28, 2020 to GSW), the Defendant shall be compelled to immediately sell his property owned by Retina One, LLC known as 25055 Riding Plaza, South Riding, VA 20152 ("South Riding") at a sufficient price to satisfy immediately the $365,000.00 owed or any portion still remaining, and at a fair market level by appraisal or other agreed third party valuation sufficient to satisfy the Bankruptcy Court and estate under 11 U.S.C. § 363(b), (f) on notice. This is not intended to provide Defendant with an extension for the satisfaction of the $25,000.00 referenced in Para. (E) hereof, or to ameliorate the $100,000.00 additional attorney fee sum if Defendant fails to timely pay the remaining balance of $125,000.00 timely by One Hundred Eighty Days (180) after February 1, 2020. Defendant may and is encouraged to sell the South Riding Property immediately.

*Edgewood:*

  H) In exchange for the $200,000.00 reduction in the monetary award otherwise owed to Plaintiff, the Defendant shall convey all of his right, title and interest in Edgewood to Plaintiff by quitclaim deed within 45 days of the Order approving the 9019(a) Motion. Neither of the Parties are aware of any taxes related to the transfer of this Edgewood property; however, Defendant must satisfy any such taxes and recording fees if they must be paid in order to transfer the Edgewood property to Plaintiff.

*Fields Road:*

  I) In further consideration of Plaintiff's waiver of her interest in Cynasa and Retina One otherwise required by the Opinion and Order, Defendant shall convey by quitclaim all of his right, title and interest in the property located at Fields Road to Plaintiff within 45 days following the Order approving the 9019(a) Motion. The Plaintiff shall assume the lease and receive all income related to the Fields Road property accrued upon the completion of the quitclaim

5

*[Handwritten initials: CS / TM]*

*Final*
*NOT A DRAFT*

conveyance. Defendant is obligated to pay rents received to satisfy debt service on the mortgage so as to reduce the mortgage balance as called for by the mortgage documents prior to the quitclaim. Neither of the Parties are aware of any taxes related to the transfer of this Fields Road property; however, Plaintiff must satisfy any such taxes and recording fees if they must be paid in order to transfer the Fields Road property to Plaintiff.

*Miscellaneous:*

J) Upon satisfaction of the foregoing transfers in Paras. (H), (I) and (J), Plaintiff waives and releases and shall execute any documents required of her to effectuate such releases of her interests in Cynasa and Retina One.

K) Upon full and complete satisfaction of the duties imposed upon Defendant in the foregoing paragraphs, the Parties will agree to file a consent motion to have Children's passports released to the Defendant for a period of one year from the date she receives them. At that point, the consistent with the Custody Order, the physical control of the passports shall alternate on a yearly basis. The Defendant shall have physical control of the passports for one year from the date Plaintiff's receives them from the Circuit Court registry. That date will be the transfer date for each subsequent each year. Any new claims for violation of any custody or visitation concerning these matters may be brought to the Circuit Court by either of the Parties prospectively.

L) Upon approval of this Agreement by the Circuit Court, successful payment by the Defendant of the sum of $50,000 appeal bond into the GSW escrow, the $25,000 initial attorney fees payment as described in paragraph 4(A) of this Agreement, the transfer of both properties listed in paragraphs 4(I) and 4(J), and full compliance with alimony and child support payments, the Defendant shall have his passport (Lebanese and United States) restored to him; provided, however, that in the event that the Defendant does not return within 30 days of leaving the country (unless, otherwise, agreed in writing by the Parties), the Plaintiff shall have full legal and physical custody of the Children, and all property owned by the Defendant shall be forfeited to the Plaintiff subject to the creditors' claims in a Bankruptcy Court.

M) Upon completion of all terms above by the Defendant, the Children shall be registered by Defendant at the Ritchie Park Elementary School (RPES) which also requires that Defendant maintains a residence in that jurisdiction and provides at his cost transport for the Children to and from that RPES at all times.

