**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

In re:

**TOUFIC SALIM MELKI,**                                        **CHAPTER 11**

        **DEBTOR.**                                        **CASE NO. 19-15265**


**BAYVIEW LOAN SERVICING, LLC,**

        **MOVANT,**
**vs.**
**TOUFIC SALIM MELKI,**

        **RESPONDENTS.**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**(REAL PROPERTY LOCATED AT 9701 FIELDS ROAD UNIT 1803, GAITHERSBURG,**
**MD 20878)**

      Bayview Loan Servicing, LLC ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **9701 Fields Road Unit 1803, Gaithersburg, MD 20878** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below),and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

      1.      A petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on April 18, 2019

      2.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $124,000.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A.

      3.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Montgomery, Maryland.  A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

      4.      As of March 23, 2020, the unpaid principal balance due is $40,569.14 and the approximate outstanding amount of Obligations less any partial payments or suspense balance is $42,071.83.

5.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note as of March 23, 2020:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 1 | 8/1/2019 | 8/1/2019 | $1,383.19 | $1,383.19 |
| 5 | 9/1/2019 | 1/1/2020 | $1,392.03 | $6,960.15 |
| 2 | 2/1/2020 | 3/1/2020 | $1,418.76 | $2,837.52 |
| Less partial payments: | | | | ($8.84) |
| | | | Total: | $11,172.02 |

6.      As of March 23, 2020, the total post-petition arrearage/delinquency is $11,372.02, consisting of (i) the foregoing total of payments in the amount of $11,172.02, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| Bankruptcy Attorney Costs | $200.00 |

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant may also incur legal fees and costs.

8.      A payment history is attached hereto as Exhibit 1.

9.      The estimated value of the Property is $150,000.00.  The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as Exhibit C.

10.      Cause exists for relief from the automatic stay for the following reasons:

     i.      Movant's interest in the Property is not adequately protected.


WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.   That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.   For such other relief as the Court deems proper.

Dated: March 26, 2020

BAYVIEW LOAN SERVICING, LLC

By: **/s/ MICHAEL T. FREEMAN**
John E. Driscoll, Esquire, Bar No. 17161
Michael T. Freeman, Esquire, Bar No. 19131
Nisha R. Patel, Esquire, Bar No. 20997
Daniel J. Pesachowitz, Esquire, Bar No. 14906
Samuel I. White, P.C.
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
Tel: (804) 290-4290
Fax: (804) 290-4298
mfreeman@siwpc.com

## CERTIFICATE OF SERVICE

I certify that on March 26, 2020, the foregoing Motion was served via CM/ECF on the Office of the US Trustee, and John Douglas Burns, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Toufic Salim Melki, Debtor, 1014 Willow Leaf Way, Rockville, MD 20854, and to the 20 largest unsecured creditors on the Debtor's mailing matrix, as listed on the attached mailing list.

**/s/ MICHAEL T. FREEMAN**
Michael T. Freeman, Esquire
Samuel I. White, P. C.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

In re:

TOUFIC SALIM MELKI,                              CHAPTER 11

       DEBTOR.                              CASE NO. 19-15265

BAYVIEW LOAN SERVICING, LLC,

       MOVANT,

vs.

TOUFIC SALIM MELKI,

       RESPONDENTS.

### NOTICE OF MOTION AND OPPORTUNITY TO OBJECT TO MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY AND HEARING THEREON

Bayview Loan Servicing, LLC ("Movant"), has filed papers with the court seeking relief from the automatic stay of 11 U.S.C. §362(a) to enable it to proceed to foreclose on its Deed of Trust referencing the subject property known as **9701 Fields Road Unit 1803, Gaithersburg, MD 20878**. Your rights may be affected. You should read these papers carefully and discuss them with your lawyer, if you have one in this bankruptcy case. (If you do not have a lawyer, you may wish to consult one.).

If you do not want the court to grant the motion for relief from the stay, or if you want the court to consider your views on the motion, then by **April 9, 2020** (parties served by mail may add three (3) additional days to the response deadline) you or your lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

| | |
|---|---|
| Michael T. Freeman | Office of the US Trustee |
| 1804 Staples Mill Road | 6305 Ivy Lane |
| Suite 200 | Suite 600 |
| Richmond, VA 23230 | Greenbelt, MD 20770 |

If you mail a copy rather than deliver your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the Court will receive it by the date stated above.

The hearing is scheduled for **May 18, 2020 at 2:00PM,** in the United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane Suite 300, Greenbelt, MD 20770, Courtroom 3-D.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE SERVED:  March 26, 2020

By: **/s/ MICHAEL T. FREEMAN**
John E. Driscoll, Esquire, Bar No. 17161
Michael T. Freeman, Esquire, Bar No. 19131
Daniel J. Pesachowitz, Esquire, Bar No. 14906
Nisha R. Patel, Esquire, Bar No. 20997
Samuel I. White, P.C.
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
Tel: (804) 290-4290
Fax: (804) 290-4298
mfreeman@siwpc.com

CERTIFICATE OF SERVICE

I certify that on March 26, 2020, the foregoing Notice of Motion was served via CM/ECF on the Office of the US Trustee, and John Douglas Burns, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Toufic Salim Melki, Debtor, 1014 Willow Leaf Way, Rockville, MD 20854, and to the 20 largest unsecured creditors on the Debtor's mailing matrix, as listed on the attached mailing list.

**/s/ MICHAEL T. FREEMAN**
Michael T. Freeman, Esquire
Samuel I. White, P. C.

**Fill in this information to identify the case:**

Debtor name ___Toufic Salim Melki___

United States Bankruptcy Court for the: _____ District of Maryland
                                                              (State)

