DocuSign Envelope ID: 77D9F9C8-D358-4FB8-BAF6-CADA7B9E14B6



# REPRESENTATION AGREEMENT

(EXCLUSIVE AUTHORIZATION TO SELL OR EXCHANGE)

**THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY.**

The undersigned ("Seller") hereby employs Marcus & Millichap Real Estate Investment Services ("Agent") and grants to Agent, for a period of time (the "Term") commencing on March 16, 2020, and ending at midnight on June 12, 2020, and subject to extensions as set forth in paragraphs 15 and 17 below, the exclusive and irrevocable right and authority to sell that certain real property (the "Property") located in Virginia, and more particularly described as follows:

25055 Riding Plz. Unit #260<br>
Chantilly VA 20152<br>
Tax ID 164291430014

Broker represents it is authorized to do business in Virginia and are a licensed real estate agent and broker in Virginia.

If the Property described above consists of two or more separate legal parcels, Seller agrees to sell all or any combination of such parcels, and the term "Property" as used herein shall refer to any such combination.

Broker shall: (a) market the Property to real estate agents, brokers and prospective purchasers (b) accept delivery of, and present to Owner, offers and counteroffers to sell the Property; (c) assist the Owner in developing, communicating, negotiating, and presenting offers and counteroffers until an offer to sell, or a purchase agreement is signed, all contingencies are satisfied or waived, and the transaction is completed; (d) answer all of Owner's questions relating to the listing agreement, offers, counteroffers, notices and contingencies; and (e) provide prospective buyers access to the Property.

Seller agrees to accept an offer containing the following terms and conditions of sale:

1) **PURCHASE PRICE:** $799,000

2) **TITLE:** Seller represents and warrants to Agent that fee title to the Property is now vested in Retina One, LLC, that Seller and the individuals executing this Representation Agreement on behalf of Seller are duly authorized and empowered to execute this Representation Agreement and any subsequent purchase agreement; and that execution hereof shall not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

3) **COMMISSION:** In consideration of the brokerage services to be rendered by Agent, Seller agrees to pay to Agent a commission equal to seven percent (7%) of the purchase price of the Property upon the occurrence of any of the following events:

   a) The Property is sold, exchanged or otherwise conveyed during the Term, or any extension thereof, whether by Seller or by or through any other person or entity; or

   b) A sale, exchange or other conveyance of the Property is made within six (6) months after the expiration of the Term to a person or entity with whom Agent has negotiated, or to whose attention Agent has brought the Property, or who was introduced to Seller by Agent as a prospective purchaser (herein, "Prospective Purchaser"), provided that the name of any such person or entity has been submitted to Seller by delivery of a written offer to purchase the Property prior to expiration of the Term or by written notice within fifteen (15) calendar days after such expiration. With respect to a sale, exchange or other conveyance to any such person or entity, Agent shall conclusively be deemed to be the procuring cause. The term "Prospective Purchaser" shall include that person or entity to whose attention Agent has brought the Property, as well as any partnership, joint venture, corporation, trust or other similar entity which that person or entity represents or in which it holds an ownership or beneficial interest.

Except as otherwise set forth herein, this commission shall be paid at the closing, and Agent shall be entitled to make demand of any escrow holder or closing attorney for payment from the proceeds of sale. Seller and Agent agree that if completion of a sale of the Property pursuant to a duly executed purchase agreement is prevented by default of the Buyer, Seller shall be obligated to pay to Agent only an amount equal to one-half of any damages or ary comper (including

liquidated damages) collected from said Buyer by suit or otherwise as a consequence of Buyer's default, if and when such damages or other monetary compensation are collected; provided, however, that the amount due Agent shall not exceed the brokerage commission set forth above. The term "Property" shall include any interest therein or in its ownership.

Anything in this Agreement to the contrary notwithstanding, Agent/Broker are not entitled to any commission if the Property is sold at any time by Seller to the current tenant of the Property, Arthritis & Sports Orthopaedics, P.C., or any of its officers, directors, employees or agents, which Seller is entitled to do during the Term of this Agreement notwithstanding anything to the contrary herein.  However, if Seller, at its sole discretion, requests in writing that the Agent help with expediting the sale to its tenant, Agent will be entitled to a commission equal to one percent (1%) of the Purchase Price of the Property,

4) INSPECTION OF PROPERTY: Seller agrees that Agent and its representatives shall have the right to enter upon and inspect the interior and exterior of the Property with prospective purchasers at all reasonable times upon prior notice to Seller.

