# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In Re: ) | |
| ) | |
| TOUFIC SALIM MELKI ) | Case No: 19-15265 |
| ) | (Chapter 11) |
| Debtor ) | |
| ) | |

## STATUS REPORT/AGENDA

TOUFIC SALIM MELKI (the "Debtor"), by and through undersigned counsel, John D. Burns, Esquire, and The Burns Law Firm, LLC hereby files this Status Report and Agenda, and states as follows:

## GENERAL PROCEDURAL STATUS:

This Chapter 11 case - a wandering spin-off from a rancorous domestic relations dispute from Montgomery County of epic proportions - has been quelled by the efforts of undersigned counsel with the indispensible and active constructive engagement of Chris Gowen, Esquire[1] over the past 5 or so months to quieter and more tranquil waters.

There were months of antecedent wrangling and unproductive litigation from the petition date through December, 2019 when the undersigned was engaged replacing prior counsel. Mr. Gowen assumed the helm of the bankruptcy case from Jeffrey Sherman, Esquire, who withdrew like Ms. Nesse from the case.

Trial was set on the Motion to Appoint Trustee for late January, 2020. On January 21, 2020 and January 24, 2020, the Debtor and Cynthia Samaha ("Ms. Samaha") entered into a long and intensive two day in court settlement session which produced a detailed, comprehensive and well balanced and fully integrated settlement agreement (the "Settlement Agreement") that was

---

[1] Mr. Gowen serves as counsel to Ms. Samaha in the Circuit Court and now in the Bankruptcy Court.

ultimately submitted to and approved by both the Circuit Court for Montgomery County (on domestic issues[2]) and the Bankruptcy Court (on financial issues). On February 2, 2020, the Debtor filed a Motion for Approval of the Settlement Agreement under Fed. R. Bankr. P. 9019(a), and on March 9, 2020 that Motion for Approval and the Settlement Agreement were granted and approved respectively by the Bankruptcy Court.

Anxious that prior history not repeat itself in a domestic case gone astray after reaching interim success, on February 2, 2020 the undersigned filed on behalf of the Debtor a status report updated and detailed with exhibits and a Request for Hearing on the Status Agenda. *See*, Dkts 177, 178.  Therein with specificity but bluntness, the undersigned detailed steps that the Debtor needed to undertake to obtain a rapidly confirmable plan of reorganization given the existence of significant administrative expenses, priority tax claims, a few secured mortgage claims and a plethora of unsecured claims, mostly arising from family or a long list of prior lawyers found in the schedules that the Debtor had chosen not to pay after utilizing their services.

The Debtor further met with the United States Trustee and the case analyst to ensure that the Debtor was tracking all of his income through the DIP account, and that MORs were accurate. These had to be corrected, and the accountant performed that task to the satisfaction of the United States Trustee, as amended MORs were filed and the Debtor was thenceforth again admonished by Ms. Kohen to direct all professional earnings and expenses through the DIP account, rather than indirect personal expensing through one or more of his business entities.

MORs and 426 filings are made timely now without delays, subject obviously to a brief hiatus due to COVID-19 which was addressed by motion to extend time on the MOR

---

[2] As the Bankruptcy Court is aware, the Debtor and Ms. Samaha remain in appellate litigation in the Court of Special Appeals on Constitutional and related issues over whether the Circuit Court had jurisdiction or propriety to enter a civil divorce on a religious Orthodox Christian marriage from Lebanon. That matter will proceed forward as outlined

previously due.

The matter remains substantially as it was poised for hearing in February, 2020 in that the Debtor must arrive at a Plan of Reorganization as an above median nationally renowned optical surgeon, that funds substantial administrative expense claims in full for (i) the undersigned as DIP counsel; (ii) McNamee, Hosea as prior DIP counsel; (iii) Agnelo Gonzalves as accountant; (iv) Jack Quinn, Esquire as appellate counsel on the rather unwonted and costly issue in the Court of Special Appeals of whether the Debtor can assert Ms. Samaha is still married despite the parties civil divorce in Montgomery County and the now approved Settlement Agreement; (v) Broker in connection with the sale of South Riding property and other properties as may be necessary to fund the Plan; (vi) substantial priority IRS and Comptroller claims; and (vii) a litany of unsecured claims, many of which constitute insiders and family members. Many of these numbers are surveyed in greatly detail in the prior Status Report and attachments.  [Dkt. 177]

One significant variant from the posture of the case in February, 2020 is the impact of COVID-19 on the frequency of Debtor's eye surgeries and the ability to obtain an expedient sale of the South Riding Property and other issues that may be necessary in immediate prospect to fund the Chapter 11 Plan.  The fall out in commercial financing and buyers that now exists for condo units presents pragmatic difficulties as the Debtor needs to sell relatively promptly.  An extension on the August 1, 2020 closing and payment date with Ms. Samaha under the Settlement Agreement may need to move forward by Debtor's putative Motion for Suspension of August 1, 2020 deadline to November 30, 2020 for impossibility/impracticability to permit more time to have South Riding sold and to marshal other assets to ensure there is no default to Ms. Samaha and no failure to be able to propose and implement a feasible Chapter 11 plan and reorganization with reasonable

---

in the Settlement Agreement to a final Order for whatever purposes the parties hope to achieve from that.

dispatch and promptness. Discussions are ongoing with Mr. Gowen concerning these options and have been since March, 2020. There have been frolics and detours from the Debtor on payment of several mortgages, when loan modifications were accepted without authority from the Court or even contemporaneous advisement to counsel. These are subject to filing and *nunc pro tunc* approval and counsel believes Ms. Samaha will benefit from such modifications, thus there is likely forthcoming consent to same.

