**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re: ) | |
| ) | |
| TOUFIC SALIM MELKI ) | Case No: 19-15265 |
| ) | (Chapter 11) |
| Debtor ) | |
| ) | |

## OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

THE BURNS LAWFIRM, LLC (the "Firm"), by and through undersigned counsel, John D. Burns, Esquire, and The Burns Law Firm, LLC, an administrative expense claimant and a party in interest pursuant to 11 U.S.C. § 1109(b), hereby files this Objection to the Debtor's Disclosure Statement, and states in support as follows:

### FACTUAL BACKGROUND:

TOUFIC SALIM MELKI (the "Debtor") filed a voluntary Chapter 11 case on April 18, 2019. The Debtor is and remains at present a debtor in possession pursuant to 11 U.S.C. § 1106-1108 and may be in possession of property of the estate in this Chapter 11 case.

The Firm was retained on December 5, 2019 following several prior consultations where the Debtor was dissatisfied with his prior bankruptcy counsel, McNamee, Hosea, Jernigan and Kim. The Firm filed an Application for Employment on December 9, 2019 which was granted on December 30, 2019. The Firm dutifully served the estate and its interests herein through July 20, 2019 when because of disputes which had arisen with the Debtor over his fiduciary duties to the estate, the Firm was terminated by the Debtor. The Firm was replaced by Daniel Press, Esquire as new counsel.

On October 15, 2020, the Firm has filed a Fee Application for the period of its engagement to the estate, which contained a contingent write down of twenty (22%) percent

subject to waiver if objections were received. The Debtor has objected to the Fee Application on November 5, 2020. A status hearing is set forth on the Fee Application and Objection on January 19, 2021. The Debtor has filed a plan of reorganization and a disclosure statement, to which this filing is germane.

## STANDARD FOR A DISCLOSURE STATEMENT:

The proponent of a plan of reorganization must provide creditors, equity interest holders and other parties in interest with a disclosure statement as required by 11 U.S.C. § 1125(b). In furtherance of that duty, pursuant to Section 1125(a) of the Code, "adequate information" must be supplied.

This means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan", with exceptions not germane hereto. *See*, 11 U.S.C. § 1125(a) (2020)

A long standing "benchmark" for determining the adequacy of information presented within a Disclosure Statement is found at Judge Drake's seminal opinion, in *Metrocraft*, wherein the Bankruptcy Court drew from substantial sources to produce a nineteen (19) factor list:

> Relevant factors for evaluating the adequacy of a disclosure statement may include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) *the source of information stated in the disclosure statement;* (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information

>and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) f*inancial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan*; (15) information relevant to the risks posed to creditors under the plan; (16) *the actual or projected realizable value from recovery of preferential or otherwise voidable transfers*; (17) litigation likely to arise in a nonbankruptcy context; (18) *tax attributes of the debtor*; and (19) the relationship of the debtor with affiliates.

*See, In re Metrocraft*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (emphasis supplied).

A more practical standard is "[a]ll information that is reasonably necessary to permit creditors and parties in interest to fairly and effectively evaluate the plan." *In re Robert's Plumbing and Heating, LLC* (Case No. 10-23221), 2011 WL 2972092 at *2 (Bankr. D. Md., July 20, 2010). Adequate information "means sufficient information to permit a reasonable, typical creditor to make an informed judgment about the merits of the proposed plan." *In re A.H. Robbins Co., Inc.* (Case No. 98-1080), 1998 WL 637401 *4 (4th Cir. 1998). Debtor bears the burden of "proving the adequacy of its disclosure statement." *In re Bellows*, 554 B.R. 219, 225 (Bankr. D. Ak. 2016); *accord, In re American Capital Equipment, LLC*, 688 F.3d 145, 155 (3d Cir. 2012)

Where the plan of reorganization is materially flawed and requires amendment and is not capable of present confirmation, the disclosure statement should not be approved. *In re Quigley, Inc.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) ("an unconfirmable plan is grounds for rejection of the disclosure statement; a disclosure statement that describes a plan patently unconfirmable on its face should not be approved"); *see also, Robert's Plumbing and Heating, LLC, supra.*

## DISCUSSION:

The Debtor has filed an untimely Plan of Reorganization (the "Plan") and a

Disclosure Statement (the "Disclosure Statement") on November 2, 2020. This is a largely "boilerplate" form Plan and Disclosure Statement into which factual information without any great detail has been infused. It is, in broad observation, a "plan to make a plan" with little verifiable detail about how it will actually have the funding to pay administrative expenses and claims. Material deficiencies exist in both filings:

*Factual Discussion Absent From the Disclosure Statement:*

This Chapter 11 case has been active and in near constant litigation for over a year and a half. It followed years of heated and costly domestic litigation herein in the Circuit Court, the Court of Special Appeals and now is reported to be climbing onward to yet more litigation by a writ of certiorari. As demonstrated by the record, the Debtor has seemingly pursued litigation rather than resolution, other than for a brief period in early 2020. None of this is disclosed in any meaningful detail.