N) Effective immediately, Defendant shall share 50/50 with Plaintiff the costs of any preschool required for their youngest child through June 2020.

O) Defendant must continue to maintain health and dental insurance for the Children and pay their unreimbursed medical and dental expenses;

P) Defendant affirms that he has full authority to enter into the Agreement including but not limited to the potential and prospective sale of the South Riding property and

6

*Final*
NOT A DRAFT

authorizes his counsel to present an Order to the Bankruptcy Court incorporating these terms as well as this Agreement.

Q) This Agreement shall be incorporated and merged into the final divorce order, or by amended Order as the Circuit Court sees fit on a petition to enroll settlement agreement.

R) This Agreement shall survive any subsequent conversion or dismissal of Defendant's present Chapter 11 bankruptcy case by retention of jurisdiction, which shall be addressed in the 9019(a) Motion.

S) The duties assumed hereby by the Parties shall provide each of them two (2) events of cure, whereby the adverse party may file a Notice of Default, and the non-compliant party shall cure within 15 days. A third (3rd) event of Default shall not be curable absent consent of the adverse party or an Order of a Court of appropriate jurisdiction.

T) To the effect this Agreement modifies the Opinion, Order and Consent Custody Order, this Agreement shall represent the controlling language. For any sections of the Opinion and Custody Order that are not modified by this Agreement the respective orders shall represent the controlling language.

**5. Waiver of Claims**. The Parties hereby knowingly, intentionally and voluntarily waive any and all claims that were raised or that could have been raised whether known or unknown, between them in the Domestic Case or relating thereto except for any rights and/or claims relating to the enforcement of the terms hereof, all which are hereby expressly reserved, and the Appeal as it relates to the issues preserved. The Parties further waive the right to appeal or challenge any and all judgments, decisions or orders, or any portions thereof, issued in respect of this Agreement other than enforcement.

**6. Release by Defendant.** Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Defendant for himself, his heirs, agents, attorneys, representatives, predecessors, successors, spouses, and assigns (collectively "Defendant Releasor") hereby waives, remises, releases, acquits, satisfies, and forever discharges Plaintiff and Plaintiff's past, present and future officers, directors, heirs, agents, servants, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers, administrators, and successors in interest and related entities (all of the foregoing persons and entities are hereinafter collectively referred to as the "Released Parties"), of and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity (collectively "Released Claims"), which Defendant and Defendant's attorneys, agents, representatives, predecessors, successors, spouses, and assigns, ever had, now has, or which any personal representative, successor, heir, or assign of Defendant hereafter can, shall, or may have against the Released Parties, for, upon, or by reason of any matter, cause, or thing whatsoever, from the

7



NOT A DRAFT
Final

beginning of the world to the Effective Date of this Agreement, specifically relating to, arising out of, or in any way stemming from the Agreement, the Order, and the Opinion. with the exception of the Parties' obligations under this Agreement for enforcement and the carve out exception for the single Constitutional question in the Appeal.

**7. Release by Plaintiff.** Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Plaintiff for herself, her heirs, agents, attorneys, representatives, predecessors, successors, spouses, and assigns (collectively "Plaintiff Releasor") hereby waives, remises, releases, acquits, satisfies, and forever discharges Defendant and Defendant's past, present and future officers, directors, heirs, agents, servants, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers, administrators, and successors in interest and related entities (all of the foregoing persons and entities are hereinafter collectively referred to as the "Released Parties"), of and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity (collectively "Released Claims"), which Plaintiff and Plaintiff's attorneys, agents, representatives, predecessors, successors, spouses, and assigns, ever had, now has, or which any personal representative, successor, heir, or assign of Plaintiff hereafter can, shall, or may have against the Released Parties, for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the Effective Date of this Agreement, specifically relating to, arising out of, or in any way stemming from the Agreement, the Order, and the Opinion. with the exception of the Parties' obligations under this Agreement for enforcement and the carve out exception for the single Constitutional question in the Appeal.