Case number ___19-15265___

❑ Check if this is an
   amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Cynthia Melki<br>129 Gibbs Street<br>Apt 207Rockville, MD 20852 | | | | | | $807,758.00 |
| 2 | United Bank<br>P.O. Box 2373<br>Charleston, WV 25328 | | Business Debt -personal guarantee regarding mortgage on 15001 Dufeif Mill Rd. Gaithersburg, MD 20878 Montgomery County 2.7 acres | | | | $609,286.70 |
| 3 | O'Reilly & Mark, P.C.<br>12505 Park Potomac Ave.,<br>6thFloor.<br>Potomac, MD 20854 | | Legal services | | | | $83,198.00 |
| 4 | Bank of America<br>P.O. Box 15019<br>Wilmington, DE 19886-5019 | | | | | | $81,000.00 |
| 5 | Jean El Khoury, Esq.<br>Jbeil St<br>Elie Kouba,<br>1st Fl<br>Lourd, Lebanon | | Legal services | | | | $75,000.00 |
| 6 | Theodore Matta, Esq.<br>Boulevard Center<br>2nd Fl, Facing Palace of Justice<br>Tripoli Lebanon | | | | | | $45,000.00 |
| 7 | Susan Rubin<br>50 West Montgomery Ave.,<br>Ste.105<br>Rockville, MD 20850 | | Divorce attorney | | | | $30,000.00 |
| 8 | Salah Gholmieh<br>Main Road<br>Chtoura<br>Bekaa Valley  Lebanon | | | | | | $27,550.00 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Citibusiness P.O. Box 769018 San Antonio, TX 78245 | | Business debt | | | | $25,051.00 |
| 10 | Flury And Associates Inc 629 WOOD LOT TRAIL RD Annapolis, MD 21401 | | | | | | $25,000.00 |
| 11 | Saba Armani 50 Vermon St., #2 Pawtucket, RI 02860 | | | | | | $25,000.00 |
| 12 | Costo Citibank P.O. Box 6500 Sioux Falls, SD 57117 | | | | | | $23,074.00 |
| 13 | Citi Card P.O. Box 70166 Philadelphia, PA 19176-0166 | | | | | | $21,206.00 |
| 14 | J. Alberto Martinez, M.D. 11300 Rockville Pike, #1202Rockville, MD 20852 | | | | | | $20,000.00 |
| 15 | Dembo Jones, P.C. 6010 Executive Blvd.  Ste. 900Rockville, MD 20852 | | Services | | | | $15,971.75 |
| 16 | Paley Rothman 4800 Hampden Lane, 6th Fl.Bethesda, MD 20814 | | Services | | | | $1,000.00 |
| 17 | Deposition Services 12321 Middlebrook Rd., Ste. 210 Germantown, MD 20874-1518 | | Services | | | | $0.00 |
| 18 | BL Bank SAL Kabbara St. Tripoli Lebanon | | LOC | | | | $0.00 |
| 19 | | | | | | | |
| 20 | | | | | | | |



MIN:



# ORIGINAL

## NOTE

| June 21, 2013 | GAITHERSBURG | Maryland |
|---|---|---|
| [Date] | [City] | [State] |

**9701 FIELDS ROAD, Unit 1803**
**GAITHERSBURG, MD 20878**

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$124,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **GEORGE MASON MORTGAGE, LLC, a VIRGINIA LIMITED LIABILITY COMPANY**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.3750**%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **August 01, 2013** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 01, 2023** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **4100 MONUMENT CORNER DRIVE #100, FAIRFAX, Virginia 22030**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $**1,218.94** .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01

MULTISTATE
ITEM 1646L1 (081909)

GreatDocs®
(Page 1 of 3)

Represents Redacted Information

5. **LOAN CHARGES**

    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A)  Late Charge for Overdue Payments**

    If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B)  Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C)  Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D)  No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E)  Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Toufic S Melki by Cynthia M his Attorney_ (Seal)
**TOUFIC S. MELKI BY CYNTHIA MELKI his**          -Borrower
**attorney-in-fact**

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF U.S. BANK, N.A.
WITHOUT RECOURSE:
GEORGE MASON MORTGAGE, LLC,
A VIRGINIA LIMITED LIABILITY COMPANY

BY _____
ELIZABETH ALLEN,
SR. VICE PRESIDENT

[Sign Original Only]

Pay to the order of

_____
Without Recourse
U.S. Bank National Association

_____
Teresa Bulver
Vice President

**MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3200 1/01

MULTISTATE
ITEM 1646L3 (081909)

GreatDocs®
(Page 3 of 3)

**Exhibit B**

After Recording Return To:
George Mason Mortgage, LLC
4100 Monument Corner Drive
Farfax, VA 22030

**MONTGOMERY COUNTY, MD**

APPROVED BY *Kam*

**JUN 2 8 2013**

$ 0 RECORDATION TAX PAID
$ NA TRANSFER TAX PAID

AFTER RECORDING,
RETURN TO:
Village Settlements, Inc.
177 Kentlands Boulevard, Suite 200
Gaithersburg, MD 20878

Tax I.D. _____
Title Insurer:
First American Title Insurance Company

———————— [Space Above This Line For Recording Data] ————————

# PURCHASE MONEY DEED OF TRUST

**MIN** _____

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated **June 21, 2013**                    , together with all Riders to this document.

```
IMP FD SURE        40.00
RECORDING FEE      75.00
TOTAL             115.00
Rest MO06   Rcpt $ 81285
LEK      AV    Blk $ 579
Jul 01, 2013      12:27 PM
```

**(B)** "**Borrower**" is **TOUFIC S. MELKI AND CYNTHIA MELKI, HUSBAND AND WIFE**

Borrower is the trustor under this Security Instrument.

**(C)** "**Lender**" is **GEORGE MASON MORTGAGE, LLC**
Lender is a **VIRGINIA LIMITED LIABILITY COMPANY**                    organized and existing under
the laws of **Virginia**                    . Lender's address is
**4100 MONUMENT CORNER DRIVE #100, FAIRFAX, Virginia 22030**

**(D)** "**Trustee**" is **Robert C. Brower, Jr.**

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "**Note**" means the promissory note signed by Borrower and dated **June 21, 2013**                    . The Note states that Borrower owes Lender **One Hundred Twenty Four Thousand and no/100**
                    Dollars (U.S. **$124,000.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 01, 2023**                    .

MARYLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3021 1/01

MERS
ITEM 9714L1 (0609)

MONTGOMERY CO. MD
CLERK'S OFFICE
LORETTA E. KNIGHT
FILED
2013 JUL -1 PM 12:29

GreatDocs™

Represents Redacted Information

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MARYLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MERS
ITEM 9714L2 (0609)

Form 3021 1/01
GreatDocs™
*(Page 2 of 13)*

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     **COUNTY**      of
[Type of Recording Jurisdiction]

    **MONTGOMERY**    :
    [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of      **9701 FIELDS ROAD, Unit 1803**
    [Street]

    **GAITHERSBURG**    , Maryland    **20878**    ("Property Address"):
    [City]    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.**   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

**MARYLAND**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3021 1/01**
**MERS**    GreatDocs™
ITEM 9714L3 (0609)    *(Page 3 of 13)*

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

47142 065

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if

the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although

Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is

**MARYLAND**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

MERS

ITEM 9714L7 (0609)

**Form 3021 1/01**

GreatDocs™

*(Page 7 of 13)*

completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security

47142    069

Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable

---

Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any

Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.   Acceleration; Remedies.** **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of          5.0000% of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**Borrower, in accordance with Title 14, chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in the Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.**