5) SELLER'S REPRESENTATIONS AND WARRANTIES:

   a) **Records, financial data and marketing assistance**: Seller agrees to furnish, to certify as true and correct, and to make available to Agent and prospective buyers all financial data, rent statements, leases and other operating records of the Property, and to provide Agent with such assistance as Agent may reasonably request in marketing the Property. Seller agrees to refer promptly to Agent all inquiries of anyone interested in the Property.

   b) **Indemnification**: Seller agrees to indemnify and hold Agent harmless from any and all liability, damages, losses, causes of action, or other claims by third parties (including attorneys' fees and other defense costs) arising from or asserted in connection with any knowing incomplete or inaccurate information provided by Seller, or any material information concerning the Property which Seller is aware of and has failed to disclose.

6) SCOPE OF AGENT'S AUTHORITY AND RESPONSIBILITY: Agent shall assist Seller in marketing the Property and in negotiating the terms and conditions of sale with any prospective purchasers. Agent shall not, however, have authority to bind Seller to any contract or purchase agreement. Agent shall not be responsible for performing any due diligence or other investigation of the Property, or for providing professional advice with respect to any legal, tax, engineering, construction or hazardous materials issues. Except for confidential information regarding Seller's business or financial condition and the negotiation of the terms of a purchase agreement between Seller and a prospective purchaser, Seller and Agent agree that their relationship is at arm's length.

7) LIMITATION OF LIABILITY: Except for Agent's gross negligence or willful misconduct, Agent's liability for any breach or negligence in its performance of this Agreement shall be limited to the greater of $50,000 or the amount of compensation actually received by Agent in any transaction hereunder.

8) AFFILIATED BROKERS/DUAL AGENCY: Agent is affiliated with other brokerage companies in other states. Agent shall disseminate information about the Property to such affiliated brokers, inviting the submission of offers on the Property. Seller authorizes Agent and any affiliated broker to represent any prospective buyer in the acquisition of the Property, and to submit offers on behalf of such buyers. Seller understands that this authorization may result in Agent's representing both Seller and a prospective buyer, and Seller hereby authorizes and consents to such dual representation.

9) AGENT PARTICIPATION WITH COOPERATING BROKERS: Marcus & Millichap is open to cooperating with qualified and licensed brokers not affiliated with Agent to incentivize the brokerage community to promote Property to its network of buyers and ensure complete market coverage. On rare occasion i) a buyer procured through Agent's marketing efforts may choose to be represented by a broker not affiliated with Marcus & Millichap, ii) a broker not affiliated with Marcus & Millichap may attempt to insert itself into an ongoing negotiation with a buyer and seek compensation from Seller. In these instances, and at Agent's sole discretion, Marcus & Millichap will require buyer to compensate said broker at buyer's sole expense. Agent reserves the right to determine what co-op fee, if any, has been earned by any buyer's agent.

Seller agrees that, in the event any broker other than Agent or a broker affiliated with Agent is involved in the disposition of the property, Agent shall have no liability to Seller for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Agent.

10) ARBITRATION OF DISPUTES: Any controversy or claim arising out of or r̲̲̲̲̲̲̲̲s Agreement, ̲̲̲̲̲̲̲breach thereof, shall be settled by final binding arbitration administered before a sin̲̲̲̲̲̲̲̲ by the Ameri̲̲̲̲̲̲̲itration

    Association (AAA) under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Unless the parties agree otherwise, the arbitration shall be governed by the AAA's Expedited Procedures. The parties also agree that the AAA's Optional Rules for Emergency Measures of Protection shall apply to the proceedings. The AAA's fees and charges shall be paid equally by the parties as they become due, provided that the prevailing party shall be awarded its costs and expenses associated with any dispute concerning this Agreement, including reasonable attorneys' fees from the non-prevailing party. If either party fails to pay its share of the AAA's fees or expenses as they become due, and such failure is not cured within five days of receiving written notice thereof from the other party or the AAA, such party shall be deemed to have defaulted and the arbitrator shall enter final judgment in favor of the non-defaulting party.

11) ATTORNEYS' FEES: In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its costs and expenses, including costs and expenses of arbitration, court costs and expenses and costs and expenses incurred on appeal, and reasonable attorneys' fees incurred in any dispute through arbitration and appeal of and final judgment in addition to any other relief to which such party may be entitled.

12) EXCHANGE: As used in this Agreement, the terms "sale", "sell" or "purchase" shall be understood to include an exchange of the Property. In the event of an exchange, if no purchase price is identified, the commission described in Paragraph 3 above shall be calculated as a percentage of the exchange value of the Property. Agent is hereby authorized to represent all parties to any such exchange transaction and to collect compensation or commission from them, provided there is full disclosure to all principals of such agency.