With these caveats and changes from the prior Status Report and Agenda filed on February 2, 2020, the Debtor incorporates the prior filing and identifies further variances as set forth below.

Whether the Bankruptcy Court retains the May 28, 2020 status conference or continues it to mid-June, 2020 in order to give the parties a chance to make their filings herein such as the Motion to Suspend August 1, 2020 deadline if necessary and firm up a few open matters is up to the Court. What the undersigned firmly believes is that this case should not be given any significant leave to wander before it is put on a scheduling track, because there are just too many things that can go awry in such a case if left unattended or without deadlines for an extended period. This is not an ordinary Chapter 11 case, but a removed domestic litigation which at its best poses uncertainties even after settlement is reached.

A copy of the Notice of Hearing [Dkt. 204] is attached hereto concerning the status report and agenda issues as ***Exhibit 1***.

**STATUS REPORT/AGENDA:**

The Debtor avers in furtherance of the Order as follows:

1) *Preliminary outline of the plan*: The Debtor's plan construct arrived at in connection with the February 2, 2020 submission [Dkt. 177] remains substantially viable, and is

incorporated hereto.  There is going to be a need for the Debtor to either sell further properties or raise family monies to fund his putative plan given the extensive administrative expenses the Debtor has caused.  Further, the Debtor must fund the tax debts that must be satisfied in a reasonably short period or within statute, as well as a meaningful dividend to the allowed unsecured claims herein.

2) *Date for Filing a Plan*:  The Debtor is likely able to file a Plan b**y August 1, 2020** to provide time for the remaining uncertainties to be resolved in his exit strategy from this Chapter 11 matter.  The undersigned will commit to file a Plan sooner, because he believes that August 1, 2020 is an outside date; however, there is the reality that matters will take some time here to resolve on the sales at issue and the timing of funds to cause a satisfaction of administrative expenses. The Debtor has directed counsel to explore often granted more liberal timing restrictions from the IRS and Comptroller that deviate from the 5 years from petition date.

3) *Reducing or Increasing the Periods Set out in 11 U.S.C. § 1121(b):*  The Debtor does not believe that any amendment of the periods provided for under 11 U.S.C. § 1121(b) is needed.  Putting aside that the period has passed or shall pass, and this waiver was intentional, any plan and disclosure statement submitted by the Debtor will necessarily require compliance with the spirit of *Bank of America National Trust Assn. v. 203 North La Salle Street Partnership*, 526 U.S. 434 (1999) concerning the opportunity for at least competing plans.  This is because an open bidding option within the Debtor's plan is not likely realistic. Exclusivity post 1999 is largely a theoretical concept.

4) *Setting a Budget for Professionals*:  The Debtor believes that an adequate budget exists in a non-litigation scenario for counsel in the current retainers which were approved in the retention process and if the estate is going to be required to commence litigation to expedite

matters rather than allowing the case to mature through negotiations counsel should be paid his hourly rate through supplemental retainers and as may be approved by fee application.

        5)    *Conversion of the case*: There is no benefit to a converted case herein to any party in interest as any sale proceeds would be dwarfed by yet another unnecessary layer of trustee commissions, a new attorney's firm and fees and other professionals such as accountants. The Debtor has substantial resources both directly and indirectly through family as has been borne out from the history of this case. Although a Chapter 11 Trustee was explored, it was *pro tempore* denied following the approval of the Settlement Agreement. To the extent the Debtor progresses apace as he should in his reorganization, the Debtor does not believe any cause exists to revisit the appointment of a Chapter 11 Trustee. Given the prior proceedings impacting the Debtor, which included a brief period of contempt incarceration in Montgomery County, the Debtor adequately understands the authority that this Bankruptcy Court has to aid the Debtor's reorganization or to remove the Debtor from that equation.

        RESPECTFULLY SUBMITTED,
/s/ John D. Burns
John D. Burns, Esquire (#22777)
The Burns LawFirm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland  20770
(301) 441-8780
info@burnsbankruptcyfirm.com
Counsel for the Debtor

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on this 19th day of May, 2020, a copy of the foregoing Status Agenda and a copy of the Notice of Hearing was served, by first class mail postage prepaid, or by ECF and those Parties on the Matrix unless otherwise specified upon the following parties in interest:

**VIA ECF:**
United States Trustee
6305 Ivy Lane; STE 600
Greenbelt, MD 20770

Jeffrey M. Orenstein jorenstein@wolawgroup.com

Jeffrey M. Sherman jeffreymsherman@gmail.com,
elmoyer99@gmail.com

US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV

cgowen@gowensilva.com

**VIA EMAIL:**
Dr. Toufic Melki
1014 Willow Leaf Way
Potomac, MD  20854

**VIA MAIL:**
(matrix of creditors)

                                                          /s/ John D. Burns
                                                          John D. Burns, Esquire