The benefits to the estate and detriments to the estate should be discussed in respect of all of this never ending litigation. These events are well described in various filings already on the record by other filers [ie; Dkts. 51, 61, 78, 79, 289, etc.] but the Debtor herein has little to disclose concerning the vast array of litigation herein. There are in the Disclosure Statement but several brief paragraphs found at p. 6 which sidestep all of the major events in this Chapter 11 case and in the domestic litigation. The Debtor should review the significant record (this Objection noting just several docket references above) and detail the years of litigation which continue as this Objection is being written so as to provide the estate with a more complete statement of the ongoing litigation and litigation which previously concluded. How this impacts the Chapter 11 case is very important. Indeed, there is still an upcoming hearing on whether a Trustee should be appointed on February 11, 2021, and the Disclosure Statement does not discuss

or even disclose information as to whether that motion will be supplemented, joined in by other parties in interest, and whether a trustee would be preferable given the ongoing litigation drains on property of the estate that the Debtor continues to fund and fuel with cash assets that should be dedicated to the estate. Obviously, if a Chapter 11 trustee may be appointed, the Debtor should discuss the effect of that on the ongoing reorganization.

*Sources of Plan Funding:*

The Disclosure Statement provides that a four percent loan for $435,000.00 repayable over thirteen years from an individual whose affiliation with the Debtor is not disclosed is the basis for Plan funding combined with wages, and other unspecific income items. The "Plan projection" states that "The Debtor projects that all claims will be paid in full either on the effective date or over time." Disclosure Statement p. 12. This is not a Plan projection, nor is a one page attachment that generalizes income and expenses over a term that is not outlined in any pro forma that creditors or parties in interest may evaluate.

*Tax Consequences*:

The Disclosure Statement omits any discussion of tax incidents relaying that the Debtor is not providing any information other than generic COD income issues under Section 108. Unfortunately, this is entirely inadequate and unhelpful. The Debtor relays in the preceding page that he has a capital gain from the sale of an office condo earlier in 2020 but has not bothered to calculate the gain or loss and any tax consequences. This will obviously impact the Plan.

The Debtor it will be remembered from the record quickly amended his taxes following the inception of issues arising in his domestic litigation, which caused the filing of claims by the IRS for hundreds of thousands of dollars. The Debtor as noted herein takes significant draws, but it is entirely unclear how or whether he makes quarterly filings or pays self

employment taxes. The risk of new tax liabilities in a case with a significant tax claim mandates significant disclosure and discussion of the tax consequences of the Plan and in connection with the case that may not have yet arisen.  The Debtor may be as he says unqualified to relay that information, but the Debtor employs a competent tax consultant Mr. Gonsalves who can provide and should provide that information in connection with the Disclosure Statement and Plan. This in particular is one case where current and up to date tax information is paramount.  The record in this case demonstrates that even as of early July, 2020, the 2019 tax information was not ready. Thus, this year should be and must be different to support a Plan that is moving to confirmation.

*Best Interests Test/Asset Recoveries:*

The Debtor alludes to recoveries against persons in Lebanon and in the United States without any specificity including status of such claims, monetary value, recoverability and use of such assets to fund the Plan or otherwise the disposition of such matters.  Disclosure Statement p. 6-7.  The Debtor elsewhere claims that such assets have difficulty in collection and the like without any significant effort to quantify those generic statements to a monetary certainty.

The Debtor relays that there are various assets he holds including "intellectual property" and miscellaneous assets without specificity. The Debtor should itemize these claims, whether they are being pursued and administered, or abandoned as burdensome and of inconsequential value to the estate.  Why is the Debtor undertaking new financing as it has been proposed to fund this Plan and the unstated costs and interest repayments therein all at the risk to the estate, rather than selling what he already has which if truthfully represented might repay creditors more expediently?

Further, if the MORs reflect transfers of monies to third parties over the course of this case, then those recoveries should be factored in or discussed as to why the third party

payments are not recoverable. There is no serious preference/fraudulent conveyance discussion. Finally, the Debtor discusses the risks of collection of the Lebanon assets and otherwise diminishes the collection of same as noted, yet continues to fund that litigation. The Debtor should explain and detail a good faith basis to reconcile these two positions for this in his Disclosure Statement.

In turn, there is no traditional *pro forma* balance sheet attributing all assets and liabilities in a Chapter 7 liquidation setting, including any pre-petition or post-petition conveyance recovery. There is simply no information as to the superiority or inferiority of the present Plan as compared to trustee liquidation (including projected Trustee commissions). The disclosures set forth in the Disclosure Statement report no appraisals, but there needs to be verifiable and demonstrated efforts to support valuations in the Disclosure Statement and for the underlying Plan.

*Professional Persons:*

There is little discussion of the professional persons herein other than a list of projected professionals and their anticipated balances. The Disclosure Statement should note this Firm's removal of the contingent write down after objection. The Disclosure Statement should itemize the benefit or lack of benefit of professional persons in this Chapter 11 Case to the estate, particularly connected to domestic litigation. The Disclosure Statement should identify how and when the supposed loan financing will satisfy these administrative expenses with an eye towards specifics and actual detail. Statements such as the administrative expenses shall be paid at varying dates at p. 8 of the Disclosure Statement should be fixed on the effective date, absent agreement otherwise.

*Feasibility:*

There is no *pro forma* accompanying the Disclosure Statement that would project how this Plan will be feasible identifying in specific regard month by month the gross receipts, expenses (which seem to flow towards narrow solvency margins), and specifically how the Debtor is going to normalize his uneven income cash flows. The Debtor's most recently filed untimely MOR of November 23, 2020 demonstrates a beginning cash balance of only $11,983.53, with gross receipts of $51,173.15[1] and disbursements of $52,592.32, leaving a negative net operating income of ($1,419.17) for October, 2020. These disbursements include legal professional fees and UST fees of $28,875.02, and given the spending largesse by the Debtor include no room projected plan of reorganization creditor disbursements or for any large credit facility repayments as generally contemplated by the Plan.

The Debtor's recap sheet annexed to this October, 2020 MOR demonstrates a narrow positive NOI margin for the Debtor in 2019 (albeit for 9 months) of $33,895.00 and for 2020 YTD $42,370.00. The reported income and expenses are wildly uneven and do not support a fixed and regular cash flow over a plan term particularly one that must service a $435,000.00 credit facility at 4% over 13 years producing a monthly P/I of $3,580.56 which the Debtor must pay to the lender which annualized would more than consume the entire NOI for the 9 months reported of 2019 by the Debtor.

The income and expense information found in a few sentences at p. 12 of the

---

[1] This contains draws or payments from corporate accounts of $41,500.00, and salary of $5,623.15, presenting the question given the Debtor's prior tax history of whether the Debtor is remitting timely self-employment tax and adequate tax deposits. The MOR states under oath that the Debtor is current on all post-petition taxes for filing and payment including quarterly deposits. This may not be consonant with the Debtor's prior tax filings and should be disclosed in the Disclosure Statement in greater specificity as post-petition tax uncertainties in the face of pre-petition tax liabilities are inappropriate.

[2] The Rule 2016(b) filings appear inconsistent with such information, particularly noting at Item D that $25,000.00 was for attorneys' fees into escrow of John Quinn, Esq. On information and belief – not disclosed or described with any detail the Debtor continues to litigate a domestic matter by writ of certiorari that shall produce no monetary benefit to the estate, yet is draining the estate economically. This needs to be further described in the Disclosure

Disclosure Statement is not consistent with the MORs, nor is there a reconciliation of such vast differences.

*Jurisdiction:*

This provision found at p. 14 of the Disclosure Statement conflates a final decree, closure of the case, following substantial consummation of the case, as a means to avoid United States Trustee fees. This is inaccurate, and the early administrative close out language standardized by consent with the United States Trustee under Local Rule 3022 should be detailed correctly.

## **CONCLUSION:**

For the foregoing reasons, the Disclosure Statement should be denied approval, and the Plan underlying it should likewise be denied confirmation absent significant improvements. The Court should take into account any pending Trustee appointment prior to allowing this estate to advance with new and extensive administrative expenses accruing.

                                            RESPECTFULLY SUBMITTED,
                                            /s/ John D. Burns
                                            John D. Burns, Esquire (#22777)
                                            The Burns LawFirm, LLC
                                            6303 Ivy Lane; Suite 102
                                            Greenbelt, Maryland  20770
                                            (301) 441-8780
                                            info@burnsbankruptcyfirm.com
                                            Counsel for the Firm

---

Statement.

**CERTIFICATE OF SERVICE**

        I HEREBY CERTIFY THAT on this 8th day of December, 2020, a copy of the foregoing Objection was served, by first class mail postage prepaid, or by ECF unless otherwise specified upon the following parties in interest:

**VIA ECF:**
Daniel M. Press, Esquire
Chung & Press, PC
67198 Whittier Avenue
STE 200
McLean VA  22101

Office of the United States Trustee
6305 Ivy Lane; STE 600
Greenbelt, MD 20770

                                                   /s/ John D. Burns
                                               John D. Burns, Esquire