**8. Entire Agreement.** This Agreement constitutes the sole and entire agreement between the Parties and supersedes all prior and contemporaneous statements, promises, understandings or agreements, whether written or oral. There are no contemporaneous or prior understandings or side agreements or oral agreements, all as the Parties confirmed by their testimony on January 21, 2020.

**9. Amendments.** This Agreement may be amended, modified or altered at any time ONLY upon the approval of both the Parties and respective counsel and if required for material amendments Court approval; however, any such amendment must be in writing and signed by all Parties in order for such amendment to be of any force and effect.

**10. Partial Invalidity.** In the event that any provision of this Agreement is declared by any court of competent jurisdiction or any administrative judge to be void or otherwise invalid, all of the other terms, conditions and provisions of this Agreement shall remain in full force and effect to the same extent as if that part declared void or invalid had never been incorporated in the Agreement and in such form, the remainder of the Agreement shall continue to be binding upon the Parties.



NOT A DRAFT
Filed my
/(.

**11. Survival**. All representations and warranties contained herein shall survive the execution and delivery of this Agreement, and the execution and delivery of any other document or instrument referred to herein.

**12. Applicable Law**. This Agreement shall be subject to and governed by the laws of the State of Maryland without regard to conflict of law rules and United States Bankruptcy Code. The Appeal and Constitutional question that are excluded shall be determined by such legal sources as the Court of Special Appeals or an appellate Court later determines.

**13. Fees/Costs**. The Parties shall bear their own attorneys' fees and costs, including all costs related to the litigation heretofore that has preceded this Agreement including the preparation of any and all documents necessary to enter into this Agreement except as provided in this Agreement. However, should either party breach the terms of this Agreement, the non-breaching party shall be entitled to their full reasonable attorney's fees and costs related to the enforcement or cure of the breach.

**14. Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

**15. Tax Consequences**. Unless otherwise addressed above, the Parties acknowledge and agree that they are solely responsible for the payment of any and all federal, state, city or local taxes which might be due and owing as a result of any term contained in this Agreement. The Parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives, in the course of these negotiations, and each party is relying upon the advice of its own tax consultant or accountant with regard to any tax consequences that may arise as a result of the execution of this Agreement. The Parties acknowledge that Plaintiff may be required to submit a Form W-9 to her counsel for any fees paid by Defendant, and that Plaintiff may be required to issue a Form 1099 or other tax form reporting the consideration flowing to the Defendant for cancellation of debt under this Agreement to the Internal Revenue Service and/or other taxing authority.

**16. No Adverse Construction.** In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against either of the Parties.

**17. Not Evidence**. This Agreement shall not be used as evidence in any proceeding other than one to enforce this Agreement, or one seeking damages arising from a breach of this Agreement. The Agreement also may be used with the Court of Special Appeals if the Defendant does not comply with the terms of this Agreement.

**18. Authority**. The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title, and interest in and to every claim and other matter which each releases in this Agreement. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend, and

9

CS/jm

*[handwritten: NOT A DRAFT / Final]*

hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

**19. Notice**. Unless otherwise specified herein, all notices, requests, consents, approvals, demands or other communications to the Defendant shall be sent to the Defendant at his address of 1014 Willow Leaf Way Rockville, MD 20854 and as a courtesy (not representing notice) c/o John D. Burns, Esquire, 6303 Ivy Lane, Suite 102, Greenbelt, MD 20770. However, such delivery to counsel for Defendant shall not constitute delivery to Defendant. As to Plaintiff, unless otherwise specified herein, all notices, requests, consents, approvals, demands or other communications to the Plaintiff shall be sent to the Plaintiff at her address of 8931 Edgewood Drive, Gaithersburg, MD 20877 and as a courtesy (not representing notice) c/o Chris Gowen, Esquire, 513 Capitol Court N.E., Suite 100, Washington, DC 20002. However, such delivery to counsel for Plaintiff shall not constitute delivery to Plaintiff.

**20. Further Assurances**. The Parties shall mutually perform such further acts and things and execute and deliver to each other or counsel for the respective Parties such additional agreements, powers and instruments, as this Agreement may reasonably require or reasonably deem advisable to carry into effect the purposes of this Agreement or to better assure and confirm unto the Parties their rights, powers and remedies hereunder.

[THE REMAINDER OF THIS PAGE INTENTIONALLY BLANK.
SIGNATURE PAGES TO FOLLOW.]

*NOT A DRAFT*
*Final* *tm*
*Cs*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth below.

DATED: 01/24/2020          _____
                           TOUFIC SALIM MELKI

DATED: 01/24/2020          _____
                           CYNTHIA SAMAHA

11

# John D. Burns

| | |
|---|---|
| **From:** | Aindrea M. Conroy [amc@eqlawyers.com] |
| **Sent:** | Friday, January 24, 2020 11:09 AM |
| **To:** | info@burnsbankruptcyfirm.com; jburns@burnsbankruptcyfirm.com |
| **Cc:** | Jack Quinn |
| **Subject:** | Dr. Melki |
| **Importance:** | High |

John,

The below changes need to be made to the Agreement. There may be more, but these were the ones we were able to identify in the short time period provided.

F. Among these Disputes is whether the Circuit Court erred and/or abused its discretion in granting Plaintiff an absolute divorce from Defendant on the ground of a one year separation on one or more of the following bases: (1) The Circuit Court lacked jurisdiction to grant the divorce; (2) Principals of Comity prohibit the Circuit Court from granting the divorce; (3) Granting an absolute divorce is in an impermissible interference with the parties' marriage contract; and (4) Granting an absolute divorce is in violation of Defendant's First Amendment Right to freedom of religion.

G. The Defendant has commenced a timely appeal of the Order and Opinion to the Court of Special Appeals wherein the Defendant is seeking to reverse and/or vacate the Order and Opinion on the foregoing described bases, as well as on matters of financial awards (the "Appeal").

H. Given the foregoing facts and circumstances, the Parties have determined that a settlement and resolution of all Disputes by and between them should be reached, with the sole exception of the Appeal as it pertains to the issues identified in Paragraph F above. Defendant contends he is no divorced. Plaintiff contends she is divorced.

4. A) Defendant agrees that his Appeal shall not proceed further in the Court of Special Appeals with the sole exception of the briefing and necessary actions to the issues identified in Paragraph F above. The Defendant shall direct his counsel in the Appeal to abandon any and all components of the Appeal other than the issues identified in Paragraph F above. In consideration of the Plaintiff's consent to permit the Appeal to continue, including any subsequent appellate proceedings (Court of Appeals, Supreme Court, etc.), the Defendant shall place within the escrow IOLTA account of Chris Gowen as counsel to the Plaintiff the sum of $50,000.00 on or before February 15, 2020. To the extent the Defendant prevails on his Appeal, including any subsequent appellate proceedings (Court of Appeals, Supreme Court, etc.); namely that the Order and Opinion of the Circuit Court are vacated, Mr. Gowen shall return the $50,000.00 to Defendant within ten (10) days of the Order and Opinion of the Circuit Court being vacated. If the Order and Opinion of the Circuit Court are not ultimately vacated, then Gowen on behalf of Plaintiff shall be entitled to retain the $50,000.00 without reduction towards his legal fees in connection with the representation of Plaintiff in the Appeal, including any subsequent appellate proceedings (Court of Appeals, Supreme Court, etc.), and if his unreimbursed legal fees do not exceed the $50,000.00, any remaining balance thereof shall be remitted by Gowen to Plaintiff.

Q) This Agreement shall be incorporated, but not merged, into a Consent Order, which the parties will seek to have entered in the Circuit Court for Montgomery County, Maryland.

Aindrea M. Conroy
Ethridge, Quinn, Kemp,
Rowan & Hartinger
33 Wood Lane

1

Rockville, MD 20850
T (301)762-1696
F (301)762-7691

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
****************************************************************************

Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.