**23.   Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.   Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25.   Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 13 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Toufic S Melki by Cynthia his_ _____ (Seal)
**TOUFIC S. MELKI BY CYNTHIA MELKI his** Attorney in Fact -Borrower
**attorney-in-fact**

_____ (Seal)
**CYNTHIA MELKI** -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

State of Maryland _Montgomery_                    County ss:

I Hereby Certify, That on this **21st** day of **June 2013** _County of Montgomery_ , before me, the subscriber, a Notary Public of the State of Maryland, in and for the _County of Montgomery_ , personally appeared **TOUFIC S. MELKI AND CYNTHIA MELKI, HUSBAND AND WIFE**

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

_____
Notary Public

My commission expires 9/20/14

NOTARY PUBLIC
JAMES E. SAVITZ
MONTGOMERY CO., MD

MARYLAND—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
MERS
ITEM 9714L12 (0609)

Form 3021 1/01
GreatDocs™
*(Page 12 of 13)*

State of Maryland   *Montgomery County*                    County ss:

I Hereby Certify, That on this   21   day of *June, 2013*   before me, the subscriber, a Notary Public of the State of Maryland, in and for the *county of Montgomery*, personally appeared *Ronald M. Hirschel*, the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth, that any loan proceeds advanced for the purchase of the Property at the closing transaction by the secured party, was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

_____ Notary Public



My commission expires: *9/20/14*

Complete the following as appropriate:

This is to certify that this instrument was prepared by or under the supervision of

an attorney admitted to the practice of law by the Court of Appeals by the State of Maryland

**I hereby certify that this instrument was prepared by one of the parties named in the instrument.**

_____
JAMES E. SAVITZ, ESQ

or

This is to certify that this instrument was prepared by

one of the parties named in this instrument.

_____

MARYLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 9714L13 (0609)

Form 3021 1/01
GreatDocs™
*(Page 13 of 13)*

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **21st** day of **June 2013** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **GEORGE MASON MORTGAGE, LLC, a VIRGINIA LIMITED LIABILITY COMPANY**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**9701 FIELDS ROAD, Unit 1803**
**GAITHERSBURG, MD 20878**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**WASHINGTON TOWER**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

**MULTISTATE CONDOMINIUM RIDER—Single Family—**
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                  **Form 3140 1/01**

**MULTISTATE**
ITEM ▮▮▮

GreatDocs®
*(Page 1 of 3)*
▮▮▮

47142   075

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.   Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  . Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.   Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.   Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**MULTISTATE CONDOMINIUM RIDER**—Single Family—
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                  **Form 3140 1/01**

**MULTISTATE**
**ITEM** 

**GreatDocs®**
*(Page 2 of 3)*

47142  076

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Condominium Rider.

_____ (Seal)        X _____ (Seal)
TOUFIC S. MELKI BY CYNTHIA       -Borrower          CYNTHIA MELKI                      -Borrower
MELKI his attorney-in-fact

_____ (Seal)        _____ (Seal)
                                 -Borrower                                             -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                             -Borrower

**MULTISTATE CONDOMINIUM RIDER—**Single Family—
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3140 1/01

**MULTISTATE**
ITEM ████                                                        **GreatDocs®**
████                                                             *(Page 3 of 3)*
                                                                 ████

47142 077

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **21st** day of **June 2013** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **GEORGE MASON MORTGAGE, LLC, a VIRGINIA LIMITED LIABILITY COMPANY** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**9701 FIELDS ROAD, Unit 1803
GAITHERSBURG, MD 20878**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.  USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.  SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.  RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.  BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3170 1/01

**MULTISTATE**
ITEM 1790L1
(042009)

GreatDocs®
*(Page 1 of 3)*

47142  078

**G.   ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.   ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3170 1/01

**MULTISTATE**
ITEM █████

GreatDocs®<br>*(Page 2 of 3)*

47142 079

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages
1 through 3 of this 1-4 Family Rider.

_Toufic S Melki by Cynthia M_ (Seal)    _+ Cynthia M_ (Seal)
**TOUFIC S. MELKI BY CYNTHIA MELKI** -Borrower    **CYNTHIA MELKI** -Borrower
**his attorney-in-fact** _his Attorney in fact_

_____ (Seal)    _____ (Seal)
                         -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                            -Borrower

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                                        **Form 3170 1/01**
**MULTISTATE**
ITEM █████                                              **GreatDocs®**
█████ █                                                 *(Page 3 of 3)*
                                                        ███████

47142   080

## Licensee Information or Affidavit Filed in Accordance with Real Property Article, § 3-104.1, Annotated Code of Maryland

### Licensee Information

Maryland Mortgage Lender Name: **GEORGE MASON MORTGAGE, LLC**

Maryland Mortgage Lender License Number: **N/A**

Maryland Mortgage Originator Name: **Jimmy Hummer**

Maryland Mortgage Originator License Number: **N/A**

### Affidavit in Lieu of Maryland Mortgage Lender or Maryland Mortgage Originator Licensee Information

(Check the box and complete the information for the applicable selection(s) below. As used herein, the term "Loan" means the mortgage loan secured by the security instrument attached hereto.)

**Affidavit of Individual Mortgage Originator:**

[X] I,    **Jimmy Hummer**                                                      [Insert name of affiant],
whose address is    **4100 MONUMENT CORNER DRIVE #100**
                    **FAIRFAX, Virginia  22030**
                                                                               [Insert address of affiant],
hereby affirm, under the penalties of perjury, that I am the individual who originated the Loan and, in connection therewith, I am exempt from the licensing requirements under Financial Institutions Article, §§ 11-601 through 11-618, Annotated Code of Maryland.

**Affidavit of Lender:**

[ ] I,                                                                          [Insert name of affiant],
hereby affirm, under the penalties of perjury, that I am the                    [Insert Title]
of                                                                  [Insert the name of the lender (the "Lender")
that made the Loan]. The Lender's address is

                                                                               [Insert address of Lender].
I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§ 11-501 through 11-524, Annotated Code of Maryland.

**Affidavit of Lender (on its own behalf and on behalf of its employee who originated the Loan):**

[ ] I,                                                                          [Insert name of affiant],
hereby affirm, under the penalties of perjury, that I am the                    [Insert Title]
of                                                                  [Insert the name of the lender (the "Lender")
that made the Loan]. The Lender's address is

                                                                               [Insert address of Lender].
I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§ 11-501 through 11-524, Annotated Code of Maryland. The employee of the Lender who originated the Loan is exempt from the licensing requirements under Financial Institutions Article, §§ 11-601 through 11-618, Annotated Code of Maryland.

47142    081

**Affidavit of Mortgage Broker (on behalf of its employee who originated the mortgage loan):**

☐ I,                                                                          [Insert name of affiant],
hereby affirm, under the penalties of perjury, that I am the                                      [Insert Title]
of                                                      [Insert the name of the broker (the "Broker")
that brokered the Loan]. The Broker's address is

                                                                          [Insert address of Broker].
I am duly authorized by the Broker to execute this affidavit. The employee of the Broker,
                        [Insert name of employee (the "Employee")], is the individual who originated the Loan.
The Employee, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article,
§§ 11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM, under the penalties of perjury and upon personal knowledge, that the contents of the foregoing paper
are true.

_____    Date

_____    Signature of Affiant (Signing on behalf of Lender)

_____    Print Name and Title of Affiant

_7-21-13_____    Date

_____    Signature of Affiant (Individual Mortgage Originator)

**Jimmy Hummer**_____    Print Name of Affiant

_____    Date

_____    Signature of Affiant (Signing on Behalf of Mortgage Broker)

_____    Print Name and Title of Affiant

47142   082

VILLAGE NO███████████
Toufic S. Melki / Cynthia Melki

## EXHIBIT "A" LEGAL DESCRIPTION

Unit No. 1803, in a Condominium subdivision styled "PLAT OF SUBDIVISION CONDOMINIUM OF WASHINGTONIAN TOWER", as per plat thereof recorded among thee land records of Montgomery County, Maryland in Condominium Plat Book 20 at Plat 2019.

BOOK: 57508 PAGE: 794

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 57508, p. 0364, MSA_CE63_57465. Date available 05/09/2019. Printed 01/21/2020.

Recording Requested
and Prepared By:
**U.S. Bank Home Mortgage**
**809 S. 60th Street, Suite 210**
**West Allis, WI 53214**
**(866) 787-9167**
**MARY J IRWIN**

And When Recorded Mail To:
**U.S. Bank Home Mortgage**
**809 S. 60th Street, Suite 210**
**West Allis, WI 53214**
**ATTN: MARY J IRWIN  S9S**



_____ Space above for Recorder's use _____
MERS MIN#: ▓▓▓▓▓▓▓ PHONE#: **(888) 679-6377**

### ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GEORGE MASON MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS,** C/O P.O BOX 2026, FLINT, MI 48501 2026, by these presents does convey, assign, transfer and set over to **U.S. BANK NATIONAL ASSOCIATION, 4801 FREDERICA STREET, OWENSBORO, KY 42301 0000,** the following described deed of trust, with all interest, all liens, and any rights due or to become due thereon.  Said Deed of Trust for **$124,000.00** is recorded in the State of MARYLAND, County of MONTGOMERY Official Records, dated JUNE 21, 2013 and recorded on JULY 01, 2013, as Instrument No. ---, in LIBER: 47142, at FOLIO: 061
Original Trustor/Grantor: **TOUFIC S. MELKI AND CYNTHIA MELKI, HUSBAND AND WIFE.** Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GEORGE MASON MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS.**   Legal Description: **UNIT NO. 1803, IN A CONDOMINIUM SUBDIVISION STYLED "PLAT OF SUBDIVISION CONDOMINIUM OF WASHINGTONIAN TOWER", AS PER PLAT THEREOF RECORDED AMONG THEE LAND RECORDS OF MONTGOMERY COUNTY, MARYLAND IN CONDOMINIUM PLAT BOOK 20 AT PLAT 2019..**
Property Address: **9701 FIELDS ROAD, UNIT 1803, GAITHERSBURG, MD 20878-0000.  KEY TAX# 01862831.**
Date: **APRIL 24, 2019**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GEORGE MASON MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**

By: *Stephanie Stelmack*
_____
**Stephanie Stelmack, Assistant Secretary**

| | | |
|---|---|---|
| State of | **WISCONSIN** | } |
| County of | **MILWAUKEE** | } ss. |

This instrument was acknowledged before me on **APRIL 24, 2019**, by  Stephanie Stelmack, as Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GEORGE MASON MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS.

*(Notary seal: NOTARY PUBLIC COURTNEY MARTIN STATE OF WISCONSIN)*

*Courtney Martin*
_____
(Notary Name): **Courtney Martin**

_____
(Title or Rank): **Notary**

My commission expires: **07/15/2021**

Represents Redacted Information

BOOK: 57508 PAGE: 0365

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 57508, p. 0365, MSA_CE63_57465. Date available 05/09/2019. Printed 01/21/2020.

```
LR - Assignment
Recording Fee    20.00
Name: MELKI
Ref:
LR - Assignment
Surcharge        40.00
=====================
SubTotal:        60.00
=====================
Total:           60.00
05/02/2019  11:59
                 CC15-CP
#12066926 CC0602 -
Montgomery
County/CC06.02.06 -
Register 06
```



## DOCUMENT VALIDATION PAGE
FOR CLERK'S USE ONLY
(EXCLUDED FROM PAGE COUNT FOR CERTIFIED COPY)

## BARBARA H. MEIKLEJOHN
Clerk of the Circuit Court for Montgomery County
50 Maryland Avenue
Rockville, Maryland 20850
Recording and Licensing
(240) 777-9470

BOOK 58658 PAGE 98

Recording Requested
and Prepared By:
**U.S. Bank Home Mortgage**
**809 S. 60th Street, Suite 210**
**West Allis, WI 53214**
**(866) 787-9167**
**MARY J IRWIN**

And When Recorded Mail To:
**U.S. Bank Home Mortgage**
**809 S. 60th Street, Suite 210**
**West Allis, WI 53214**
**ATTN: MARY J IRWIN JDD**



——————————— Space above for Recorder's use ———————————

### ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **U.S. BANK NATIONAL ASSOCIATION, 4801 FREDERICA STREET, OWENSBORO, KY 42301-0000**, by these presents does convey, assign, transfer and set over to: **BAYVIEW LOAN SERVICING, LLC, 4425 PONCE DE LEON BLVD, CORAL GABLES, FL 33146-0000**, the following described deed of trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for **$124,000.00** is recorded in the State of **MARYLAND**, County of **MONTGOMERY** Official Records, dated **JUNE 21, 2013** and recorded on **JULY 01, 2013**, as Instrument No. ---, in **LIBER: 47142**, at **FOLIO: 061**.
Original Trustor/Grantor: **TOUFIC S. MELKI AND CYNTHIA MELKI, HUSBAND AND WIFE**. Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GEORGE MASON MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**.   Legal Description: **UNIT NO. 1803, IN A CONDOMINIUM SUBDIVISION STYLED "PLAT OF SUBDIVISION CONDOMINIUM OF WASHINGTONIAN TOWER", AS PER PLAT THEREOF RECORDED AMONG THEE LAND RECORDS OF MONTGOMERY COUNTY, MARYLAND IN CONDOMINIUM PLAT BOOK 20 AT PLAT 2019.**.
Property Address: **9701 FIELDS ROAD, UNIT 1803, GAITHERSBURG, MD 20878-0000. KEY TAX# 01862831.**
Date: ____12-2-19____
**U.S. BANK NATIONAL ASSOCIATION**

By:  _Janice D Dela Cruz_____
    Janice D Dela Cruz, Officer

| State of | **WISCONSIN** | } |
|---|---|---|
| County of | **MILWAUKEE** | } ss. |

This instrument was acknowledged before me on ____12-2-19____, by **Janice D Dela Cruz**, as **Officer** of **U.S. BANK NATIONAL ASSOCIATION**.

> STEPHANIE STELMACK
> Notary Public
> State of Wisconsin

_Stephanie Stelmack_____
(Notary Name): **Stephanie Stelmack**

_____
(Title or Rank): **NOTARY**

My commission expires: **02/10/2022**

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 58658, p. 0098, MSA_CE63_58615. Date available 12/17/2019. Printed 01/21/2020.



MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 58658, p. 0099, MSA_CE63_58615. Date available 12/17/2019. Printed 01/21/2020.

```
LR - Assignment
Recording Fee    20.00
Name: MELKI
Ref:
LR - Assignment
Surcharge        40.00
========================
SubTotal:        60.00
========================
Total:           60.00
12/10/2019  10:27
                CC15-KM
#13105223 CC0602 -
Montgomery
County/CC06.02.06 -
Register 06
```



## DOCUMENT VALIDATION PAGE
### FOR CLERK'S USE ONLY
### (EXCLUDED FROM PAGE COUNT FOR CERTIFIED COPY)

## BARBARA H. MEIKLEJOHN
Clerk of the Circuit Court for Montgomery County
50 Maryland Avenue
Rockville, Maryland 20850
Recording and Licensing
(240) 777-9470

**Exhibit 1**

**Account History:** [ ██████████████████ ]

| Borrower: | MELKI,TOUFIC | Address: | 9701 FIELDS RD | Prin Bal: | $40,569.14 | Investor Type |
|---|---|---|---|---|---|---|
| Co-Borrower Name: | | City: | GAITHERSBURG | Add Prin Bal: | $0.00 | Investor #: |
| Due Date: | 08/01/2019 | State: | MD | Account Type: | First Mortgage - Conventional Without PMI | Investor Acco |
| Last Pmt Appd On: | | Zip Code: | 20878 | Total Pmt Amt: | $1,383.19 | PLS Client ID: |

### Request Criteria: Type = All, Date Range = From 03/23/2000 To 03/23/2020

Row Count = 35

| Transaction Description | Applied Dt | Due Date | Payment | Principal Applied | Principal Balance | 1st Unpaid Prin Bal | 2nd Unpaid Prin Bal | Interest Applied | Escrow Applied | Esc Bal | Adv Bal | Suspense Applied | Suspense Bal | Corp Adv Applied | L/C Amt Applied | Other Applied | Fee Amt Applied | Fee Cd | PRA Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Attorney Corp Advance | 02/13/2020 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $25.00 | | | | | |
| Misc Corporate Adv Disb | 02/05/2020 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $27.00 | | | | | |
| Attorney Corp Advance | 01/14/2020 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $5.00 | | | | | |
| Attorney Corp Advance | 01/10/2020 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $250.00 | | | | | |
| Statutory Exp Corp Adv | 01/09/2020 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $25.00 | | | | | |
| Attorney Corp Advance | 01/09/2020 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $50.00 | | | | | |
| Property Pres Corp Adv | 12/17/2019 | | | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $11.00 | | | | | |
| Restricted Corp Adv Adj | 12/13/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $15.00 | | | | | |
| Restricted Corp Adv Adj | 12/13/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $15.00 | | | | | |
| Restricted Corp Adv Adj | 12/13/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $15.00 | | | | | |
| Restricted Corp Adv Adj | 12/13/2019 | | $400.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $400.00 | | | | | |
| Restricted Corp Adv Adj | 12/13/2019 | | $200.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $200.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$15.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$15.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$15.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$400.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$400.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$15.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$15.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$15.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$400.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$400.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$200.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$200.00 | | | | | |
| Restricted Corp Adv Adj | 12/12/2019 | | -$200.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | -$200.00 | | | | | |
| Restricted Corp Adv | 12/06/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | $316.20 | | $8.84 | $15.00 | | | | | |

Represents Redacted Information

erated: 03/23/2020 9:33:16 PM

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adj | | | | | | | | | | | | | | | |
| Restricted Corp Adv Adj | 12/06/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | $316.20 | | $8.84 | $15.00 | | | |
| Restricted Corp Adv Adj | 12/06/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | $316.20 | | $8.84 | $15.00 | | | |
| Restricted Corp Adv Adj | 12/06/2019 | | $400.00 | | $40,569.14 | $40,569.14 | | | $316.20 | | $8.84 | $400.00 | | | |
| Restricted Corp Adv Adj | 12/06/2019 | | $200.00 | | $40,569.14 | $40,569.14 | | | $316.20 | | $8.84 | $200.00 | | | |
| Specified Funds | 12/04/2019 | 08/01/2019 | $8.84 | | $40,569.14 | $40,569.14 | | | $316.20 | $8.84 | $8.84 | | | | |
| Balance Adjustment | 12/04/2019 | 08/01/2019 | | | $40,569.14 | $40,569.14 | | | $316.20 | | | | | | |
| Restricted Corp Adv Adj | 12/04/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | | $15.00 | | | |
| Restricted Corp Adv Adj | 12/04/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | | $15.00 | | | |
| Restricted Corp Adv Adj | 12/04/2019 | | $15.00 | | $40,569.14 | $40,569.14 | | | | | | $15.00 | | | |
| Restricted Corp Adv Adj | 12/04/2019 | | $400.00 | | $40,569.14 | $40,569.14 | | | | | | $400.00 | | | |
| Restricted Corp Adv Adj | 12/04/2019 | | $200.00 | | $40,569.14 | $40,569.14 | | | | | | $200.00 | | | |
| Loan Set Up Date | 12/04/2019 | 08/01/2019 | | -$40,569.14 | $40,569.14 | $40,569.14 | | | | | | | | | |

## Previous Servicer History Details: ██████████████

| Borrower: | MELKI,TOUFIC | Address: | 9701 FIELDS RD | Prin Bal: | $40,569.14 | Investor Type: | FHMLC |
|---|---|---|---|---|---|---|---|
| Co-Borrower Name: | | City: | GAITHERSBURG | Add Prin Bal: | $0.00 | Investor #: | F40 |
| Due Date: | 08/01/2019 | State: | MD | Account Type: | First Mortgage - Conventional Without PMI | Investor Account #: | ████████ |
| Last Pmt Appd On: | | Zip Code: | 20878 | Total Pmt Amt: | $1,383.19 | PLS Client ID: | |

# History

Row Count = 88

| Transaction Type | Sequence Number | Segment Number | Transaction Code | Applied Date | Due Date | Hi Type | Effective Date | Transaction Amount | Principal Applied | Principal Balance | Interest Applied | Escrow Applied | Escrow Balance | Accident & Health Amt | Life Insurance Amt | Restricted Escrow Amt | Re |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 003 | | 43 | 12/02/2019 | 08/01/2019 | I | 12/02/2019 | $0.00 | $40,569.14 | $40,569.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 56 | 12/02/2019 | 08/01/2019 | I | 12/02/2019 | $0.00 | $40,569.14 | $40,569.14 | $0.00 | $316.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 68 | 12/02/2019 | 08/01/2019 | I | 12/02/2019 | $0.00 | $0.00 | $40,569.14 | $0.00 | -$334.45 | -$316.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 60 | 11/29/2019 | 08/01/2019 | I | 11/29/2019 | $18.25 | $0.00 | $40,569.14 | $0.00 | $18.25 | -$316.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 01 | 11/29/2019 | 11/29/2019 | I | 11/29/2019 | $60.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 31 | 11/05/2019 | 11/05/2019 | I | 11/05/2019 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 31 | 10/09/2019 | 10/09/2019 | I | 10/09/2019 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 68 | 09/20/2019 | 07/01/2019 | I | 09/20/2019 | $0.00 | $0.00 | $40,569.14 | $0.00 | -$164.25 | -$334.45 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 09/20/2019 | 07/01/2019 | I | 09/20/2019 | $1,392.03 | $1,101.74 | $40,569.14 | $117.20 | $164.25 | -$334.45 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 31 | 09/06/2019 | 09/06/2019 | I | 09/06/2019 | $15.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 61 | 09/05/2019 | 07/01/2019 | I | 09/05/2019 | $498.70 | $0.00 | $41,670.88 | $0.00 | $498.70 | -$498.70 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3 | 001 | | 12 | 09/05/2019 | 09/01/2019 | I | 09/05/2019 | -$1,695.24 | $0.00 | $41,670.88 | $0.00 | -$1,695.24 | -$498.70 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 73 | 06/25/2019 | 06/01/2019 | I | 06/25/2019 | $0.00 | $1,098.65 | $41,670.88 | $120.29 | $164.25 | $1,196.54 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 06/25/2019 | 05/01/2019 | I | 06/25/2019 | $2,766.38 | $1,095.57 | $42,769.53 | $123.37 | $164.25 | $1,032.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3 | 001 | | 53 | 05/23/2019 | 06/01/2019 | I | 05/23/2019 | -$379.00 | $0.00 | $43,865.10 | $0.00 | -$379.00 | $868.04 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 002 | | 30 | 05/02/2019 | 05/02/2019 | I | 05/02/2019 | $200.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 30 | 05/02/2019 | 05/02/2019 | I | 05/02/2019 | $400.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 01 | 05/01/2019 | 05/01/2019 | I | 05/01/2019 | $5.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6 | 001 | | 01 | 04/24/2019 | 04/24/2019 | I | 04/24/2019 | $60.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 04/08/2019 | 05/01/2019 | I | 04/07/2019 | $150.00 | $150.00 | $43,865.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 04/08/2019 | 04/01/2019 | I | 04/07/2019 | $1,396.22 | $1,092.08 | $44,015.10 | $126.86 | $177.28 | $1,247.04 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 03/07/2019 | 04/01/2019 | I | 03/07/2019 | $150.00 | $150.00 | $45,107.18 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 03/07/2019 | 03/01/2019 | I | 03/07/2019 | $1,396.22 | $1,088.59 | $45,257.18 | $130.35 | $177.28 | $1,069.76 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 02/07/2019 | 03/01/2019 | I | 02/07/2019 | $150.00 | $150.00 | $46,345.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 02/07/2019 | 02/01/2019 | I | 02/07/2019 | $1,396.22 | $1,085.12 | $46,495.77 | $133.82 | $177.28 | $892.48 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 01/07/2019 | 02/01/2019 | I | 01/07/2019 | $150.00 | $150.00 | $47,580.89 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 01/07/2019 | 01/01/2019 | I | 01/07/2019 | $1,396.22 | $1,081.65 | $47,730.89 | $137.29 | $177.28 | $715.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 12/07/2018 | 01/01/2019 | I | 12/07/2018 | $150.00 | $150.00 | $48,812.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 12/07/2018 | 12/01/2018 | I | 12/07/2018 | $1,396.22 | $1,078.20 | $48,962.54 | $140.74 | $177.28 | $537.92 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 11/06/2018 | 12/01/2018 | I | 11/06/2018 | $150.00 | $150.00 | $50,040.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 11/06/2018 | 11/01/2018 | I | 11/06/2018 | $1,396.22 | $1,074.76 | $50,190.74 | $144.18 | $177.28 | $360.64 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 10/09/2018 | 11/01/2018 | I | 10/06/2018 | $150.00 | $150.00 | $51,265.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 10/09/2018 | 10/01/2018 | I | 10/06/2018 | $1,396.22 | $1,071.32 | $51,415.50 | $147.62 | $177.28 | $183.36 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 003 | | 75 | 09/06/2018 | 10/01/2018 | I | 09/06/2018 | $150.00 | $150.00 | $52,486.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 68 | 09/06/2018 | 09/01/2018 | I | 09/06/2018 | $0.00 | $0.00 | $52,636.82 | $0.00 | -$171.20 | $6.08 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 09/06/2018 | 09/01/2018 | I | 09/06/2018 | $1,396.22 | $1,067.90 | $52,636.82 | $151.04 | $177.28 | $6.08 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 61 | 09/05/2018 | 09/01/2018 | I | 09/05/2018 | $171.20 | $0.00 | $53,704.72 | $0.00 | $171.20 | -$171.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3 | 001 | | 12 | 09/05/2018 | 09/01/2018 | I | 09/05/2018 | -$1,698.14 | $0.00 | $53,704.72 | $0.00 | -$1,698.14 | -$171.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 08/06/2018 | 09/01/2018 | I | 08/06/2018 | $150.00 | $150.00 | $53,704.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 08/06/2018 | 08/01/2018 | I | 08/06/2018 | $1,396.22 | $1,064.48 | $53,854.72 | $154.46 | $177.28 | $1,526.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 07/06/2018 | 08/01/2018 | I | 07/06/2018 | $150.00 | $150.00 | $54,919.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 07/06/2018 | 07/01/2018 | I | 07/06/2018 | $1,396.22 | $1,061.07 | $55,069.20 | $157.87 | $177.28 | $1,349.66 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 06/06/2018 | 07/01/2018 | I | 06/06/2018 | $150.00 | $150.00 | $56,130.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 06/06/2018 | 06/01/2018 | I | 06/06/2018 | $1,396.22 | $1,057.68 | $56,280.27 | $161.26 | $177.28 | $1,172.38 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3 | 001 | | 53 | 05/23/2018 | 06/01/2018 | I | 05/23/2018 | -$379.00 | $0.00 | $57,337.95 | $0.00 | -$379.00 | $995.10 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 05/07/2018 | 06/01/2018 | I | 05/07/2018 | $150.00 | $150.00 | $57,337.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 05/07/2018 | 05/01/2018 | I | 05/07/2018 | $1,396.22 | $1,054.29 | $57,487.95 | $164.65 | $177.28 | $1,374.10 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 04/06/2018 | 05/01/2018 | I | 04/06/2018 | $150.00 | $150.00 | $58,542.24 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 04/06/2018 | 04/01/2018 | I | 04/06/2018 | $1,392.43 | $1,050.91 | $58,692.24 | $168.03 | $173.49 | $1,196.82 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 03/06/2018 | 04/01/2018 | I | 03/06/2018 | $150.00 | $150.00 | $59,743.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 03/06/2018 | 03/01/2018 | I | 03/06/2018 | $1,392.43 | $1,047.54 | $59,893.15 | $171.40 | $173.49 | $1,023.33 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 02/06/2018 | 03/01/2018 | I | 02/06/2018 | $150.00 | $150.00 | $60,940.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 02/06/2018 | 02/01/2018 | I | 02/06/2018 | $1,392.43 | $1,044.19 | $61,090.69 | $174.75 | $173.49 | $849.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | | 75 | 01/08/2018 | 02/01/2018 | I | 01/08/2018 | $150.00 | $150.00 | $62,134.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | | 73 | 01/08/2018 | 01/01/2018 | I | 01/08/2018 | $1,392.43 | $1,040.84 | $62,284.88 | $178.10 | $173.49 | $676.35 | $0.00 | $0.00 | $0.00 | $0.00 |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 002 | 75 | 12/06/2017 | 01/01/2018 | I | 12/06/2017 | $150.00 | $150.00 | $63,325.72 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 12/06/2017 | 12/01/2017 | I | 12/06/2017 | $1,392.43 | $1,037.50 | $63,475.72 | $181.44 | $173.49 | $502.86 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 11/06/2017 | 12/01/2017 | I | 11/06/2017 | $150.00 | $150.00 | $64,513.22 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 11/06/2017 | 11/01/2017 | I | 11/06/2017 | $1,392.43 | $1,034.17 | $64,663.22 | $184.77 | $173.49 | $329.37 | $0.00 | $0.00 | $0.00 |
| 1 | 003 | 75 | 10/06/2017 | 11/01/2017 | I | 10/06/2017 | $150.00 | $150.00 | $65,697.39 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 68 | 10/06/2017 | 10/01/2017 | I | 10/06/2017 | $0.00 | $0.00 | $65,847.39 | $0.00 | -$17.61 | $155.88 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 10/06/2017 | 10/01/2017 | I | 10/06/2017 | $1,392.43 | $1,030.84 | $65,847.39 | $188.10 | $173.49 | $155.88 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 61 | 09/18/2017 | 10/01/2017 | I | 09/18/2017 | $17.61 | | $66,878.23 | $0.00 | $17.61 | -$17.61 | $0.00 | $0.00 | $0.00 |
| 3 | 001 | 12 | 09/18/2017 | 09/01/2017 | I | 09/18/2017 | -$1,728.44 | $0.00 | $66,878.23 | $0.00 | -$1,728.44 | -$17.61 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 09/06/2017 | 10/01/2017 | I | 09/06/2017 | $150.00 | $150.00 | $66,878.23 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 09/06/2017 | 09/01/2017 | I | 09/06/2017 | $1,392.43 | $1,027.53 | $67,028.23 | $191.41 | $173.49 | $1,710.83 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 08/07/2017 | 09/01/2017 | I | 08/07/2017 | $150.00 | $150.00 | $68,055.76 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 08/07/2017 | 08/01/2017 | I | 08/07/2017 | $1,392.43 | $1,024.23 | $68,205.76 | $194.71 | $173.49 | $1,537.34 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 07/06/2017 | 08/01/2017 | I | 07/06/2017 | $150.00 | $150.00 | $69,229.99 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 07/06/2017 | 07/01/2017 | I | 07/06/2017 | $1,392.43 | $1,020.94 | $69,379.99 | $198.00 | $173.49 | $1,363.85 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 06/06/2017 | 07/01/2017 | I | 06/06/2017 | $150.00 | $150.00 | $70,400.93 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 06/06/2017 | 06/01/2017 | I | 06/06/2017 | $1,392.43 | $1,017.65 | $70,550.93 | $201.29 | $173.49 | $1,190.36 | $0.00 | $0.00 | $0.00 |
| 3 | 001 | 53 | 06/05/2017 | 06/01/2017 | I | 06/05/2017 | -$371.00 | $0.00 | $71,568.58 | $0.00 | -$371.00 | $1,016.87 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 05/08/2017 | 06/01/2017 | I | 05/08/2017 | $150.00 | $150.00 | $71,568.58 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 05/08/2017 | 05/01/2017 | I | 05/08/2017 | $1,392.43 | $1,014.38 | $71,718.58 | $204.56 | $173.49 | $1,387.87 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 04/06/2017 | 05/01/2017 | I | 04/06/2017 | $150.00 | $150.00 | $72,732.96 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 04/06/2017 | 04/01/2017 | I | 04/06/2017 | $1,388.01 | $1,011.11 | $72,882.96 | $207.83 | $169.07 | $1,214.38 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 03/27/2017 | 04/01/2017 | I | 03/27/2017 | $164.35 | $0.00 | $73,894.07 | $0.00 | $164.35 | $1,045.31 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 03/06/2017 | 04/01/2017 | I | 03/06/2017 | $150.00 | $150.00 | $73,894.07 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 03/06/2017 | 03/01/2017 | I | 03/06/2017 | $1,388.01 | $1,007.86 | $74,044.07 | $211.08 | $169.07 | $880.96 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 02/06/2017 | 03/01/2017 | I | 02/06/2017 | $150.00 | $150.00 | $75,051.93 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 02/06/2017 | 02/01/2017 | I | 02/06/2017 | $1,388.01 | $1,004.61 | $75,201.93 | $214.33 | $169.07 | $711.89 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 01/06/2017 | 02/01/2017 | I | 01/06/2017 | $150.00 | $150.00 | $76,206.54 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 01/06/2017 | 01/01/2017 | I | 01/06/2017 | $1,388.01 | $1,001.37 | $76,356.54 | $217.57 | $169.07 | $542.82 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 12/06/2016 | 01/01/2017 | I | 12/06/2016 | $150.00 | $150.00 | $77,357.91 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 12/06/2016 | 12/01/2016 | I | 12/06/2016 | $1,388.01 | $998.14 | $77,507.91 | $220.80 | $169.07 | $373.75 | $0.00 | $0.00 | $0.00 |
| 1 | 002 | 75 | 11/07/2016 | 12/01/2016 | I | 11/07/2016 | $150.00 | $150.00 | $78,506.05 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 |
| 1 | 001 | 73 | 11/07/2016 | 11/01/2016 | I | 11/07/2016 | $1,388.01 | $994.92 | $78,656.05 | $224.02 | $169.07 | $204.68 | $0.00 | $0.00 | $0.00 |

## Other Details

### Year To Date Amount Paid Detail

| | | | | | |
|---|---|---|---|---|---|
| First Principal Amount Paid: | $0.00 | Second Principal Amount Paid: | $0.00 | First Interest Paid: | $0.00 |
| Second Interest Paid: | | Escrow Amount Paid: | $0.00 | Fees Paid: | $0.00 |
| AH Insurance: | $0.00 | Life Insurance: | $0.00 | Suspense Amount: | $0.00 |
| Replacement Reserve Amount: | $0.00 | HUD Amount: | $0.00 | Miscellaneous Amount: | $0.00 |
| Recoverable Corporate Advance: | $0.00 | Late Charge Paid: | | Total Year To Date Amount: | $0.00 |
| Acquisition Date: | 12/02/2019 | Acquisition Sale ID: | F-28441-11 | | |

### Bill Cycle To Date Amount Paid Detail

| | | | | | |
|---|---|---|---|---|---|
| First Principal Amount Paid: | $0.00 | Second Principal Amount Paid: | $0.00 | First Interest Paid: | $0.00 |
| Second Interest Paid: | $0.00 | Escrow Amount Paid: | $0.00 | Fees Paid: | |
| AH Insurance: | $0.00 | Life Insurance: | $0.00 | Suspense Amount: | $0.00 |
| Replacement Reserve Amount: | $0.00 | HUD Amount: | $0.00 | Miscellaneous Amount: | $0.00 |
| Recoverable Corporate Advance: | $0.00 | Late Charge Paid: | | Total Bill Cycle To Date Amount: | $0.00 |
| Acquisition Date: | 12/02/2019 | Acquisition Sale ID: | F-28441-11 | | |

### Previous Servicer History End Dates

Row Count = 0

| End Date | Previous Servicer Name |
|---|---|
| No Data Available | |

### Beginning Date Balance Details

Row Count = 0

| Segment Number | Segment Start Date | Segment Principal Balance |
|---|---|---|
| No Data Available | | |



**Exhibit C**

**Real Property Data Search**

**Search Result for MONTGOMERY COUNTY**

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

**Special Tax Recapture:** None

**Account Identifier:**     **District - 09 Account Number -** ███████

### Owner Information

| Owner Name: | MELKI TOUFIC S<br>MELKI CYNTHIA | Use:<br>Principal<br>Residence: | RESIDENTIAL<br>CONDOMINIUM<br>NO |
|---|---|---|---|
| Mailing Address: | 8931 EDGEWOOD DR<br>GAITHERSBURG MD 20878-2733 | Deed Reference: | /47142/ 00057 |

### Location & Structure Information

| Premises Address: | 9701 FIELDS RD<br>GAITHERSBURG 20878-2733<br>CONDO UNIT: 1803 | Legal Description: | UN1803 WASHINGTONIAN TOWER |
|---|---|---|---|

| Map: | Grid: | Parcel: | Neighborhood: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|
| FS52 | 0000 | 0000 | 9630041.16 | 0041 | | | | 2018 | Plat Ref: | |

| Special Tax Areas: None | | Town: | None |
|---|---|---|---|
| | | Ad Valorem: | None |
| | | Tax Class: | 53 |

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1966 | 880 SF | | | 119 |

| Stories | Basement | Type | Exterior | Quality | Full/Half Bath | Garage | Last Notice of Major Improvements |
|---|---|---|---|---|---|---|---|
| | | CONDO HI RISE | / | | 1 full | | |

### Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | As of<br>01/01/2018 | As of<br>07/01/2019 | As of<br>07/01/2020 |
| Land: | 45,000 | 45,000 | | |
| Improvements | 105,000 | 105,000 | | |
| Total: | 150,000 | 150,000 | 150,000 | 150,000 |
| Preferential Land: | 0 | | | 0 |

### Transfer Information

| Seller: AFKHAMI ALI MOHAMMAD TR | Date: 07/01/2013 | Price: $165,000 |
|---|---|---|
| Type: ARMS LENGTH IMPROVED | Deed1: /47142/ 00057 | Deed2: |
| Seller: AMINZADEH, FATEMEH ZAHRA | Date: 06/26/2007 | Price: $0 |
| Type: NON-ARMS LENGTH OTHER | Deed1: /34485/ 00209 | Deed2: |
| Seller: EVANS, WILLIAM J & T M | Date: 03/24/2005 | Price: $210,000 |
| Type: ARMS LENGTH MULTIPLE | Deed1: /29512/ 00730 | Deed2: |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2019 | 07/01/2020 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

**Special Tax Recapture:** None

**Represents Redacted Information**

Homestead Application Information

**Homestead Application Status:** No Application

Homeowners' Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Application    **Date:**