13) ADDENDA: Any addendum attached hereto, and either signed or initialed by the parties shall be deemed a part hereof. This Agreement, including addenda, if any, expresses the entire agreement of the parties and supersedes any and all previous agreements between the parties with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge its terms, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if it is in writing and signed by the party to be charged.

14) GOVERNING LAW: This Agreement shall be governed by and construed in accordance with the laws of the Virginia.

15) INDEMNIFICATION:. Broker and Agent agree to defend, indemnify and hold harmless Seller from and against all liabilities, claims, suits, damages, judgments, costs and expenses of whatever nature, including reasonable attorneys' fees, which are caused by Broker's or Agent's negligent act or omission, or the act or omission of any of Broker's employees or agents. In all actions in which Seller has the right to be indemnified hereunder, Seller shall have the right to determine the conduct and defense for such legal proceeding or investigation including, without limitation, the right to compromise, settle, or defend any such action.

16) EXTENSION OF TERM: If an agreement or letter of intent for the sale of the Property is executed by all necessary parties, and if said agreement or letter of intent is revoked, rescinded or otherwise terminated, and/or the transaction is subsequently canceled, the Term shall be extended by the number of calendar days during which the sale agreement or letter of intent was in effect. The maximum extension permitted hereunder shall be the number of days remaining on the Term from the date the sale agreement or letter of intent was executed. Notwithstanding the foregoing, this Representation Agreement shall expire in all cases no later than one (1) year after the original termination date stated above. The purpose of this extension provision is to allow agent the opportunity to expose the Property to the marketplace for the full period of time contemplated by this Agreement.

17) SEVERABILITY: In the event any term or provision of this Agreement shall be held illegal, unenforceable or inoperative as a matter of law, the remaining terms and provisions of this Agreement shall not be affected thereby and shall remain in full force and effect.

18) CONTINUATION OF TERM: At the end of the Term, this Representation Agreement shall extend on a month-to-month or other basis with the prior written consent of Seller. During a month-to-month Continuation Term, if consented to by Seller, this Agreement may be terminated by either party upon written notice of termination with thirty (30) days advanced notice. In the event of such a termination, paragraph 3(d) shall remain in full force and effect.

19) CONFIDENTIALITY. Broker and Agent acknowledge that through its provision of services to Seller, Broker and Agent may have access to certain information, documents and records of a confidential and proprietary nature, including but not

limited to leases and other non-public information.  Broker and Agent agree that it will not directly or indirectly use, in any unauthorized manner, or disclose to any third parties, any written or oral information of a confidential or proprietary nature pertaining to Seller.  The obligations contained in this paragraph shall extend to Broker's employees, agents, or other persons or entities acting on behalf of or with Broker who may have access to such confidential or proprietary information, documents and records and Broker shall inform its employees of their obligation to maintain the confidentiality of this material.

Broker's and Agent's obligations under this Paragraph shall survive the expiration of this Agreement.

20) ASSIGNMENT.  Neither party's rights or obligations under this Agreement shall be assigned by either party, or assigned involuntarily or by operation of law, without the written consent of the other party.

21) COUNTERPARTS.  This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

The undersigned Seller and Agent agree to the terms and conditions set forth in this Representation Agreement, and Seller acknowledges receipt of an executed copy hereof.

SELLER: _____ (DocuSigned by: 800B2864B1B34C5...)
Retina One, LLC

ADDRESS: 1014 willow leaf way Potomac MD 20854

DATE: 3/13/2020 | 14:06:45 PDT

TELEPHONE: 703-395-8683

SELLER: _____

ADDRESS: _____

DATE: _____

TELEPHONE: _____

Agents accepts and agrees to the foregoing.

AGENT: MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES

BY: _____ (DocuSigned by: Lorenzo Wooten, EBD630CA8DDC43E...)
Lorenzo Wooten

ADDRESS: 7200 Wisconsin Ave, Suite 1101
Bethesda, MD 20814

DATE: 3/13/2020 | 10:50:02 PDT

TELEPHONE: (202) 536-3700

SELLER UNDERSTANDS AND ACKNOWLEDGES THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM SELLER'S ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL.

BROKER: **MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES**

BY: _____   ADDRESS: 7200 Wisconsin Ave, Suite 1101
     Bryn Merrey                                                             Bethesda, MD 20814

DATE: _____ TELEPHONE: (202) 536-3700

SELLER UNDERSTANDS AND ACKNOWLEDGES THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM SELLER'S ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL.